**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  | Case No. 1:20-cv-01900-BMC |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION, | CLASS ACTION |

## STIPULATION AND AGREEMENT OF PARTIAL SETTLEMENT

This Stipulation and Agreement of Partial Settlement (together with all Exhibits hereto, the "Stipulation"), is entered into by and between: (i) plaintiffs Tim Caldwell ("T. Caldwell"), Sharon Caldwell ("S. Caldwell"), Nikolaos Poulakis ("Poulakis"), and John Pullen ("Pullen" and collectively, "Federal Plaintiffs"), who were appointed Lead Plaintiffs in the Federal Action (defined below); and plaintiffs Eva Pareja ("Pareja") and Greg Sweet ("Sweet"), plaintiffs in the State Action (defined below) ("State Plaintiffs" and together with the Federal Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class (defined below); and (ii) defendants Akazoo S.A. ("Akazoo" or the "Company"); Petrus (Pierre) Schreuder ("Schreuder") and Panagiotis Dimitropoulos ("Dimitropoulos" and together with Schreuder, "Settling Old Akazoo Defendants"); Lewis W. Dickey, Jr. ("Dickey"); Maja Lapcevic, Athan Stephanopoulos, Alexander Macridis, David Bryan Roche, Asit Mehra, and Colin Miles ("Akazoo Director Defendants"); William Drewry, Adam Kagan, Véronique Marty, Blair Faulstich, George Brokaw, and John White (the "MMAC Director Defendants" and together with Akazoo, Settling Old Akazoo Defendants, Dickey, and the Akazoo Director Defendants, "Settling Defendants"); MIHI LLC and Macquarie Capital (USA) Inc. (the "Macquarie Settling Parties"); and Toscafund Asset Management LLP and Penta Capital LLP and all funds managed by them including Tosca Opportunity, Tosca Mid Cap, The Pegasus Fund Limited and Tosca Penta Music LP (the "Tosca

Settling Parties" and together with the Macquarie Settling Parties, the "Additional Settling Parties"), by and through their respective counsel, and embodies the terms and conditions of the partial settlement of the Class Actions (defined below). Subject to the approval of the United States District Court for the Eastern District of New York (the "Court") and the terms and conditions expressly provided herein, this Stipulation is intended by Plaintiffs, on behalf of themselves and the Settlement Class, the Settling Defendants, and the Additional Settling Parties (collectively, the "Settling Parties") to fully, finally and forever settle, release, resolve, compromise, and discharge the Released Claims (as defined herein) against the Released Parties (as defined herein).

Throughout this Stipulation, all terms with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section 1 below.

**WHEREAS:**

### A.     The Actions

#### 1.     The Federal Action

On April 24, 2020, plaintiff Aung K. Soe commenced an action in this Court styled *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900-BMC (E.D.N.Y.), on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Akazoo between September 11, 2019 and April 20, 2020, both dates inclusive.  The *Soe* Action asserted claims for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder.

On June 19, 2020, plaintiffs T. Caldwell and S. Caldwell commenced an action in this Court styled as *Caldwell, et al, v. Akazoo S.A., et* al., Case No. 1:20-cv-02737 (E.D.N.Y.) on behalf of those who: (1) purchased or otherwise acquired the publicly traded securities of

Akazoo f/k/a Modern Media Acquisition Corp. ("MMAC") between January 24, 2019 and May 21, 2020, both dates inclusive; and (2) all persons or entities who held common stock of MMAC on August 14, 2019 eligible to vote at MMAC's August 28, 2019 special meeting.  The *Caldwell* action asserted violations of Sections 10(b), 20(a) and 14(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder.

On June 23, 2020, T. Caldwell, S. Caldwell, Poulakis, and Pullen moved for consolidation of the *Soe* and *Caldwell* actions and for appointment as lead plaintiffs and approval of their counsel, The Rosen Law Firm, P.A., to serve as lead counsel.  (Dkt. No. 6). On July 17, 2020, the Court consolidated the *Soe* and *Caldwell* actions into *In re Akazoo S.A. Securities Litigation*, Case No. 1:20-cv-01900-BMC (E.D.N.Y.) (the "Federal Action"), appointed T. Caldwell, S. Caldwell, Poulakis, and Pullen as Lead Plaintiffs in the Federal Action, and approved their selection of The Rosen Law Firm, P.A. to serve as Lead Counsel. (Dkt. No. 12).

On September 8, 2020, Federal Plaintiffs filed the operative Amended Complaint for Violation of the Federal Securities Laws ("Amended Complaint").  (Dkt. No. 15).  The Amended Complaint asserted claims against the Settling Defendants, Apostolos N. Zervos ("Zervos"), and Crowe U.K. LLP ("Crowe").  The Amended Complaint alleged violations of Sections 10(b), 14(a) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as well as Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").

On October 9, 2020, Federal Plaintiffs filed a Consent Motion to Intervene in the action *Securities and Exchange Commission v. Akazoo S.*A., Case No. 1:20-cv-08101-AKH (S.D.N.Y.) (the "SEC Action") brought by the United States Securities and Exchange Commission ("SEC") against Akazoo.

On October 19, 2020, Federal Plaintiffs and Akazoo informed the Court that they had been engaging in good faith discussions concerning a potential global resolution involving the SEC Action pending in the United States District Court for the Southern District of New York and requesting that the Federal Action be stayed for 21 days (Dkt. No. 18), which the Court granted that same day. On November 11, 2020, Federal Plaintiffs and Akazoo filed a letter asking the Court for a stay for at least 30 days as negotiations were ongoing and progress was being made. (Dkt. No. 19). The Court granted the request that same day. On November 30, 2020, Federal Plaintiffs and Akazoo again filed a letter requesting an additional stay as a mediation was scheduled for mid-December 2020. (Dkt. No. 20). The Court granted this request that same day. On January 12, 2021, Federal Plaintiffs and Akazoo informed the Court that great progress was made at the mediation and asked for a further stay of thirty days. (Dkt. No. 21). The Court granted this request that same day.

### 2. The State Action

On June 22, 2020, State Plaintiffs Pareja and Sweet commenced the action *Pareja, et al., v. Apostolos N. Zervos, et al*., Case No. 2020CV337418 in the Superior Court for the State of Georgia, Fulton County (the "State Action"), on behalf of persons and entities that purchased or otherwise acquired Akazoo common stock pursuant and/or traceable to the Company's registration statement and prospectus issued in connection with Akazoo's September 2019 business combination.  The State Action asserted violations of Sections 11, 12(a)(2), and 15 of the Securities Act against Akazoo, Zervos, the Settling Old Akazoo Defendants, Dickey, the MMAC Director Defendants, and Crowe.

On November 9, 2020, Crowe filed: (a) a motion to dismiss for lack of personal jurisdiction or in the alternative, a motion to dismiss for failure to state a claim upon which relief can be created; and (b) an answer and affirmative defenses. That same day, defendants Dickey,

Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo filed a stipulation extending the time for them to answer.

On December 1, 2020, State Plaintiffs filed a stipulation requesting an extension for their time to respond to Crowe's motion to dismiss.  On December 3, 2020, defendants Dickey, Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo filed another stipulation requesting a further extension of time to respond to the complaint. The parties in that action have filed subsequent extensions so that they were able to conduct the mediation and engage in settlement discussions.  Currently, Plaintiffs have until April 20, 2021 to respond to Crowe's motion to dismiss and Dickey, Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo have until April 19, 2021 to respond to the complaint in that action.

### B.    The PIPE and SPAC Action

Another group of Akazoo shareholders, represented by Susman Godfrey L.L.P. (the "Susman Godfrey PIPE, SPAC, and Retail Investors"), asserted claims for those who: (i) invested in the business combination between Akazoo Limited ("Old Akazoo") and MMAC through a private investment in public entity ("PIPE") offering; and/or (ii) converted shares of MMAC into Akazoo securities; and/or (iii) purchased Akazoo securities on the open market (the "PIPE and SPAC Action").

### C.    The Settlement

The Settling Parties, as well as the Susman Godfrey PIPE, SPAC, and Retail Investors, began settlement discussions in October 2020. The parties to the Federal Action, State Action, and the PIPE and SPAC Action, as well as the Additional Settling Parties, attended a mediation on December 15-17, 2020, presided over by Gregory Lindstrom, Esq., of Phillips ADR. Prior to the mediation session, the participants exchanged detailed mediation statements. Although a

global settlement was not reached during the three-day mediation session, the Settling Parties and the Susman Godfrey PIPE, SPAC, and Retail Investors continued discussions via telephone and email with Mr. Lindstrom's assistance.

The global settlement of the Class Actions and PIPE and SPAC Action provides for consideration of $35,000,000 (thirty-five million U.S. dollars) in total, with 86% of the total consideration amount, or $30,100,000 (thirty million one hundred thousand U.S. dollars), to be paid to resolve the claims of the PIPE and SPAC Action, and 14% of the total consideration amount, or $4,900,000 (four million nine hundred thousand U.S. dollars), to resolve the claims with Settling Defendants in the State Action and Federal Action (collectively, the "Class Actions"). This percentage breakdown of $35 million reflects the proportionate size of the damages for the PIPE and SPAC Action and the Class Actions.  For any Additional Settlement Amounts recovered, as described herein, the same percentage breakdown (*i.e.*, 86% to the PIPE and SPAC Action and 14% the Class Actions) will be applied.

The PIPE and SPAC Action will have its own settlement agreement to provide for the dismissal of the PIPE and SPAC Action, as set forth more fully in that agreement.

### D. Settling Defendants' and the Additional Settling Parties' Denial of Wrongdoing and Liability

Settling Defendants and the Additional Settling Parties have denied and continue to deny that they have committed any wrongdoing of any kind, engaged in any conduct or made any statement or omission giving rise to any liability, damage, or violation of law. Neither this Stipulation nor any of its terms shall constitute an admission of any wrongful conduct, statements, or omissions of any kind, or control over any such conduct, statements, or omissions, or as to the truth or any allegations in the complaints in the Class Actions or any weakness or infirmity of any defense asserted or that would be asserted by Settling Defendants or the

Additional Settling Parties. Settling Defendants and the Additional Settling Parties do not admit any liability, wrongdoing, or control in connection with the allegations set forth in the Class Actions or any facts alleged therein.

Settling Defendants and the Additional Settling Parties are entering into this Settlement to eliminate the burden and expense of further litigation and the risks and uncertainty inherent in any litigation. Settling Defendants and the Additional Settling Parties have, therefore, determined that it is desirable and beneficial to them that the Class Actions be settled in the manner and upon the terms and conditions set forth in this Stipulation.

This Stipulation is not, and in no event shall be construed or deemed to be evidence of, an admission or concession on the part of any Settling Defendant or the Additional Settling Parties of any fault, liability (including control-person liability), wrongdoing, or damage whatsoever, or of any weakness or infirmity of any defense that Settling Defendants or the Additional Settling Parties have asserted or could assert, or concerning the appropriateness of class treatment of any of Plaintiffs' claims other than for settlement purposes.

**E.      Claims of Plaintiffs and Benefits of Settlement**

Plaintiffs and Plaintiffs' Counsel represent that they have conducted an extensive investigation of the claims and the underlying events and transactions alleged in the Class Actions.   Among other things, Plaintiffs' Counsel have analyzed public filings, records, documents, and other materials concerning Settling Defendants and third parties, and have researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against the Settling Defendants and the potential defenses thereto.

Based on their investigation, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate and in the best

interests of the Settlement Class (as defined below), and have agreed to settle the claims asserted in the Class Actions pursuant to the terms and provisions of this Stipulation, after considering: (a) the substantial benefits that Plaintiffs and the Settlement Class will receive from settlement of the Class Actions; (b) the risks, costs, and uncertainties of ongoing litigation; (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation; and (d) Plaintiffs' Counsel's experience in the prosecution of similar actions. Nothing in this Stipulation shall be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity in any of the claims asserted in the Class Action, or an admission or concession that any of the Settling Defendants' defenses to liability had any merit.

The Parties to this Stipulation and their counsel agree not to contend in any forum that the Class Actions were brought, defended or settled in bad faith, without a reasonable basis, or in violation of Rule 11 of the Federal Rules of Civil Procedure or any other similar law or statute. The Class Actions are being voluntarily settled after each Settling Party has had the opportunity to consult with counsel of its choice and after Plaintiffs' Counsel have determined and believe that the terms of the Settlement are fair, reasonable, and adequate and in the best interests of the Settlement Class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among Plaintiffs, on behalf of themselves and each of the Settlement Class Members, Settling Defendants, and the Additional Settling Parties (by and through their respective undersigned counsel) that, subject to the approval of the Court, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Class Actions and the Released Claims as against the Released Parties shall be finally and fully compromised, settled, and released, the Class Actions shall be dismissed fully, finally, and with prejudice, and the Released Claims shall

be finally and fully released as against the Released Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

1. **Definitions**

In addition to the terms defined above, the following capitalized terms, used in this Stipulation, shall have the meanings specified below:

1.1. "Additional Settlement Amount" means any portion of the Service Provider Recovery Amount, Insurance Refund Amount, and Unreimbursed Insurance Amount received by the Akazoo Investors.  For the avoidance of doubt, the Additional Settlement Amount does not include the Akazoo Recovery Amount or any exhausted portion of the Indemnification Holdback.  There is no cap on the Additional Settlement Amount.

1.2. "Additional Settling Parties" means, collectively, MIHI LLC, Macquarie Capital (USA) Inc., and Tosca Settling Parties.

1.3. "Administrative Costs" means all costs and expenses associated with providing notice of the Settlement to the Settlement Class and otherwise administering or carrying out the terms of the Settlement.  Such costs may include, without limitation: costs, fees and expenses incurred in connection with the Escrow Account; reimbursements to nominee owners for providing notice to their beneficial owners; the costs of publishing the summary notice, the costs of printing and mailing, and/or emailing the Notice and Proof of Claim Form, as directed by the Court, and the costs of allocating and distributing the Net Settlement Fund (as defined in paragraph 1.39) to the Authorized Claimants.  Such costs do not include legal fees.

1.4. "Akazoo Director Defendants" means Maja Lapcevic, Athan Stephanopoulos, Alexander Macridis, David Bryan Roche, Asit Mehra, Colin Miles, and Dickey in his capacity as Chairman of the Board of Akazoo S.A.

1.5.    "Akazoo Insurers" means XL Catlin Insurance Company UK Limited, Hiscox Insurance, Beazley Insurance, Aviva Insurance Limited, and Sompo International.

1.6.    "Akazoo Investors" means State Plaintiffs, Federal Plaintiffs, and the Susman Godfrey PIPE, SPAC, and Retail Investors.

1.7.    "Akazoo Recovery Amount" means Akazoo's share of any recovery obtained from the Service Provider Recovery Amount, the Insurance Refund Amount, and the Unreimbursed Insurance Amount.

1.8.    "Akazoo Settling Parties" means Akazoo, Schreuder, Dimitropoulos, and the Akazoo Director Defendants.  The Akazoo Settling Parties do not include the Akazoo Insurers or Zervos.

1.9.    "Authorized Claimant" means any Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

1.10.    "Business Day" means any day except Saturday or Sunday or any other day on which national banks are authorized by law or executive order to close in the State of New York.

1.11.    "Claimant" means any Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

1.12.    "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

1.13.    "Claims Administrator" means Strategic Claims Services ("SCS"), the firm retained by Plaintiffs and Class Counsel, subject to approval of the Court, to provide all

notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.14.   "Class Actions" means the Federal Action and the State Action.

1.15.   "Class Action Settlement" means the settlement of the Federal Action and the State Action.

1.16.   "Class Action Settlement Amount" means the sum of $4,900,000 (four million nine hundred thousand U.S. dollars).

1.17.   "Class Counsel" means The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP.

1.18.   "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.19.   "Court" means the United States District Court for the Eastern District of New York.

1.20.   "Defense Counsel" means Gibson, Dunn & Crutcher LLP.

1.21.   "Escrow Account" means an interest-bearing escrow account maintained at Huntington National Bank wherein the Class Action Settlement Amount and Additional Settlement Amount, if any, shall be deposited and held in escrow under the control of The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP.

1.22.   "Escrow Agent" means Huntington National Bank.

1.23.   "Effective Date" shall have the meaning set forth in ¶ 10.3 of this Stipulation.

1.24.   "Excluded Claims" means any claims concerning, arising from, or relating

to the subject matter of the Class Action asserted, or which may be asserted: (i) by any Released Party against any party other than the Released Parties; (ii) against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court (and any related claims for contribution or indemnification between and among the Settling Defendants and the Additional Settling Parties); (iii) in connection with the recovery of the Additional Settlement Amount; (iv) by any person or entity relating to the enforcement of the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.  Notwithstanding the foregoing, Excluded Claims also include any potential claims (including indemnification or contribution) otherwise available to the Company against Dimitropoulos arising out of any future legal action initiated by Empresa Nacional de Innovacion, S.A. ("ENISA") concerning repayment of a profit participative loan made on or about October 13, 2010 to Polychronic Human Media Interface ("PHMI").  Moreover, for the avoidance of doubt, "Excluded Claims" also include: claims or potential claims against the Non-Released Parties; any parent or subsidiary of the Non-Released Parties; any entity that has or had a majority ownership interest in a Non-Released Party; any current or former employee, officer, director, manager or partner of a Non-Released Party; any entity affiliated with, related to or controlled by a Non-Released Party; and any predecessor or successor to a Non-Released Party.

  **1.25.** "Federal Action" means the putative class action *In re Akazoo S.A. Securities Litigation*, Case No. 1:20-cv-01900-BMC (E.D.N.Y.), and includes all actions consolidated therein.

  **1.26.** "Final" with respect to the Final Judgment means that one of the following has occurred: (i) in the event that there are no objectors, the Judgment has been entered by the Court; or, in the event there are objectors, (ii) the time for the filing or noticing of any motion for

reconsideration, appeal, petition for a writ of certiorari, or other review of the Final Judgment has expired without any such filing or notice; or (iii) the Final Judgment has been affirmed in all material respects on an appeal or after reconsideration or petition for a writ of certiorari, or other review and is no longer subject to review upon appeal, reconsideration, or other review, and the time for any petition for reconsideration, reargument, appeal or review of such order or award (or any order affirming it) has expired; provided, however, that any appeal or proceeding seeking subsequent judicial review relating solely to (a) the amount, payment or allocation of attorneys' fees, costs or expenses, or (b) the Plan of Allocation (as submitted or subsequently modified) shall have no effect on finality for purposes of determining the date on which the Final Judgment becomes Final.  Any proceeding filed pursuant to the All Writs Act or Federal Rule of Civil Procedure 60 shall not operate to prevent the Judgment from being considered final.

1.27.   "Final Judgment" means the order and partial judgment to be entered by the Court finally approving the Settlement and dismissing the Federal Action, substantially in the form attached hereto as Exhibit B.

1.28.   "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.29.   "Insurance Refund Amount" means the amount of any refunded premium obtained by the Company from Berkshire Hathaway Specialty Insurance associated with the D&O policy issued on or about September 12, 2020.

1.30.   "Lead Plaintiffs" or "Federal Plaintiffs" mean Tim Caldwell, Sharon Caldwell, Nikolaos Poulakis, and John Pullen.

1.31.   "Lead Counsel" or "Federal Plaintiffs' Counsel" means The Rosen Law Firm, P.A.

1.32.   "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Class Actions (which may include the costs and expenses of Plaintiffs directly related to their representation of the Settlement Class), for which Class Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

1.33.   "Macquarie Settling Parties" means MIHI LLC and Macquarie Capital (USA) Inc.

1.34.   "MMAC" or "Modern Media" means Modern Media Acquisition Corp.

1.35.   "MMAC Director Defendants" means William Drewry, Adam Kagan, Véronique Marty, Blair Faulstich, George Brokaw, and John White.

1.36.   "MMAC Insurer" means XL Specialty Insurance Company.

1.37.   "MMAC Settling Parties" means Modern Media Acquisition Corp. S.A., MMAC, the MMAC Insurer, Dickey in his capacity as CEO of MMAC, and the MMAC Director Defendants.

1.38.   "Modern Media Sponsor Settling Parties" means Modern Media Sponsor, LLC and Dickey in his capacity as manager of the Sponsor.

1.39.   "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Administrative Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

1.40.   "Non-Released Parties" means all parties that are not defined as Released Parties herein. For the avoidance of doubt, Non-Released Parties, includes, but it not limited to, Zervos, Crowe, EarlyBirdCapital, Inc., RSM US LLP, Grant Thornton, Deloitte, BDO, AGK

Partners, and the Akazoo Insurers.

  **1.41.** "Notice" means collectively, the Notice of Pendency and Proposed Partial Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Partial Settlement Securities Class Action ("Summary Notice"), and the Postcard Notice, which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits A-1, A-3, and A-4 on the Claims Administrator's website and/or mailed or emailed to  Settlement Class Members.

  **1.42.** "Old Akazoo" means Akazoo Limited.

  **1.43.** "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto.

  **1.44.** "Person" means any natural person or any legal entity, including without limitation, an individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, governmental entity or any political subdivision or agency thereof, and the spouse, heirs, predecessors, successors, representatives, or assigns of any such natural person or legal entity.

  **1.45.** "PIPE and SPAC Settlement Amount" means $30,100,000 allocated to resolve the claims of the PIPE and SPAC Action.

  **1.46.** "Plan of Allocation" means the plan described in the Long Notice or any alternate plan approved by the Court whereby the Net Settlement Fund shall be distributed to Authorized Claimants. The Released Parties shall have no responsibility for or liability of any

kind with respect to the Plan of Allocation.

1.47.   "Plaintiffs' Counsel" means collectively Class Counsel, and all other legal counsel who, at the direction and under the supervision of Class Counsel, performed services on behalf of the Settlement Class in the Class Actions.

1.48.   "Preliminary Approval Order" means the proposed order preliminarily approving the partial Settlement and directing notice thereof to the Settlement Class substantially in the form attached hereto as Exhibit A.

1.49.   "Proof of Claim Form" or "Claim Form" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached hereto as Exhibit A-2.

1.50.   "Related Parties" means, with respect to each Released Party, in their capacity as such: (i) current and former agents, parents, affiliates, subsidiaries, divisions, joint ventures, successors, predecessors, assigns, assignees, attorneys, underwriters, placement agents, investment advisors, auditors, accountants, insurers (including reinsurers and co-insurers); (ii) Immediate Family members; (iii) any firm, corporation, or entity in which any Released Party has a majority interest; and (iv) the current and former officers, directors, members, managers and employees of each of the foregoing in clauses (i)-(iii).  Notwithstanding the foregoing, "Related Parties" does not include any Non-Released Parties.

1.51.   "Released Additional Settling Parties" means the Additional Settling Parties and all of their Related Parties.  For the avoidance of doubt, "Released Additional Settling Parties" does not include any Non-Released Parties.

1.52.   "Released Additional Settling Parties' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims,

whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Class Actions (including, without limitation, any action by any Additional Settling Party, whether through a vote at any general meeting of the shareholders of Akazoo, the exercise of any other powers or rights as a shareholder or former shareholder of Akazoo, or in any other manner whatsoever, whether alone or in concert with any other party, to authorize, support, cause or require Akazoo to take or assert, or to itself take or assert on Akazoo's behalf, any action or any such known claims or Unknown Claims against any director or former director of Akazoo who is a Settling Party, to the exclusion however of any directors or former directors of Akazoo who are Non-Released Parties, in the form of a shareholder lawsuit ("*action sociale*"), a minority shareholder lawsuit ("*action minoritaire*"), a derivative lawsuit ("*action oblique*"), or in any other manner, pursuant to any provisions of Luxembourg law or the law of any other jurisdiction and in any forum).  Notwithstanding the foregoing, the "Additional Settling Parties' Released Claims" do not include any Excluded Claims.

      **1.53.**   "Released Claims" means and includes any and all Released Plaintiffs' Claims, Released Settling Defendants' Claims, and Released Additional Settling Parties' Claims, as defined herein.

      **1.54.**   "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, except as to the claims in connection with the recovery of the Additional Settlement Amount, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that the Plaintiffs, or any other members of the Settlement Class: (i) asserted in the Class Actions; (ii) asserted in the PIPE and SPAC Action; or (iii) could have asserted in any forum that arise out of or are based upon the allegations,

transactions, facts, matters or occurrences, representations, or omissions that are involved, set forth, or referred to in the Class Actions and that relate to the purchase or acquisition of Akazoo securities during the Settlement Class Period (including, without limitation, any action by any Plaintiff or any other member of the Settlement Class, whether through a vote at any general meeting of the shareholders of Akazoo, the exercise of any other powers or rights as a shareholder or former shareholder of Akazoo, or in any other manner whatsoever, whether alone or in concert with any other party, to authorize, support, cause or require Akazoo to take or assert, or to itself take or assert on Akazoo's behalf, any action or any such known claims or Unknown Claims against any director or former director of Akazoo who is a Settling Party, to the exclusion however of any directors or former directors of Akazoo who are Non-Released Parties, in the form of a shareholder lawsuit ("*action sociale*"), a minority shareholder lawsuit ("*action minoritaire*"), a derivative lawsuit ("*action oblique*"), or in any other manner, pursuant to any provisions of Luxembourg law or the law of any other jurisdiction and in any forum). Notwithstanding the foregoing, "Released Plaintiffs' Claims" do not include: (i) any claims of any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court; or (ii) any Excluded Claims.

      **1.55.**   "Released Parties" means any and all Released Settling Defendant Parties, Released Plaintiffs' Parties, and Released Additional Settling Parties.

      **1.56.**   "Released Plaintiffs' Parties" means Plaintiffs and Settlement Class Members, and each and all of their Related Parties.

      **1.57.**   "Released Settling Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the

institution, prosecution, or settlement of the claims asserted in the Class Actions against the Settling Defendants (including, without limitation, any action by any Defendant, whether through a vote at any general meeting of the shareholders of Akazoo, the exercise of any other powers or rights as a shareholder or former shareholder of Akazoo, or in any other manner whatsoever, whether alone or in concert with any other party, to authorize, support, cause or require Akazoo to take or assert, or to itself take or assert on Akazoo's behalf, any action or any such known claims or Unknown Claims against any director or former director of Akazoo who is a Settling Party, to the exclusion however of any directors or former directors of Akazoo who are Non-Released Parties, in the form of a shareholder lawsuit ("*action sociale*"), a minority shareholder lawsuit ("*action minoritaire*"), a derivative lawsuit ("*action oblique*"), or in any other manner, pursuant to any provisions of Luxembourg law or the law of any other jurisdiction and in any forum).  Notwithstanding the foregoing, "Released Settling Defendants' Claims" do not include any Excluded Claims.

1.58.   "Released Settling Defendant Parties" means the Settling Defendants, the MMAC Insurer, and each and all of their Related Parties. For the avoidance of doubt, the Non-Released Parties, any parent or subsidiary of the Non-Released Parties, any entity that has or had a majority ownership interest in a Non-Released Party, any current or former employee, officer, director, manager or partner of a Non-Released Party, any entity affiliated with, related to or controlled by a Non-Released Party, and any predecessor or successor to a Non-Released Party are not Released Settling Defendant Parties.

1.59.   "Releasing Additional Settling Parties" means the Additional Settling Parties and each and all of their Related Parties.

1.60.   "Releasing Parties" means any and all Releasing Settling Defendant

Parties, Releasing Plaintiffs Parties, and Releasing Additional Settling Parties.

1.61.    "Releasing Plaintiffs Parties" means Plaintiffs, each and every Settlement

Class Member, and each and all of their Related Parties.

1.62.    "Releasing Settling Defendant Parties" means the Settling Defendants, the

MMAC Insurer, and each and all of their Related Parties.

1.63.    "SEC Action" means *SEC v. Akazoo S.A.*, Case No. 1:20-cv-08101-AKH

(S.D.N.Y.).

1.64.    "Service Provider Recovery Amount" means the amount of any funds

recovered by Akazoo from EarlyBirdCapital and RSM US LLP.

1.65.    "Settlement" means the settlement contemplated by this Stipulation.

1.66.    "Settlement Class" means all persons or entities who or which: (i)

purchased or otherwise acquired the publicly traded securities of Akazoo between January 24,

2019 and May 21, 2020, both dates inclusive (the "Settlement Class Period"), including but not

limited to, those who purchased or acquired Akazoo securities pursuant to the private placement

offering agreement ("PIPE Financing"), and were damaged thereby; (ii) held common stock of

Modern Media Acquisition Corp. ("MMAC") as of August 9, 2019, eligible to vote at MMAC's

August 28, 2019 special meeting, and were damaged thereby; and/or (iii) purchased or otherwise

acquired Akazoo common stock pursuant or traceable to the Company's registration statement

and prospectus issued in connection with the September 2019 merger of MMAC and Old

Akazoo, and were damaged thereby.   Excluded from the Settlement Class are the Susman

Godfrey PIPE, SPAC, and Retail Investors, the Additional Settling Parties, EarlyBirdCapital,

RSM US LLP, Grant Thornton, Deloitte, BDO, AGK Partners, the Akazoo Insurers, and Cowen

Investments; Crowe; the Settling Defendants and their Immediate Family members; Zervos and

his Immediate Family members; the past and current executive officers and directors of Akazoo; the past and current officers, directors and partners of Crowe; any trust of which Zervos or any Settling Defendant is the settlor or which is for the benefit of Zervos or any Settling Defendant; the legal representatives, heirs, predecessors, successors, affiliates, parents, subsidiaries, officers, directors, members, managers, partners, general partners, or assigns of any excluded person or entity; and any entity in which any of the above excluded persons have or had a majority ownership interest.  Also excluded will be any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court.

      **1.67.**  "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

      **1.68.**  "Settlement Class Period" means the period from January 24, 2019 through May 21, 2020, both dates inclusive.

      **1.69.**  "Settlement Fund" means all funds transferred to the Escrow Account pursuant to this Stipulation and any and all interest or other income earned thereon.  The Settlement Fund will include the Class Action Settlement Amount and the Additional Settlement Amount allocated to the Class Actions, if any.

      **1.70.**  "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

      **1.71.**  "Settling Defendants" means the Akazoo Settling Parties, the MMAC Settling Parties, and the Modern Media Sponsor Settling Parties.

      **1.72.**  "Settling Party" means any one of, and "Settling Parties" means all of, the parties to the Stipulation, namely the Settling Defendants, the Additional Settling Parties, and

Plaintiffs on behalf of themselves and the Settlement Class.

1.73.   "State Action" means the putative class action *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (Fulton Cty., GA Supreme Court).

1.74.   "State Plaintiffs' Counsel" means Glancy, Prongay & Murray LLP.

1.75.   "Tosca Settling Parties" means Toscafund Asset Management LLP and Penta Capital LLP and all funds managed by them including Tosca Opportunity, Tosca Mid Cap, The Pegasus Fund Limited and Tosca Penta Music LP.

1.76.   "Unknown Claims" means any and all claims and potential claims that one or more Releasing Parties does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties.  This includes claims which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Parties, or might have affected his, her, or its decision(s) with respect to the Settlement and the Released Claims, including his, her, or its decision to object or not to object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and each of the Settling Defendants shall expressly waive, and each of the other Settlement Class Members and the Releasing Parties shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code §1542, which provides:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;*

and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code §1542.  The Settling Parties and Releasing Parties may hereafter discover facts,

-22-

legal theories, or authorities in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Settling Parties expressly, fully, finally, and forever settle and release, and each other Releasing Party and Released Party shall be deemed to have settled and released, and upon the Effective Date and by operation of the Final Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Settling Parties expressly acknowledge, and each other Releasing Party and Released Party by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and a material element of the Settlement.

1.77. "Unreimbursed Insurance Amount" means any and all unreimbursed defense costs and unpaid indemnification claims for which the Akazoo Insurers are obligated to pay.

1.78. "Zervos" means Apostolos Zervos.

## 2. The Settlement Consideration

2.1. In consideration of the settlement of the Released Plaintiffs' Claims against the Released Settling Defendant Parties in the Class Actions, as well as the releases to be provided in the PIPE and SPAC Action, Akazoo and the MMAC Insurer will pay a total of $35,000,000 (thirty-five million U.S. dollars), with $26,000,000 (twenty-six million dollars) funded by Akazoo's cash on hand and $9,000,000 (nine million U.S. dollars) funded by the MMAC Insurer.  Of the total $35,000,000 consideration amount, the Class Action Settlement Amount, $4,900,000 (four million nine hundred thousand U.S. dollars), is allocated to resolve the Class Actions.

2.2.     Akazoo is attempting to recover additional funds from certain sources pursuant to the Settlement, including from: (a) EarlyBirdCapital and RSM US LLP (*i.e.*, the "Service Provider Recovery Amount"); and (b) the Akazoo Insurers via claims (in coordination with the Akazoo Investors) for unreimbursed defense costs and unpaid indemnity claims (*i.e.*, the "Unreimbursed Insurance Amount").  Akazoo also will take commercially reasonable steps to obtain a partial refund of the premium paid for its current directors and officers insurance policy based on the cessation of any need for such coverage (*i.e.*, the "Insurance Refund Amount").

2.3.     Akazoo's total recovery of the Service Provider Recovery Amount, the Insurance Refund Amount, and the Unreimbursed Insurance Amount (collectively, the "Akazoo Recovery Amount"), if any, shall be distributed as follows. The first $500,000 of the Akazoo Recovery Amount shall be held in Defense Counsel's trust account to address certain indemnification obligations of the Company incurred after issuance of the Preliminary Approval Order and only to the extent that those obligations are associated with any U.S. government investigation or legal action relating to the allegations, transactions, facts, matters or occurrences, representations, or omissions that are involved, set forth, or referred to in the Class Actions (the "Indemnification Holdback").  The Indemnification Holdback will be maintained for a period of one year following issuance of the Final Judgment and, thereafter, any remaining amount of the Indemnification Holdback will be further distributed consistent with the distribution of the Akazoo Recovery Amount outlined below.  If the Indemnification Holdback is exhausted prior to one year following issuance of the Final Judgment, Defense Counsel shall immediately inform Class Counsel and Susman Godfrey that the Indemnification Holdback has been exhausted.

2.4.     The Service Provider Recovery Amount will be split on a 50:50 basis between Akazoo and the Akazoo Investors.  Any amount paid from the Service Provider

Recovery Amount to the Akazoo Investors will be divided as follows: 14% to the Class Actions and 86% to the PIPE and SPAC Action.

       2.5.     The Unreimbursed Insurance Amount will be split 75:25, with the Akazoo Investors receiving 75% and Akazoo receiving 25%. Any amount paid from the Unreimbursed Insurance Amount to the Akazoo Investors will be divided as follows: 14% to the Class Actions and 86% to the PIPE and SPAC Action.

       2.6.     The Insurance Refund Amount will be split on a 50:50 basis between the Akazoo Investors and Akazoo. Any amount paid from the Insurance Refund Amount to the Akazoo Investors will be divided as follows: 14% to the Class Actions and 86% to the PIPE and SPAC Action.

       2.7.     Not including any funds spent pursuant to the Indemnification Holdback, the Akazoo Recovery Amount shall be capped at $1,750,000 (one million, seven hundred fifty thousand U.S. dollars), and will be used to resolve the Company's remaining affairs, including the negotiated resolution of certain accounts payable.

       2.8.     If the Akazoo Recovery Amount exceeds $1,750,000 (one million, seven hundred fifty thousand U.S. dollars) (not including any funds spent pursuant to the Indemnification Holdback), all additional amounts shall be paid to the Akazoo Investors and constitute part of the Additional Settlement Amount, which will be divided amongst the Akazoo Investors as follows: 14% to the Class Actions and 86% to the PIPE and SPAC Action. In the event that the amount recovered by the Akazoo Investors collectively from the Class Action Settlement Amount, the PIPE and SPAC Settlement Amount, the Additional Settlement Amount, and any other additional recovery (by settlement or judgment) arising out of or relating to the allegations asserted in the Federal Action, the State Action, or the PIPE and SPAC Action

exceeds $43,000,000, then the Akazoo Investors will (i) promptly notify the MMAC Insurer that such recovery has or is expected to exceed $43,000,000 and (ii) pay back, by wire transfer, $1,000,000 (one million U.S. dollars) to the MMAC Insurer no later than fifteen (15) Business Days after the effective date of any settlement or judgment that brings their total recovery above $43,000,000.  For the avoidance of doubt, any amount of *pro rata* recovery from Crowe obtained by the MMAC Officers and Directors (other than Dickey) pursuant to Paragraph 2.11 below shall be included in determining whether the total amount recovered by the Akazoo Investors has exceeded $43 million.

2.9.    The Class Action Settlement Amount shall be paid into an interest bearing escrow account (the "Settlement Fund"), within 10 Business Days of the later of: (i) the Court granting preliminary approval of the Settlement of the Class Actions; (ii) Akazoo's and the MMAC Insurer's receipt of complete payment instructions, including a W-9 form, wire instructions, contact information for verbal confirmation of such instructions, and other information or authorizations that may be required by the MMAC Insurer; or (iii) the approval of the disbursement of Akazoo funds currently frozen in the SEC Action.  The Class Action Settlement Amount will be funded as follows: $3,640,000 to be paid by Akazoo and $1,260,000 to be paid by the MMAC Insurer.

2.10.    Akazoo and Dickey shall assign their claims against Crowe to the Akazoo Investors.  Upon request from the Akazoo Investors, Akazoo, Dickey, and the Macquarie Settling Parties will provide a full and complete release to Crowe provided Akazoo, Dickey, and the Macquarie Settling Parties are receiving a full and complete release from Crowe.  Other than Crowe, Akazoo and Dickey may pursue any entity that does not participate in this Settlement, including, but not limited to, the Non-Released Parties.  Akazoo and Dickey will make

reasonable efforts to assist the Akazoo Investors in pursuing claims against Crowe by, among other things, producing documents and providing testimony.

2.11.   Upon the Effective Date of the Class Action Settlement and the PIPE and SPAC Action Settlement, the MMAC Directors and Officers (other than Dickey) may participate in claims against Crowe based on their PIPE or SPAC investments.  The MMAC Officers and Directors (other than Dickey) will share in any recovery from Crowe on a *pro rata* basis based on their PIPE and SPAC investments.  The MMAC Directors and Officers will provide any necessary conflict waivers and will sign the same fee agreement as the Susman Godfrey PIPE, SPAC, and Retail Investors.

2.12.   Schreuder will relinquish any and all rights and claims associated with any Akazoo securities in which he otherwise has an ownership interest, and also forego any claims against Akazoo for any contractual severance rights to which he otherwise might be entitled. Schreuder also will surrender any indemnification claims against the Company, with the exception of indemnification for future personal legal fees up to a cap of $30,000, and further subject to a haircut equal to that absorbed by other law firms with outstanding accounts payable owed by the Company.  Schreuder will reasonably cooperate in any additional litigation that the Akazoo Investors may engage in related to the subject matter of the Class Actions, including sitting for a deposition in London at a mutually agreeable time.  Upon request from the Akazoo Investors, Schreuder will provide a full and complete release to Crowe provided Schreuder is receiving a full and complete release from Crowe.

2.13.   Dimitropoulos will relinquish any and all rights and claims associated with any Akazoo securities in which he otherwise has an ownership interest, and also forego any claims against Akazoo for any unpaid employment-related compensation to which he otherwise

might be entitled.  Dimitropoulos also will surrender any indemnification claims against the Company, and further agrees to coordinate and negotiate in good faith with the Company to the extent the Company faces any legal action initiated by ENISA concerning repayment of a profit participative loan made to PHMI on or about October 13, 2010.  Upon request from the Akazoo Investors, Dimitropoulos will provide a full and complete release to Crowe provided Dimitropoulos is receiving a full and complete release from Crowe.

     **2.14.**    The Tosca Settling Parties will relinquish any and all claims based on investment losses associated with any Akazoo securities in which they otherwise have an ownership interest.  The Tosca Settling Parties also will surrender any and all claims against the Company arising out of or relating to any business dealings concerning Akazoo.  Upon request, the Tosca Settling Parties will assign to the Akazoo Investors any claims against Crowe relating to Akazoo.  None of the foregoing shall be interpreted as prohibiting or limiting in any way the ability of the Tosca Settling Parties to facilitate the corporate dissolution or restructuring or transfer of registered office and central administration of the Company or its affiliates or subsidiaries as agreed upon with the Company. Upon request from the Akazoo Investors, the Tosca Settling Parties will provide a full and complete release to Crowe relating to Akazoo provided the Tosca Settling Parties are receiving a full and complete release from Crowe relating to Akazoo.

### 3.    Handling and Disbursement of Funds by the Escrow Agent

     **3.1.**    Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account until the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant

to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates. Settling Defendants and the Additional Settling Parties shall have no responsibility for, interest in, or any liability whatsoever with respect to any investment or management decisions executed by the Escrow Agent.  The Settlement Fund shall bear all risks related to the investments of the Class Action Settlement Amount in accordance with the guidelines set forth in this ¶ 3.1.

3.2.    The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Settling Defendant, Released Settling Defendant Party, or any other person or entity who or which paid any portion of the Class Action Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

3.3.    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Class Counsel may pay from the Settlement Fund, without further approval from the Settling Defendants or further order of the Court, all Administrative Costs actually incurred and paid or payable.  In the event that the Settlement is terminated pursuant to the terms of this

Stipulation, all Administrative Costs paid or incurred, including any related fees, shall not be returned or repaid to Settling Defendants, any of the other Releasing Settling Defendant Parties, including the MMAC Insurer, or any other person or entity who or which paid any portion of the Class Action Settlement Amount.

### 4. Taxes

4.1.   The Settling Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  In addition, Class Counsel or their designee shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 4.1, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Class Counsel or their designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)   For purposes of § 1.468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B-2(k)(3) promulgated thereunder, the "administrator" shall be Class Counsel or their designee.  Class Counsel or their designee shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)).  Such returns (as well as the election described in this ¶ 4.1) shall be consistent with this ¶ 4.1 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

**(b)** All Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Settling Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and all expenses and costs incurred in connection with the operation and implementation of this ¶ 4.1 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 4.1) ("Tax Expenses"), shall be paid out of the Settlement Fund, as appropriate. Settling Defendants, their counsel, and the other Released Parties shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be withheld under Treasury Regulation § 1.468B-2(1)(2)). Settling Defendants, their counsel, and the other Released Parties shall have no responsibility for, interest in, or any liability whatsoever with respect to the foregoing provided in this ¶ 4.1. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this ¶ 4.1.

## 5. Preliminary Approval Order and Settlement Hearing

**5.1.** As soon as practicable after execution of this Stipulation, Plaintiffs will move for preliminary approval of the Settlement, certification of the Settlement Class for

settlement purposes only, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by the Settling Defendants.  Concurrently with the motion for preliminary approval, Plaintiffs shall apply to the Court for, and Settling Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.  The Preliminary Approval Order to be submitted to the Court shall contain the exhibits substantially in the form set for in: (i) the Long Notice (Exhibit A-1); (ii) the Proof of Claim Form (Exhibit A-2); (iii) the Summary Notice (Exhibit A-3); and (iv) the Postcard Notice (Exhibit A-4).  Settling Defendants and the Additional Settling Parties shall not object to, or have any responsibility for, Class Counsel's proposed Plan of Allocation.

5.2.    At the time of the submission described in ¶ 5.1 hereof, the Settling Parties, through their counsel, shall jointly request that, after notice is provided to the Settlement Class, the Court schedule and hold the Settlement Hearing and: (i) approve the Settlement as set forth herein; and (ii) enter a final order and partial judgment substantially in the form of Exhibit B hereto.

5.3.    During the settlement approval process, the parties to the State Action will request that the State Action be stayed as to the Settling Defendants.  Upon the Class Action Settlement becoming Final and effective, the State Plaintiffs will dismiss the Settling Defendants from the State Action with prejudice by a notice or stipulation of voluntary dismissal.

## 6.    Releases and Covenants Not to Sue

6.1.    The obligations incurred pursuant to this Settlement are in consideration of: (i) the full and final disposition of the Class Actions as against the Settling Defendants; and (ii) the release of any and all of the Released Claims as against all Released Parties.

6.2.    Pursuant to the Final Judgment, without further action by anyone, upon

the Effective Date of the Settlement, Plaintiffs, on behalf of themselves and the other Releasing Plaintiff Parties, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim against the Settling Defendants, the other Released Settling Defendant Parties, and the Released Additional Settling Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Released Settling Defendant Parties and the Released Additional Settling Parties. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

      **6.3.**     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves and the other Releasing Settling Defendant Parties, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Settling Defendants' Claim against Plaintiffs, the other Released Plaintiffs' Parties, including Plaintiffs' Counsel, the other Settling Defendants, and the Released Additional Settling Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Settling Defendants' Claims against any of the Released Plaintiffs' Parties, including Plaintiffs' Counsel, the other Settling Defendants, and any of the Released Additional Settling Parties. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

      **6.4.**     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, the Additional Settling Parties shall be deemed to have, and by

operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Additional Settling Parties' Claims against Plaintiffs, the other Released Plaintiffs' Parties, including Plaintiffs' Counsel, the Settling Defendants, and the other Released Settling Defendant Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Additional Settling Parties' Claims against any of the Released Plaintiffs' Parties, including Plaintiffs' Counsel, and any of the Released Settling Defendant Parties.  This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

6.5.    Notwithstanding ¶¶ 6.2-6.4 above, nothing in the Final Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Final Judgment.

## 7.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund

7.1.    As part of the Preliminary Approval Order, Plaintiffs shall seek appointment of a Claims Administrator. The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing and approving or denying Claims, under Class Counsel's supervision and subject to the jurisdiction of the Court. Other than Akazoo's obligation to provide reasonable assistance as provided in ¶ 7.2 below, none of the Settling Defendants, Additional Settling Parties, or any of their respective Releasees, shall have any involvement in or any responsibility, authority or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Plaintiffs, any other Settlement

Class Members or Class Counsel in connection with the foregoing. Defense Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

7.2.     In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Class Counsel shall cause the Claims Administrator to mail the Postcard Notice to those members of the Settlement Class as may be identified through reasonable effort. Class Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court, and the Long Notice and Proof of Claim Form to be posted on the settlement website that will be created for the Settlement. For the purposes of identifying and providing notice to the Settlement Class, within seven (7) Business Days of the date of entry of the Preliminary Approval Order, Akazoo shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Class Counsel or the Claims Administrator) all reasonably available security lists (consisting of names and addresses) of the holders of Akazoo securities during the Settlement Class Period.

7.3.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Long Notice attached hereto as Exhibit A-1 , or in such other plan of allocation as the Court approves).

7.4.     The Plan of Allocation proposed in the Long Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this

Stipulation that any particular plan of allocation be approved by the Court. Plaintiffs and Class Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in the Class Actions. Settling Defendants, the other Released Settling Defendant Parties, and the Additional Settling Parties shall not object in any way to the Plan of Allocation or any other plan of allocation in the Class Actions. No Settling Defendant, no other Released Settling Defendant Party, nor any Additional Settling Party shall have any involvement with or liability, obligation or responsibility whatsoever for the application of the Court-approved plan of allocation.

7.5.    Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Final Judgment to be entered in the Federal Action and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Released Settling Defendant Parties or the Released Additional Settling Parties with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

7.6.    Class Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Settling Defendant, no other Released Defendant Party, nor any Additional Settling Party shall be permitted to review, contest or object to any Claim, or any decision of the Claims Administrator or Class Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member. Class Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim submitted in the interests of

achieving substantial justice.

       **7.7.**    For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

       (a)    Each Settlement Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit A- 2, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Class Counsel, in their discretion, may deem acceptable;

       (b)    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Settling Defendant Party or any Released Additional Settling Party with respect to any Released Plaintiffs' Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)     Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Class Counsel shall thereafter present the request for review to the Court.

7.8.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the

validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of the Class Actions or of the Settlement in connection with the processing of Claim Forms.

7.9.    Class Counsel will apply to the Court, on notice to Defense Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any Administrative Costs associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

7.10.    Payment pursuant to the Class Distribution Order shall be Final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Judgment to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Released Settling Defendant Parties and Released Additional Settling Parties with respect to any and all of the Released Plaintiffs' Claims.

7.11.    No person or entity shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any other agent designated by Class Counsel, or the Released Settling Defendant Parties and/or their respective counsel, or the Released Additional Settling Parties and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or any order of the Court.  The Settling Parties, and their respective counsel, and Plaintiffs' damages expert and all other Released Parties shall have no liability whatsoever for the investment or distribution of

the Settlement Fund or the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

7.12.   All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## 8.   Attorneys' Fees and Litigation Expenses

8.1.   Class Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid from (and out of) the Settlement Fund.  Class Counsel also will apply to the Court for reimbursement of Litigation Expenses.  Class Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between the Settling Parties other than what is set forth in this Stipulation.

8.2.   Any attorneys' fees and Litigation Expenses awarded by the Court shall be paid to Class Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or

reversing the award has become Final.  Class Counsel shall make the appropriate refund or repayment in full no later than fifteen (15) Business Days after: (a) receiving from Defense Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Plaintiffs nor Class Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

8.3.    Class Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.  Released Settling Defendant Parties and Released Additional Settling Parties shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.  The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Escrow Account.

### 9.    Class Certification

9.1.    Solely for purposes of the Settlement and for no other purpose, Settling Defendants stipulate and agree to: (i) certification of the Federal Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Federal Plaintiffs as Class Representatives for the Settlement Class; and (c) appointment of The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

## 10.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

**10.1.**    Plaintiffs, on behalf of the Settlement Class, and Settling Defendants shall each have the right to terminate the Settlement and Stipulation by providing written notice of their or its election to do so ("Termination Notice") to all other Settling Parties within seven (7) Business Days of:

(i)      entry of a Court order declining to enter the Preliminary Approval Order in any material respect;

(ii)      entry of a Court order refusing to approve this Stipulation in any material respect;

(iii)      refusal of the SEC to provide necessary approvals of the Class Action Settlement and PIPE and SPAC Action settlement;

(iv)      denial of final judicial approval and effectiveness of the PIPE and SPAC Action settlement;

(v)      entry of a Court order declining to enter the Final Judgment in any material respect;

(vi)      entry of a court order declining to dismiss the Settling Parties in the State Action with prejudice;

(vii)      entry of an order by which the Final Judgment is modified or reversed in any material respect by any appeal or review; or

(viii)     failure on the part of any Settling Party to abide, in material respect, with the terms of this Stipulation.

In the absence of any of the events enumerated in the preceding sentence, ¶10.2, ¶ 10.5, or ¶ 10.7, no Party shall have the right to terminate the Stipulation for any reason.

**10.2.**   If the Class Action Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.1 of this Stipulation, then Plaintiffs, on behalf of the Settlement Class, shall have the right to: (a) terminate the Settlement and Stipulation by providing written notice to the Settling Defendants and the Additional Settling Parties at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

**10.3.**   The Effective Date of this Stipulation ("Effective Date") shall not occur unless and until each of the following events occurs, and it shall be the date upon which the last in time of the following events occurs:

**(a)**   Settling Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 10.5;

**(b)**   The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

**(c)**   The sum of $4,900,000 (four million nine hundred thousand U.S. dollars) has been paid into the Escrow Account, as set forth in ¶ 2.1;

**(d)**   The Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Final Judgment;

**(e)**   The Final Judgment has become Final as defined in ¶ 1.26;

**(f)**   The Federal Action has been dismissed with prejudice;

**(g)**   The State Action has been dismissed with prejudice;

**(h)**   The PIPE and SPAC Action Settlement obtains final judicial approval and becomes Final and effective; and

**(i)**   The SEC provides the necessary approvals of the Class Action

Settlement and the PIPE and SPAC Action Settlement.

10.4.    Upon the occurrence of the Effective Date, any and all interest or right of Settling Defendants or the Plaintiffs in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.

10.5.    In addition to the grounds set forth in ¶ 10.1 above, Akazoo shall have the unilateral right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in Akazoo's confidential supplemental agreement with Plaintiffs (the "Supplemental Agreement"), in accordance with the terms of that agreement. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Plaintiffs and Akazoo concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

10.6.    In the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, the Settling Parties shall be restored to their respective positions in the respective Class Actions immediately prior to the execution of this Stipulation, and they shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Class Actions shall be preserved without prejudice.

10.7.    In the event that the Court does not approve the Stipulation or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance

with its terms, the terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in either of the Class Actions or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

10.8.    In the event the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, within seven (7) Business Days (except as otherwise provided in the Supplemental Agreement) after the occurrence of such event, the Settlement Fund (less taxes already paid and any Administrative Costs which have either been disbursed or are determined to be chargeable) shall be refunded by the Escrow Agent to Akazoo and the MMAC Insurer, in proportion to their contribution to the Settlement Fund, plus accrued interest attributable to that amount by check or wire transfer pursuant to written instructions.  At the request of Akazoo or the MMAC Insurer, the Escrow Agent or their designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Akazoo or the MMAC Insurer pursuant to written instructions.

10.9.    No decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall be considered material to the Settlement, shall affect the finality of any Final Judgment, or be grounds for termination of the Settlement.

## 11.    No Admission of Liability or Wrongdoing

11.1.    Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that

may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of the Released Settling Defendant Parties or Additional Settling Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Settling Defendant Parties or Additional Settling Parties with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Class Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Settling Defendant Parties or Additional Settling Parties or in any way referred to for any other reason as against any of the Released Settling Defendant Parties or Additional Settling Parties, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b) shall be offered against any of the Released Plaintiffs' Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Released Plaintiffs' Parties that any of their claims are without merit, that any of the Released Settling Defendant Parties had meritorious defenses, or that damages recoverable in the Class Actions would not have exceeded the Class Action Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiffs' Parties, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c) shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Court approves this Stipulation, the Settling Parties and the Released Parties and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

### 12.     Terms of the Final Judgment

**12.1.**   If the Settlement contemplated by this Stipulation is approved by the Court, Class Counsel and Defense Counsel shall request that the Court enter a Final Judgment, substantially in the form attached hereto as Exhibit B.

### 13.     Miscellaneous Provisions

**13.1.**   Except in the event of the filing of a Termination Notice pursuant to ¶¶ 10.1, 10.2, 10.5, or 10.7 of this Stipulation or termination notice in accordance with the Settling Parties' Supplemental Agreement, the Settling Parties shall take all actions necessary to consummate this agreement; and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

**13.2.**   All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

**13.3.**   If and to the extent that any Akazoo Settling Party were to qualify as an employee under the laws of Luxembourg, this Stipulation is the result of reciprocal concessions and constitutes a full and final settlement ("*transaction*") within the meaning of article 2044 of the Luxembourg Civil Code.

13.4.    In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Settling Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiffs, the Settling Parties shall jointly move the Court to vacate and set aside the Releases given and the Final Judgment entered in favor of Settling Defendants and the other Released Parties pursuant to this Stipulation, in which event the releases and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 10.6 above and any cash amounts in the Settlement Fund (less any Taxes and Tax Expenses paid, due or owing with respect to the Settlement Fund and less any Administrative Costs actually incurred, paid or payable) shall be returned as provided in ¶ 10.8.

13.5.    The Settling Parties and their counsel represent that they will not encourage or otherwise influence (or seek to influence) any Settlement Class Members to request exclusion from, or object to, the Settlement.

13.6.    Each of the attorneys executing this Stipulation, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Settling Party he or she represents.

13.7.    This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among the Settling Parties concerning the Settlement and this Stipulation and its exhibits.   The Settling Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Settling Party hereto

concerning this Stipulation, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

13.8.   This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their counsel or their respective successors in interest.

13.9.   This Stipulation shall be binding upon, and shall inure to the benefit of, the Settling Parties and their respective agents, successors, executors, heirs, and assigns.

13.10.  The Released Parties who do not appear on the signature lines below, are acknowledged and agreed to be third party beneficiaries of this Stipulation and Settlement.

13.11.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

13.12.  This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall constitute valid execution of the Stipulation as if all signatories hereto had executed the same document. Copies of this Stipulation executed in counterpart shall constitute one agreement.

13.13.  This Stipulation, the Settlement, the Supplemental Agreement, and any and all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort, or otherwise, shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles.

13.14.  If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt.  Notice shall be

provided as follows:

| | |
|---|---|
| If to Plaintiffs or Class Counsel: | The Rosen Law Firm, P.A.<br>Attn: Phillip Kim<br>275 Madison Avenue, 40th Floor<br>New York, New York 10016<br>Telephone: (212) 686-1060<br>Email: pkim@rosenlegal.com |
| | Lead Counsel in the Federal Action |
| | Glancy Prongay & Murray LLP<br>Attn: Casey E. Sadler<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 201-9150<br>Email: CSadler@glancylaw.com |
| | Counsel in the State Action |
| If to Settling Defendants: | Gibson, Dunn & Crutcher LLP<br>Attn:  Christopher M. Joralemon<br>200 Park Avenue, 48th Floor<br>New York, NY 10166<br>Telephone: (212) 351-2668<br>Email: cjoralemon@gibsondunn.com |
| | Counsel for certain Settling Defendants |
| If to Additional Settling Parties: | Shearman & Sterling LLP<br>Attn: Adam S. Hakki<br>Daniel Lewis<br>599 Lexington Avenue<br>New York, NY  10022<br>Telephone:  212.848.4000<br>Email: Adam.Hakki@shearman.com |
| | Counsel for the Macquarie Settling Parties |
| | Dechert LLP<br>Attn: Neil A. Steiner<br>1095 Avenue of the Americas<br>New York, NY 10036<br>Email: neil.steiner@dechert.com |

Counsel for the Tosca Settling Parties

**13.15.**  Any claim or dispute among the Settling Parties arising out of, relating to, or in connection with the interpretation or implementation of the terms of the Stipulation prior to submission to the Court shall be resolved by the mediator Gregory P. Lindstrom of Phillips ADR, first by way of mediation and if unsuccessful by way of final binding non-appealable arbitration.  In the event of dispute over the Stipulation, the prevailing party shall be entitled to fees and costs.

**13.16.**  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court solely for purposes of implementing and enforcing the Settlement embodied in this Stipulation and for no other purpose in this or any other action.

**13.17.**  The Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

**13.18.**  Plaintiffs, Plaintiffs' Counsel, Settling Defendants, Defense Counsel, and the attorneys, staff, experts, and consultants assisting them in this Action agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of the Class Actions against the Released Parties, (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly disparage or economically harm the Released Parties with respect to any matter relating to the subject matter

of this Action, and (c) they will not discuss any confidential matters related to this Action or the Settlement with anyone.

**13.19.**  All agreements by, between, or among the Settling Parties, their counsel, and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

**13.20.**  The Settling Parties shall not assert or pursue any action, claim, or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure, the Georgia Rules of Civil Procedure, and/or the Private Securities Litigation Reform Act of 1995 in connection with the Class Actions, the Settlement, the Stipulation, or the Supplemental Agreement.  The Settling Parties agree that the Class Actions were resolved in good faith following arm's-length bargaining, in full compliance with applicable requirements of good faith litigation under the Exchange Act, the Securities Act, Rule 11 of the Federal Rules of Civil Procedure, the Georgia Rules of Civil Procedure, and/or the Private Securities Litigation Reform Act of 1995.

**13.21.**  Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

**13.22.**  The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations

under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

13.23. Pursuant to the Class Action Fairness Act ("CAFA"), no later than ten (10) calendar days after this Stipulation is filed with the Court, the Settling Defendants shall complete service on the appropriate federal and state government officials of all notices required under the Class Action Fairness Act, 28 U.S.C. § 1715, and shall thereafter notify Class Counsel as to completion of such service.  Settling Defendants shall pay the costs of providing CAFA notice.

13.24. The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

13.25. Except as otherwise provided herein, each Settling Party shall bear its own costs.

13.26. No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Settling Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  April 22, 2021

      **THE ROSEN LAW FIRM, P.A.**

      By: _____
      Phillip Kim
      Laurence M. Rosen
      275 Madison Avenue, 40th Floor
      New York, New York 10016

      *Lead Counsel in the Federal Action*

      **GLANCY PRONGAY & MURRAY LLP**

      By: _____
      Lionel Z. Glancy
      Robert V. Prongay
      Casey E. Sadler

      1925 Century Park East, Suite 2100
      Los Angeles, CA 90067

      *Counsel in the State Action*

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  April 22, 2021

**THE ROSEN LAW FIRM, P.A.**

By: _____
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10016

*Lead Counsel in the Federal Action*

**GLANCY PRONGAY & MURRAY LLP**

By: _____
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler

1925 Century Park East, Suite 2100
Los Angeles, CA 90067

*Counsel in the State Action*

**GIBSON, DUNN & CRUTCHER LLP**


By: _____
Mark A. Kirsch
Christopher M. Joralemon
200 Park Avenue, 48th Floor
New York, NY 10166

*Counsel for Akazoo S.A., Maja Lapcevic, Athan
Stephanopoulos, Alexander Macridis, David
Bryan Roche, Asit Mehra, Colin Miles, Lew
Dickey, Modern Media Acquisition Corp. S.A.,
Modern Media Acquisition Corp., Modern Media
Sponsor, LLC, William Drewry, Adam Kagan,
Veronique Marty, Blair Faulstich, George
Brokaw, and John White*



**SHEARMAN & STERLING LLP**


By: _____
Adam S. Hakki
Daniel Lewis
599 Lexington Avenue
New York, NY  10022
Telephone:  212.848.4000

*Counsel for the Macquarie Settling Parties*



**DECHERT LLP**


By: _____
Neil A. Steiner
1095 Avenue of the Americas
New York, NY 10036

*Counsel for the Tosca Settling Parties*

**GIBSON, DUNN & CRUTCHER LLP**


By: _____
Mark A. Kirsch
Christopher M. Joralemon
200 Park Avenue, 48th Floor
New York, NY 10166

*Counsel for Akazoo S.A., Maja Lapcevic, Athan
Stephanopoulos, Alexander Macridis, David
Bryan Roche, Asit Mehra, Colin Miles, Lew
Dickey, Modern Media Acquisition Corp. S.A.,
Modern Media Acquisition Corp., Modern Media
Sponsor, LLC, William Drewry, Adam Kagan,
Veronique Marty, Blair Faulstich, George
Brokaw, and John White*


**SHEARMAN & STERLING LLP**

By: _____
Adam S. Hakki
Daniel Lewis
599 Lexington Avenue
New York, NY  10022
Telephone:  212.848.4000

*Counsel for the Macquarie Settling Parties*


**DECHERT LLP**


By: _____
Neil A. Steiner
1095 Avenue of the Americas
New York, NY 10036

*Counsel for the Tosca Settling Parties*

-54-

**GIBSON, DUNN & CRUTCHER LLP**

By: _____

Mark A. Kirsch
Christopher M. Joralemon
200 Park Avenue, 48th Floor
New York, NY 10166

*Counsel for Akazoo S.A., Maja Lapcevic, Athan
Stephanopoulos, Alexander Macridis, David
Bryan Roche, Asit Mehra, Colin Miles, Lew
Dickey, Modern Media Acquisition Corp. S.A.,
Modern Media Acquisition Corp., Modern Media
Sponsor, LLC, William Drewry, Adam Kagan,
Veronique Marty, Blair Faulstich, George
Brokaw, and John White*

**SHEARMAN & STERLING LLP**

By: _____

Adam S. Hakki
Daniel Lewis
599 Lexington Avenue
New York, NY  10022
Telephone:  212.848.4000

*Counsel for the Macquarie Settling Parties*

**DECHERT LLP**

By: _____

Neil A. Steiner
1095 Avenue of the Americas
New York, NY 10036

*Counsel for the Tosca Settling Parties*

**XL SPECIALTY INSURANCE**

By: _____

Ashley Sakakeeny

Claims Specialist


**REED SMITH LLP**


By: _____

John C. Scalzo

599 Lexington Avenue

New York, NY 10022

*Counsel for Panagiotis Dimitropoulos*


**QUINN EMANUEL URQUHART & SULLIVAN, LLP**


By: _____

Michael Liftik

1300 I Street, NW, Suite 900

Washington, DC 20005

*Counsel for Petrus (Pierre) Schreuder*

**XL SPECIALTY INSURANCE**


By: _____
Ashley Sakakeeny
Claims Specialist


**REED SMITH LLP**

By: _____
John C. Scalzo
599 Lexington Avenue
New York, NY 10022

*Counsel for Panagiotis Dimitropoulos*


**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**


By: _____
Michael Liftik
1300 I Street, NW, Suite 900
Washington, DC 20005

*Counsel for Petrus (Pierre) Schreuder*

**XL SPECIALTY INSURANCE**


By: _____
Ashley Sakakeeny
Claims Specialist


**REED SMITH LLP**


By: _____
John C. Scalzo
599 Lexington Avenue
New York, NY 10022

*Counsel for Panagiotis Dimitropoulos*


**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: _____
Michael Liftik
1300 I Street, NW, Suite 900
Washington, DC 20005

*Counsel for Petrus (Pierre) Schreuder*