**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     NATURE OF THE ACTION ......................................................................... 2

III.    FACTUAL BACKGROUND ......................................................................... 3

        A.      The Federal Action ............................................................................ 3

        B.      The State Action ................................................................................ 3

        C.      The PIPE and SPAC Action ............................................................. 4

        D.      Mediation Efforts and Settlement Negotiations............................... 4

IV.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)...................... 5

        A.      Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate" and the Court Will "Likely" be Able to Grant Final Approval ...................................................................................... 5

        B.      A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair .............................................................................. 7

        C.      Public Policy Favors Settlement of Securities Class Actions............... 7

V.      ARGUMENT................................................................................................. 8

        A.      The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors and Thus, Warrants Preliminary Approval ...................................................................................... 8

                1.      Plaintiffs and Counsel Adequately Represented the Settlement Class ....... 8

                2.      The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation.............................................................................. 9

                3.      The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation............ 10

                        (a)      Risks of Establishing Liability and Damages .............................. 11

                        (b)      Other Factors Established by Rule 23(e)(2)(C) ........................... 12

                4.      The Settlement Treats all Members of the Settlement Class Equitably Relative to Each Other.......................................................................... 14

i

5.     Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval ... 14

B.     Certification of the Settlement Class for Settlement Purposes is Appropriate ..... 16

1.     The Settlement Class Satisfies the Requirements of Rule 23(a)............... 17

(a)     Settlement Class Members are too Numerous to be Joined.......... 17

(b)     There are Common Questions of law and Fact............................ 18

(c)     Plaintiffs' Claims are Typical of Those of the Settlement Class .. 18

(d)     Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class........................................................................... 19

(i)     Proposed Class Representatives are Adequate ....... 19

(ii)     Proposed Class Counsel are Adequate.................... 20

2.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 21

(a)     Common Legal and Factual Questions Predominate.................... 21

(b)     A Class Action is Superior to Other Methods of Adjudication .... 22

C.     The Court Should Approve the Proposed Form and Method of Notice ............... 23

VI.     THIS COURT HAS JURISDICTION TO APPROVE THE SETTLEMENT IN THE STATE ACTION ....................................................................................................................... 24

VII.     PROPOSED SCHEDULE OF EVENTS...................................................................... 25

VIII.     CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 16, 17, 22

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) .................................................................................................... 20

*Anwar v. Fairfield Greenwich Ltd.*,
  2012 WL 1981505 (S.D.N.Y. June 1, 2012) .................................................................... 13

*Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotech, Inc. v. Auerbach*,
  2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) .................................................................... 10

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ............................................................................................ 18

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................. 14

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) .............................................................................. 23

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .............................................................................................. 17

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................................ 9

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ............................................................................................ 16

*Fogarazzo v. Lehman Bros.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ..................................................................................... 20

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .................................................................................... 16

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................................. 10, 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................. 16, 24

iii

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................................ 12

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................................................ 5

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................... 14

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)............................................................................................ 19, 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................................... 17

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................................................................... 14

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................... 16

*In re Globalstar Sec. Litig.*,
2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ........................................................................ 18

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
2015 WL 4605786 (N.D. Cal. July 30, 2015)....................................................................... 25

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................ 8, 15, 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................................. 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..................................................................... 16

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................................. 7

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................... 14

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................... 15

*In re Mut. Funds Inv. Litig.,*
2010 WL 2342413 (D. Md. May 19, 2010) ................................................................... 24

*In re Nasdaq Mkt. Makers Antitrust Litig.,*
176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................................... 5

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................... 7

*In re Payment Card Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................................. 6, 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
991 F. Supp. 2d 437 (E.D.N.Y. 2014) .......................................................................... 13

*In re Pfizer Inc. Sec. Litig.,*
282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................................... 18

*In re Platinum & Palladium Commodities Litig.,*
2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................................. 7

*In re Polaroid ERISA Litig.,*
240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................. 9, 20

*In re Sadia, S.A. Sec. Litig.,*
269 F.R.D. 298 (S.D.N.Y. 2010) ...................................................................... 17, 18, 19

*In re Stock Exchs. Options Trading Antitrust Litig.,*
2005 WL 1635158 (S.D.N.Y. July 8, 2005) ................................................................... 5

*In re Twinlab Corp. Sec. Litig.,*
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ............................................................................ 19

*In re Veeco Instruments, Inc., Sec. Litig.,*
235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................................ 21, 22

*In re Vivendi Universal, S.A.,*
242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................... 17

*Karvaly v. eBay, Inc.,*
245 F.R.D. 71 (E.D.N.Y. 2007) .................................................................................... 17

*Leung v. Home Boy Rest. Inc.,*
2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................................................................... 9

*In re Marsh & McLennan Cos., Inc. Sec. Ltig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 16, 19

*Machniewicz v. Uxin Limited, et al*,
   1:19-cv-00822 (E.D.N.Y.) ................................................................................... 24

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................................. 15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................. 22

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
   2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ...................................................... 11

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................................. 21

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................... 12

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ................................................................................... 22

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................................. 19, 23

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ............................................................................... 16

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ........................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 7, 9

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................................. 16

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ...................................................... 21

*Yedlowski v. Roka Bioscience, Inc.*,
   2016 WL 6661336 (D.N.J. Nov. 10, 2016) .......................................................... 20

STATUTES

15 U.S.C. § 78u-4(a)(7) ..................................................................................................... 23

RULES

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

OTHER AUTHORITIES

*Newberg on Class Actions* § 11:25 (4th ed. 2002) ......................................................... 6

Lead Plaintiffs Tim Caldwell ("T. Caldwell"), Sharon Caldwell ("S. Caldwell"), Nikolaos Poulakis ("Poulakis"), and John Pullen ("Pullen" and collectively, "Federal Plaintiffs" or "Lead Plaintiffs"), and plaintiffs Eva Pareja ("Pareja") and Greg Sweet ("Sweet"), plaintiffs in the State Action (collectively, the "State Plaintiffs" and together with Federal Plaintiffs, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed partial Settlement (the "Settlement") as set forth in the Stipulation and Agreement of Partial Settlement, dated April 22, 2021 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Hearing") where the Court will consider (a) final approval of the Settlement and entry of the proposed Final Order and Partial Judgment, (b) the Plan of Allocation (the "Plan") of settlement proceeds, and (c) the application for an award of attorneys' fees, expenses, and reimbursement to Plaintiffs pursuant to the Private Securities Litigation Reform Act.

## I.      INTRODUCTION

Plaintiffs achieved an excellent partial resolution of the Federal and State Actions (collectively, the "Class Actions"). The proposed Settlement will resolve all claims against the Settling Defendants and the Additional Settling Parties in exchange for a sizable cash payment of $4,900,000 (the "Class Action Settlement Amount") for the Settlement Class's benefit. This recovery represents approximately 54.4% of the maximum recoverable damages.

By the time the Settlement was reached, Plaintiffs and their counsel were well informed

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation, filed concurrently herewith.  The Stipulation includes the partial settlement of the parallel action pending in the Superior Court for the State of Georgia, Fulton County *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (the "State Action").

1

about the strengths and weaknesses of the claims and Settling Defendants' defenses. Indeed, prior to reaching the Settlement, Plaintiffs' Counsel: (i) conducted a comprehensive investigation, which included, *inter alia*, a review and analysis of Akazoo's filings with the U.S. Securities and Exchange Commission ("SEC"), media and analyst reports about the Company, and consultation with damages experts; (ii) drafted the detailed Amended Complaint for Violation of the Federal Securities Laws (the "Complaint"); (iii) drafted and exchanged extensive mediation statements; (iv) participated in a three-day mediation session before mediator Gregory P. Lindstrom, Esq. of Phillips ADR; and (v) engaged in extensive negotiations regarding the terms of the proposed Settlement. The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, in conjunction with a well-respected mediator. As discussed in greater detail below, Plaintiffs and their counsel believe the proposed Settlement meets the standards for preliminary approval and is in Settlement Class's best interest. Accordingly, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

## II.      NATURE OF THE ACTION

This is a securities class action brought by investors alleging, *inter alia*, that certain defendants violated the federal securities laws by making false and misleading statements regarding the profitability of Akazoo Limited ("Old Akazoo") and its rapid rise in subscribership and revenues. Investors were allegedly misled by Settling Defendants' statements emphasizing Old Akazoo's strong, experienced management team, including the extensive industry-specific background of its founder, Zervos, and Old Akazoo's unique, "hyper-local" focus and abilities, which garnered its 4.3 million subscribers and 37 million registered users across 25 countries and lucrative partnerships. As a result of these false and misleading statements, the prices of Akazoo's publicly-traded securities were allegedly artificially inflated and declined when the truth was revealed.

### III.    FACTUAL BACKGROUND

#### A.    The Federal Action

Two class action complaints were filed in the United States District Court for the Eastern District of New York (the "Court"). The first, filed on April 24, 2020, was styled *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900. The second, filed on June 19, 2020, was styled *Caldwell, et al.*, *v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737. On July 17, 2020, the Court: ordered the cases be consolidated into *In re Akazoo S.A. Securities Litigation*, Case No. 1:20-cv-01900-BMC; appointed T. Caldwell, S. Caldwell, Poulakis, and Pullen as Lead Plaintiffs; and approved their selection of The Rosen Law Firm, P.A. ("Rosen Law") to serve as Lead Counsel. (Dkt. No. 12).

On September 8, 2020, Federal Plaintiffs filed the operative Complaint asserting claims against the Settling Defendants, Zervos, and Crowe for alleged violations of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, as well as Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") (Dkt. No. 15). On October 9, 2020, Federal Plaintiffs filed a Consent Motion to Intervene in the action brought by the SEC against Akazoo, *Securities and Exchange Commission v. Akazoo S.A.*, Case No. 1:20-cv-08101-AKH (S.D.N.Y.).

#### B.    The State Action

On June 22, 2020, State Plaintiffs commenced the State Action in the Superior Court for the State of Georgia, Fulton County, on behalf of all persons and entities that purchased or otherwise acquired Akazoo common stock pursuant and/or traceable to the Company's registration statement and prospectus issued in connection with Akazoo's September 2019 business combination. The State Action asserted violations of Sections 11, 12(a)(2), and 15 of the Securities Act against Akazoo, Zervos, Settling Old Akazoo Defendants, Dickey, MMAC Director Defendants, and Crowe.

3

On November 9, 2020, defendant Crowe filed: (i) a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to dismiss for failure to state a claim upon which relief can be created; and (ii) an answer and affirmative defenses. That same day, defendants Dickey, Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo filed a stipulation extending the time for them to answer. In light of the agreement between the parties to engage in settlement discussions regarding a potential global resolution of the actions, including the State Action, the parties in the State Action have filed extensions to the relevant deadlines, and State Plaintiffs currently have until April 20, 2021 to respond to Crowe's motion to dismiss and Dickey, Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo have until April 19, 2021 to respond to the complaint in that action.

### C.    The PIPE and SPAC Action

Another group of Akazoo shareholders, represented by Susman Godfrey L.L.P. (the "Susman Godfrey PIPE, SPAC, and Retail Investors"), have asserted claims for those who: (i) invested in the business combination between Old Akazoo and MMAC through a private investment in public entity ("PIPE") offering; and/or (ii) converted shares of MMAC into Akazoo securities; and/or (iii) purchased Akazoo securities on the open market (the "PIPE and SPAC Action").

### D.    Mediation Efforts and Settlement Negotiations

The Settling Parties, as well as the Susman Godfrey PIPE, SPAC, and Retail Investors, began settlement discussions in October 2020. The parties to the Federal Action, State Action, and the PIPE and SPAC Action, as well as the Additional Settling Parties, attended a mediation on December 15-17, 2020, before Gregory Lindstrom of Phillips ADR. Prior to the mediation, the participants exchanged detailed mediation statements. Although a global settlement was not reached during the three-day mediation session, the Settling Parties and the Susman Godfrey PIPE, SPAC, and Retail Investors continued discussions by telephone and email with Mr. Lindstrom's assistance.

4

The global settlement of the Class Actions and PIPE and SPAC Action provides for consideration of $35,000,000 in total, with 86% of the total consideration amount, or $30,100,000, to be paid to resolve the claims of the PIPE and SPAC Action,[2] and 14% of the total consideration amount, or $4,900,000, to resolve the claims with Settling Defendants and the Additional Settling Parties in the Class Actions. This percentage breakdown of the $35 million was negotiated between counsel for the Class Actions and the PIPE and SPAC Action and reflects the proportionate size of the damages for the PIPE and SPAC Action and the Class Actions. For any Additional Settlement Amounts recovered, as described herein, the same percentage breakdown (*i.e.*, 86% to the PIPE and SPAC Action and 14% the Class Actions) will be applied.

## IV.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

### A.    Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate" and the Court Will "Likely" be Able to Grant Final Approval

Class action settlements require court approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013).[3] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Thus, "[p]reliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). For preliminary approval, "courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99,

---

[2] The PIPE and SPAC Action will have its own stipulation to provide for the dismissal of the PIPE and SPAC Action, as set forth more fully in that stipulation.

[3] Unless otherwise noted, all emphasis is added and internal citations are omitted throughout.

5

102 (S.D.N.Y. 1997). The preliminary evaluation's purpose is to identify "terms [that] are unacceptable at the outset," and which would render "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." *Newberg on Class Actions* § 11:25 (4th ed. 2002).

Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2)—which governs final approval—courts consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitable relative to each other.

These new factors "add to, rather than displace, the *Grinnell* factors"[4] traditionally considered by courts within the Second Circuit. *Payment Card,* 330 F.R.D. at 29. The proposed Settlement merits preliminary approval and the Court should approve the Settling Parties' requested form, manner and schedule for notice, final approval, and related events because these will fairly apprise the Settlement Class of the Settlement terms and give them adequate opportunity to file

---

[4] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

6

claims in, submit objections to, or exclude themselves from, the Settlement.

**B.      A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair**

In determining whether a settlement will likely be approvable under Rule 23(e)(2), courts "consider[] the Rules 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Payment Card,* 330 F.R.D. at 29. However, courts cannot "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—may be premature at this stage. *See id.*

Thus, in conducting a preliminary approval inquiry, a court considers both the '"negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *Platinum & Palladium*, 2014 WL 3500655, at *11. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

**C.      Public Policy Favors Settlement of Securities Class Actions**

"The decision to grant or deny such approval lies squarely within the discretion of the trial court, and this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the

7

class action context…The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"). This strong judicial policy equally applies here.

## V.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors and Thus, Warrants Preliminary Approval

While Plaintiffs intend to make a fulsome showing under Rule 23(e)(2) in advance of the Settlement Hearing, preliminary review of the Rule 23(e)(2) factors is warranted at this stage to demonstrate that the proposed Settlement merits preliminary approval and notice of the Settlement to be disseminated to the Settlement Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the Class relief is adequate; and (d) the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(3)(2)(A)-(D); *see also* Sec. IV, *supra*.

Further, because the amendments to Rule 23 did not displace the Second Circuit's existing *Grinnell* test, it is appropriate to preliminarily consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

### 1.    Plaintiffs and Counsel Adequately Represented the Settlement Class

Plaintiffs and their counsel adequately represented the interests of absent Settlement Class Members for the purposes of Rule 23(e)(2)(A). Throughout the litigation, and in connection with the Settlement, the interests of Plaintiffs and their counsel have been fully aligned with the Settlement

8

Class. *Wal-Mart*, 396 F.3d at 106-07. Plaintiffs' claims are typical of, and coextensive, with the claims of the Settlement Class, and they have no antagonistic interests; rather, their interest in obtaining the largest possible recovery aligns with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Indeed, Plaintiffs contributed significantly to the Class Actions by overseeing the litigation and communicating with counsel, and participating in settlement discussions with Plaintiffs' Counsel.

Moreover, Plaintiffs' Counsel adequately represented the Settlement Class by, among other things: (a) skillfully litigating the Federal Action, including drafting the comprehensive Complaint; (b) drafting a detailed mediation statement setting forth the facts and analyzing the strengths of the Federal Action and potential damages for the Class Actions; (c) engaging in a three-day mediation session, and negotiating the terms of the proposed Settlement; and (d) drafting the Stipulation.

> **2.      The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"). Here, the Settlement is the result of good faith, arm's-length negotiations between well-informed and experienced counsel aided by a highly respected mediator. The manner by which the Settlement was achieved supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d

9

78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotech, Inc. v. Auerbach*, 2019 WL 7753447, at \*1 (C.D. Cal. Jan. 7, 2019) (settlement finally approval where negotiations overseen by mediator Gregory Lindstrom).

### 3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides the Settlement Class a guaranteed, cash payment of $4,900,000. This is an excellent result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' best case scenario—the total maximum damages potentially available in this action would be approximately $9 million. Under this scenario, the $4.9 million settlement represents a recovery of 54.4% of the Settlement Class's maximum estimated damages. In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Ex. 1 to the Declaration of Phillip Kim ("Kim Decl.").[5] Moreover, according to Cornerstone Research, for settlements where

---

[5] *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:*

damages were less than $25 million, the average settlement recovery was 19.7% in 2020, and

between 2011 and 2019, the average settlement recovery was 16.8%. *See* Ex. 2 to Kim Decl.[6] This

result is even more impressive when juxtaposed against the significant hurdles that Plaintiffs would

have had to overcome in order to prevail in this complex securities fraud litigation.

### (a)    Risks of Establishing Liability and Damages

Although Plaintiffs and their counsel believe the claims asserted against Settling Defendants

are meritorious, they recognize that further litigation created substantial risks, including the very real

risk that *no* recovery or a substantially smaller recovery might be achieved. Even if Plaintiffs were to

survive Defendants' anticipated challenges on the pleadings, Plaintiffs face significant obstacles to

obtaining enough proof to survive summary judgment. Plaintiffs would also encounter significant

loss causation defenses and damages arguments that could substantially reduce, or even eliminate,

Plaintiffs' alleged damages.

In addition to being complex due to its nature of being a securities class action, the fact that

many of the Settling Defendants and witnesses are located in Europe adds another layer of

complexity and creates substantial obstacles for discovery. Akazoo is a Luxembourg company based

in England, with much of the conduct at issue in this case occurring in Greece. To take substantially

all depositions, Federal Plaintiffs would have to follow appropriate international conventions and/or

apply to this Court for Letters Rogatory. "Courts in the Second Circuit have widely recognized that

obtaining evidence through the Hague Convention and letters rogatory are cumbersome and

inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v.*

*Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). There is no

---

*2020 Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16)).

[6] *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021 at p. 6 (Fig. 5)).

guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members.

If Plaintiffs survived summary judgment, they would then have to establish each element of their claims and damages to a jury's satisfaction. And even if Plaintiffs overcame all of the significant risks and prevailed at trial, such a victory would not guarantee the Class an ultimate recovery larger than the $4,900,000 Settlement.[7] Moreover, in the time it takes to proceed through each of these stages of litigation, every hour Settling Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks and provides an immediate and guaranteed benefit to the Settlement Class.

### (b)    Other Factors Established by Rule 23(e)(2)(C)

Courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or are neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator will process claims under

---

[7] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

the guidance of Plaintiffs' Counsel, allow Claimants an opportunity to cure deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan), after Court approval. This proposed claims processing method is standard in securities class action settlements as it has been long found to be effective, as well as necessary as neither Plaintiffs nor Settling Defendants possess the individual investor trading data required to distribute the Net Settlement Fund.

Second, as the Notice[8] discloses, Class Counsel, on behalf of Plaintiffs' Counsel, intends to seek a percentage of the common fund fee award, in an amount not to exceed one-third of the Class Action Settlement Amount, to compensate them for the services they rendered on behalf of the Settlement Class.  A proposed attorneys' fee of up to one-third of the Settlement Fund is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶8.2.

Third, with respect to Rule 23(e)(2)(C)(iv), the Settling Parties entered into a confidential

---

[8] "Notice" refers to the Notice of Pendency and Proposed Partial Settlement of Class Action, the Summary Notice of Pendency and Proposed Partial Settlement of Securities Class Action ("Summary Notice'), and the Postcard Notice, attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation.

13

agreement establishing certain conditions under which Settling Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Akazoo common stock request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 4. The Settlement Treats all Members of the Settlement Class Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 5. Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with the new factors set forth in Rule 23(e)(2), namely: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

First, the fact that there has been no formal discovery in this case does not weigh against preliminary approval. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has

interviewed several former employees of [Defendant] and obtained a number of internal documents, and all parties have conducted extensive research[.]"). Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

Second, a defendant's ability to withstand a judgment greater than that secured by settlement, generally, is not a determining factor. *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). As stated above, Akazoo is a Luxembourg company based in England, with much of the conduct at issue in this case occurring in Greece. Many of the Individual Defendants are based in Europe. Thus, even if Plaintiffs obtained a judgement against the Settling Defendants, there is no guarantee Plaintiffs could collect it. Moreover, while Akazoo's D&O insurance is financing the defense of the lawsuit and the Settlement, the amount of available insurance would be substantially depleted if this action were to proceed, if policy writers denied coverage, or the SEC froze these assets, eliminating the single most certain source for Plaintiffs to obtain a monetary recovery.

Finally, the Court needs to determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In conducting this analysis, the reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all

15

possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). Here, in light of the risks of continued litigation discussed above, the Settlement clearly falls within the range of reasonableness. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

**B.    Certification of the Settlement Class for Settlement Purposes is Appropriate**

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *Marsh & McLennan*, 2009 WL 5178546, at *8. Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX*, 283 F.R.D. at 186. A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a

16

consideration when settlement-only certification is requested."). At this point, the Court need not conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3).

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

To certify a class, the Court must determine whether four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613.

### (a)    Settlement Class Members are too Numerous to be Joined

The first element for class certification requires "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when a class consists of 40 or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.,* 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig*., 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig*., 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007) (numerosity generally met with nationally traded securities.).

Here, the Settlement Class is comprised of purchasers of Akazoo common stock. During the Settlement Class Period, Akazoo actively traded on NASDAQ with almost 50 million shares

outstanding. Thus, there are likely to be hundreds, if not thousands of Settlement Class Members. Thus, numerosity is satisfied.

### (b)        There are Common Questions of law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class." Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Globalstar Sec. Litig.*, 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."). Here, questions of law and fact regarding claims under Sections 10 and 14(a) and Rule 10b-5 of the Exchange Action and Section 11 of the Securities Act will be common to the class, including whether Defendants' representations to the investing public during the Settlement Class Period were "materially misleading." Similarly, such questions also exist regarding the Section 20(a) of the Exchange Act and Sections 12(a)(2) and 15 of the Securities Act claims, including whether the Individual Defendants "controlled" Akazoo. These questions are susceptible to common answers because their resolution does not differ based on the identity of the plaintiff.

### (c)        Plaintiffs' Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires the class representatives' claims be "typical" of the claims of the class. Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord Pfizer*, 282 F.R.D. at 44; *Sadia*, 269 F.R.D. at 304-05. "Typical"

18

does not mean "identical." *Marsh & McLennan*, 2009 WL 5178546, at \*10. The critical question is whether the proposed class representatives and class can point to a common course of conduct by defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.*

Here, Plaintiffs' claims are typical of the Settlement Class because their claims are based entirely on the alleged misrepresentations that Settling Defendants made to the investing public during the Settlement Class Period, as well as the Individual Defendants' control of Akazoo. Thus, Plaintiffs' and the Settlement Class's claims are based on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock"). The typicality requirement is met.

### (d)    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is satisfied when: (i) the claims of the proposed class representatives do not conflict with those of the class; and (ii) counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*15 (S.D.N.Y. Mar. 24, 2014); *Sadia*, 269 F.R.D. at 305.  Both prongs of the adequacy test are met.

### (i)    Proposed Class Representatives are Adequate

There is no antagonism or conflict of interest between Plaintiffs and the proposed Settlement Class. Each purchased Akazoo common stock during the Settlement Class Period and were injured

19

by the same alleged  misrepresentations and omissions. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, Plaintiffs' and Settlement Class Members' interests are aligned and they share the common objective of maximizing their recovery from Settling Defendants. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *Drexel*, 960 F.2d. at 291). Thus, Plaintiffs should be deemed class representatives.

### (ii)      Proposed Class Counsel are Adequate

Rule 23(g) requires a court to assess proposed class counsel's adequacy. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel, Rosen Law, has extensive experience prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including in the Eastern District of New York. *See e.g., In re Sequans Communications S.A. Sec. Litig.*, Case No. 1:17-cv-04665 (E.D.N.Y.); *Zubriski, et al., v. BioAmber Inc., et al.*, Case No. 2:17-cv-01531 (E.D.N.Y.). *See also*  Rosen Law's firm resume (Dkt. No. 7-4). Courts have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) at \*21 ("[Rosen Law] is highly

20

experienced in the complex field of securities fraud class action litigation"). State Plaintiffs' Counsel, Glancy Prongay & Murray LLP ("GPM") are also highly experienced practitioners in prosecuting securities class actions.[9] *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at \*18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel as they have "extensive experience serving as lead or co-lead counsel in class action securities litigation" and noting "[w]e have full confidence that they will fairly and adequately represent the interests of the class"). For these reasons, among others, Plaintiffs respectfully request the Court appoint Rosen Law and GPM to serve as Class Counsel.

### 2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Settlement Class satisfies these requirements.

### (a)      Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id*. Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class

---

[9] GPM's firm resume is attached as Exhibit 3 to the Kim Decl.

certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.

Here, if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. *See Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary."). Thus, predominance is met.

### (b)    A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Here, there is no evidence that putative class members desire to bring separate individual actions. Moreover, without class actions investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available") Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this request for class certification is only for purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

22

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) and should be preliminarily certified for purposes of the Settlement.

### C.    The Court Should Approve the Proposed Form and Method of Notice

Notice of a settlement must satisfy Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*. at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

The proposed Notice provides detailed information including: how to file claims, object to or opt-out of the Settlement; a description of Class Actions' claims; the Plan; and the fees and expenses to be sought by Plaintiffs' Counsel. The Notice also sets forth instructions to securities brokers and other nominees to provide Notice to those for whom the nominees held shares in a "street name."[10]

As outlined in the proposed Order Preliminarily Approving Partial Class Action Settlement

---

[10] The proposed Long Notice closely tracks a model notice published by the Federal Judicial Center. *See* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (last viewed April 23, 2021).

and Providing for Notice ("Prelim. App. Order"), if the Court grants preliminary approval, Strategic

Claims Services ("SCS")[11] will: mail the Postcard Notice to Settlement Class Members who can be

identified through reasonable effort; publish the Summary Notice in *Investor's Business Daily* and

over *GlobeNewswire*; and will create and maintain a settlement website that will be referenced in the

Notice. The Notice and Claim Form will be available at the settlement website, along with other

important documents including the Stipulation and deadlines.

Courts routinely find these methods of notice sufficient. In particular, "[t]he use of a

combination of a mailed post card directing class members to a more detailed online notice has been

approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig*., 298 F.R.D. 171, 183 n.3

(S.D.N.Y. 2014) (citing cases); *In re Mut. Funds Inv. Litig.,* 2010 WL 2342413, at *6-7 (D. Md.

May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice

available online as "the best notice practical"). In sum, Plaintiffs respectfully submit that the

combination of the mailed Postcard Notice, publication of the Summary Notice, and availability of

the Notice and Claim Form online provides the best notice that is practicable.

## VI.   THIS COURT HAS JURISDICTION TO APPROVE THE SETTLEMENT IN THE STATE ACTION

This Court may approve the settlement in the State Action as it also alleges violations of

Sections 11 and 15 of the Securities Act on behalf of the same class of Akazoo shareholders as the

Federal Action. In other words, the State Action's claims and the class on behalf of which they are

brought, overlap with and are encompassed by the Federal Action. Courts approve settlements

releasing claims for violations of the same federal securities laws brought in both federal and state

court. Chief Judge Brodie recently granted preliminary approval in *Machniewicz v. Uxin Limited, et*

*al.*, 1:19-cv-00822 (E.D.N.Y.) with a similarly structured settlement releasing securities claims in a

---

[11] Plaintiffs request the Court approve SCS as the claims administrator as it has significant experience administering securities settlements.

federal and state action. Kim Decl., Ex. 4;.*see also*; *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 WL 4605786, at *1 (N.D. Cal. July 30, 2015), *judgment entered sub nom. In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 WL 4605789 (N.D. Cal. July 30, 2015), *and aff'd*, 716 F. App'x 603 (9th Cir. 2017), *and aff'd*, 716 F. App'x 603 (9th Cir. 2017) (same). Thus, the Settling Parties agree that this Court has jurisdiction to approve the settlement in the State Action.

## VII.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing:

| Event | Deadline for Compliance |
|---|---|
| Mailing of Postcard Notice. | No later than 20 business days after the entry of Prelim. App. Order. (Prelim. App. Order ¶8(b)) ("Notice Date") |
| Publication of Summary Notice. | No later than 10 business days after Notice Date. (Prelim. App. Order ¶8(d)) |
| Deadline for filing Claim Form. | No later than 120 calendar days after Notice Date. (Prelim. App. Order ¶9) |
| Deadline for requests for exclusion. | Postmarked no later than 21 calendar days after Notice Date (Prelim. App. Order ¶12) |
| Deadline for objections. | Received no later than 21 calendar days prior to Settlement Hearing (Prelim. App. Order ¶15) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan and for application for attorneys' fees and reimbursement of expenses. | 35 calendar days prior to the deadline for objections (Preliminary Prelim. App. Order ¶25) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Hearing. (Prelim. App. Order ¶25) |
| Settlement Hearing. | At least 120 days after the entry of Prelim. App. Order [12] |

## VIII.    CONCLUSION

Plaintiffs respectfully request that the Court: preliminarily certify the Class for Settlement purposes; preliminarily approve the Settlement; approve the form and manner of Notice; and schedule the Settlement Hearing.

---

[12] Plaintiffs request sufficient time for Settlement Class Members to file claims, request exclusion from or submit objections to the Settlement, and for Plaintiffs to file their motion papers.

25

Dated: April 23, 2021                    THE ROSEN LAW FIRM, P.A.

                                         /s/ Phillip Kim
                                         Phillip Kim
                                         Laurence M. Rosen
                                         275 Madison Avenue, 40th Floor
                                         New York, New York 10016
                                         Telephone: (212) 686-1060
                                         Facsimile: (212) 202-3827
                                         Email:  pkim@rosenlegal.com
                                         Email:  lrosen@rosenlegal.com

                                         *Lead Counsel for Federal Plaintiffs and the Settlement Class*

                                         GLANCY PRONGAY & MURRAY LLP
                                         Lionel Z. Glancy
                                         Robert V. Prongay
                                         Casey E. Sadler
                                         1925 Century Park East, Suite 2100
                                         Los Angeles, California 90067
                                         Telephone: (310) 201-9150
                                         Facsimile: (310) 201-9160
                                         Email:  info@glancylaw.com

                                         *State Court Lead Counsel for State Plaintiffs and the Settlement Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of April 2021, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>*/s/ Phillip Kim*</u>
Phillip Kim