**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**PARTIAL CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................. 1

II.     STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 4

III.    ARGUMENT ..................................................................................................... 5

       A.    The Settlement is Fair, Reasonable, and Adequate in Light of The Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors ........................... 5

            1.    Plaintiffs and Class Counsel Adequately Represented the Settlement Class ...................................................................................................... 5

            2.    The Settlement is the Result of Arm's Length Negotiations ..................... 6

            3.    The Settlement is an Excellent Result for the Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ........................... 7

                  (a)    Complexity, Expense and Duration of Litigation .......................... 8

                  (b)    Establishing Liability and Damages ............................................ 10

                  (c)    Risks of Maintaining Class Action Status ................................... 12

                  (d)    Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation ................................................ 12

            4.    The Remaining Rule 23(e) Factors Support Final Approval ................... 13

            5.    The Settlement Treats all Members of the Class Equitably Relative to Each Other ............................................................................................. 15

            6.    The Settlement Class's Reaction to the Settlement Supports Final Approval ................................................................................................ 15

            7.    The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Final Approval ................................................................................................ 16

       B.    The Plan of Allocation is Fair and Reasonable .................................................. 19

       C.    The Settlement Class Should be Finally Certified .............................................. 21

       D.    The Notice Program Satisfies Rule 23 and Due Process ..................................... 21

IV.     CONCLUSION ................................................................................................ 23

## **TABLE OF AUTHORITIES**

<u>CASES</u>

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)...........................................................................................5

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ............................................................5

*Chatelain v. Prudential-Bache, Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................12

*Christine Asia Co., Ltd. v. Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................................5, 7

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................19

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).......................................................................................7

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .........................................................10

*In re "Agent Orange" Prods. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................12

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................18, 22

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................16

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................19

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................11

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)...................................................................... *passim*

*In re IMAX Securities Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................... 11, 17

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 15

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................ 21

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 6

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 Fed.Appx. 760  (2d Cir. Oct. 2, 2020) ...................................................... 5, 6

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................. 11

*Maley v. Del Global Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................... 14, 15

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................... 19

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012)...................................................... 9

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................. 6, 7, 21

<u>RULES</u>

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Pursuant to Fed. R. Civ. P. 23(e), the Court-appointed Lead Plaintiffs Tim Caldwell ("T. Caldwell"), Sharon Caldwell ("S. Caldwell," together with T. Caldwell the "Caldwells"), Nikolaos Poulakis ("Poulakis"), and John Pullen ("Pullen" and collectively, "Federal Plaintiffs" or "Lead Plaintiffs"), and plaintiffs Eva Pareja ("Pareja") and Greg Sweet ("Sweet"), plaintiffs in the parallel State Action (collectively, the "State Plaintiffs" and together with Federal Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed partial Settlement and Plan of Allocation.[1]

## I.    INTRODUCTION

Plaintiffs achieved an excellent partial resolution of the Federal and State Actions (collectively, the "Class Actions").[2]   The proposed partial Settlement will resolve all claims against Settling Defendants[3] and Additional Settling Parties[4] in exchange for a non-reversionary

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation and Agreement of Partial Settlement dated April 22, 2021 (ECF No. 32, the "Stipulation") or the concurrently filed Joint Declaration of Phillip Kim and Casey E. Sadler in Support of: (1) Plaintiffs' Motion for Final Approval of Partial Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

[2] The Stipulation includes the partial settlement of the parallel action pending in the Superior Court for the State of Georgia, Fulton County *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (the "State Action").

[3] Settling Defendants are: Akazoo S.A. ("Akazoo" or the "Company"), Petrus Schreuder, Panagiotis Dimitropoulos, Maja Lapcevic, Athan Stephanopoulos, Alexander Macridis, David Bryan Roche, Asit Mehra, Colin Miles, Lewis W. Dickey, Jr., Modern Media Acquisition Corp. S.A., Modern Media Acquisition Corp., XL Specialty Insurance Company, William Drewry, Adam Kagan, Veronique Marty, Blair Faulstich, George Browkaw, John White, and Modern Media Sponsor, LLC.

[4] Additional Settling Parties are: MIHI LLC, Macquarie Capital (USA) Inc., Toscafund Asset Management LLP and Penta Capital LLP and all funds managed by Toscafund Asset

1

cash payment of $4,900,000, additional contingent cash compensation (the "Additional Settlement Amount"), and assistance from certain Settling Defendants in prosecuting Settlement Class' claims against non-settling defendant Crowe U.K. LLP ("Crowe")—a certified public accounting firm that served as Akazoo Limited and Akazoo's auditor.  Additionally, several Settling Defendants will assign their claims against Crowe to Plaintiffs. As described below and in the Joint Declaration, the partial Settlement provides a significant and certain recovery, as well as potential additional future upside, in a case that presented numerous hurdles and risks.  In fact, the Settlement represents 54.4% of the Settlement Class's *maximum* recoverable class-wide aggregate damages, which is an extremely favorable result when compared to the median recovery in securities class action settlements with similar aggregate damages.

By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims as well as Settling Defendants' defenses. Indeed, as described in detail in the Joint Declaration, prior to reaching the Settlement, Class Counsel:  (i) conducted a comprehensive investigation, which included, *inter alia*, a review and analysis of the U.S. Securities and Exchange Commission ("SEC") filings of MMAC and Akazoo, public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, investor call transcripts, court filings and other publicly available material concerning MMAC and/or Akazoo, retaining an investigator to conduct interviews of former employees of Akazoo, and consultation with loss causation and damages experts; (ii) drafted the detailed 135-page Amended Complaint for Violation of the Federal Securities Laws (the "Complaint") as well as the operative complaint in the State Action; (iii) drafted a motion to intervene in the SEC Action against Akazoo; (iv) drafted a detailed

---

Management LLP and Penta Capital LLP including Tosca Opportunity, Tosca Mid Cap, The Pegasus Fund Limited and Tosca Penta Music LP.

mediation statement; (v) participated in a complicated three-day mediation session before mediator Gregory P. Lindstrom, Esq. of Phillips ADR, followed by weeks of continued arm's-length negotiations facilitated by Mr. Lindstrom; and (vi) engaged in extensive negotiations regarding the terms of the proposed Settlement. ¶¶10, 15-34. As discussed in greater detail below and in the Joint Declaration, Plaintiffs and Class Counsel believe the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. ¶11. Accordingly, Plaintiffs respectfully request the Court grant the Settlement final approval.[5]

Plaintiffs also request approval of the Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is designed to fairly and equitably distribute the proceeds of the Net Settlement Fund to Settlement Class Members. ¶¶68-76. As such, Plaintiffs respectfully submit that it is fair and should be approved.

Finally, the notice program constituted the "best notice ... practicable under the circumstances" and thus satisfies Rule 23 and due process. The Claims Administrator disseminated over 4,340 copies of the Postcard Notice to potential Settlement Class Members directing potential Settlement Class Members to online versions of the Long Notice and Claim Form, published the Summary Notice in *Investor's Business Daily* and caused it to be transmitted electronically over *GlobeNewswire*, and made the Long Notice, Claim Form, and other important documents available on a dedicated webpage on the Claims Administrator's website. Ex. 2 ("Evans Decl.") ¶¶2-10; 12. While the deadline to request exclusion or object to

---

[5] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of the factual background and the nature of the claims asserted (¶¶14-16); the work done by Plaintiffs and Class Counsel to prosecute the Class Actions (¶¶10, 15-34); the risks and uncertainties of the litigation (¶¶36-53); and the negotiations leading to the Settlement (¶¶29-34).

the Settlement has not yet passed, it is indicative of the high quality of the Settlement that no

objections or requests for exclusion have been received to date. *Id.* at ¶¶13-14.

In sum, the Settlement is both procedurally and substantively fair, reasonable, and

adequate.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the

Settlement and Plan of Allocation.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement

must be presented to the Court for approval, and should be approved if the Court finds it "fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).[6]  Rule 23(e)(2)—which governs final

approval—requires courts to consider the following questions in determining whether a proposed

settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
  (i)     the costs, risks, and delay of trial and appeal;
  (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
  (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitably relative to each other.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor

previously adopted by the courts.  The Second Circuit's traditional factors utilized to evaluate the

propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still

relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

---

[6] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A*., 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).   As set forth below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## III.   ARGUMENT

### A.   The Settlement is Fair, Reasonable, and Adequate in Light of The Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors

#### 1.   Plaintiffs and Class Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'"  *In re Patriot Nat'l, Inc. Sec. Litig*., 828 Fed.Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests.  Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible

recovery is, therefore, aligned with the other Settlement Class Members.  *See Patriot*, 2020 WL 5868283, at *3 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member.").   In addition, Plaintiffs diligently oversaw the litigation and communicated with their respective counsel on a regular basis.  Ex. 3 ("Caldwells Decl.") ¶5; Ex. 4 ("Poulakis Decl.") ¶5; Ex. 5 ("Pullen Decl.") ¶5; Ex. 6 ("Pareja Decl.") ¶5; and Ex. 7 ("Sweet Decl.") ¶5.

Second, Plaintiffs retained counsel who are highly experienced in securities litigation, and who have a long and successful track record representing investors in such cases.  *See* Exs. 8-10 (Rosen Law, GPM, and Holzer firm resumes).   As noted above, Plaintiffs' Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the case's strengths and weaknesses prior to entering the Settlement, including the limited sources of recovery.  ¶¶10, 14-34 (detailing counsel's extensive investigation of Akazoo, drafting detailed complaints in both the Federal and State Action as well as a motion to intervene in the SEC Action, drafting a detailed mediation statement and analyzing arguments made by the Susman Godfrey PIPE, SPAC, and Retail Investors, and participating in a three-day mediation session with numerous opposing parties).  *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

## 2.    The Settlement is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).  Here,

as detailed in the Joint Declaration and Declaration of Mediator Gregory P. Lindstrom, Esq. in Support of Final Approval of Partial Class Action Settlement ("Lindstrom Decl."), the mediation process was extremely complicated, involving the parties to the Federal Action, State Action, and the PIPE and SPAC Action, as well as the Additional Settling Parties, and spanned three full-day mediation sessions plus weeks of continued telephonic and electronic discussions with Mr. Lindstrom's assistance.  ¶¶29-34; Ex. 1 (Lindstrom Decl.) ¶¶10-13.  Mr. Lindstrom's declaration attests to the integrity of the mediation process and recommends the partial Settlement as being in the best interests of the Settlement Class.  *Id.* at  ¶¶16-18.  Mr. Lindstrom's participation in the instant Settlement underscores that it is the product of non-collusive, arm's-length negotiations.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, No. SACV1800236AGJCGX, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018) (acknowledging that Mr. Lindstrom is a "qualified mediator" and found that negotiations were arm's-length).

### 3. The Settlement is an Excellent Result for the Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).[7]  As discussed below, each of these factors supports the Settlement's approval.

---

[7] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status

### (a)    Complexity, Expense and Duration of Litigation

At the time the partial Settlement was reached, the adequacy of the Complaint had not been tested in this Court.  While Plaintiffs were confident that they would successfully defeat any motion to dismiss, there was a very real risk that at least some of the claims would not be Joseph D. Cohenaside the significant risk of proving liability and damages (*see* Sec. III.A.3.b., *infra*; ¶¶45-48), litigating the Class Actions, like the litigation of all securities class cases, is a complex and expensive endeavor. This case possessed even more, possibly insurmountable, additional litigation hurdles given the nature of litigating against foreign defendants during the COVID-19 pandemic.  These hurdles include obtaining discovery, most of which is located in in Greece and/or Grand Duchy of Luxembourg, where Akazoo is incorporated.  ¶40.  Documents would likely be in foreign languages such as Greek, French or German and would require multilingual attorneys and translation. *Id*. Document discovery would also have been hampered—if not prevented altogether in at least certain instances—by potential criminal investigations both domestically and abroad.  ¶41.  As a result, Class Counsel may have been restricted or forbidden from reviewing certain documents, and there is no guarantee they would have been able to conduct the document or deposition discovery necessary to prove their case. *Id.*

Even *if* documents were produced, those documents may have supported Defendants' narrative of the case.  ¶42.  Indeed, MMAC Defendants argued that even though they had performed adequate due diligence, they were defrauded like the rest of the Settlement Class and

through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

lost substantial sums. Discovery could potentially help establish this defense. *Id.* In addition, if Plaintiffs sought discovery from Defendants and third-parties located throughout Europe, Plaintiffs would have been required to obtain evidence through the Hague Convention and/or letters rogatory, an extremely time consuming process with no guarantee of success. ¶43. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). Moreover, obtaining certain fact depositions would have been contingent on Plaintiffs successfully locating and compelling percipient witnesses in Europe. ¶43.

Not only did Plaintiffs face the difficulties of litigating against many foreign defendants, certain of whom were being criminally investigated both domestically and abroad, Plaintiffs face several other litigation obstacles. Indeed, Defendant Crowe had already filed a demurrer in the State Action and the adequacy of the Complaint had not yet been tested in this Court, which posed the threat that some named Defendants would be dismissed from the Federal Action. ¶37. Assuming all Defendants remained in the Federal Action and Plaintiffs' claims were certified under Rule 23 (and not reversed on a Rule 23(f) interlocutory appeal) (¶38), and survived summary judgment (¶¶45-48), litigating the Federal Action through trial (potentially under COVID restrictions) and post-trial appeals (¶¶49-50) would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'").

Moreover, as discussed further in the accompanying Fee Memorandum, this case presented very real concerns about Settling Defendants' ability to pay. There is no guarantee that further litigation—even if Plaintiffs were prevailed at trial and on appeal—would have produced a better result given the very limited sources of recovery. *See* Fee Memorandum at p. 17-18. By contrast, the proposed partial Settlement provides an immediate and substantial recovery for the Settlement Class—approximately 54.4% of maximum damages—without exposing the Settlement Class to the risk, expense, and delay of continued litigation. ¶54.

### (b)    Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *GSE*, 414 F. Supp. 3d at 694. While Class Counsel believe that Plaintiffs' claims are meritorious, they also recognize that they faced substantial obstacles to proving liability and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**<u>Establishing Liability</u>:** In addition to the hurdle of obtaining foreign discovery and class action status, Plaintiffs faced numerous hurdles to establishing certain Defendants' liability. During the mediation, Defendants forcefully argued—and undoubtedly would have continued to argue at summary judgment and/or trial—that Plaintiffs could not establish the elements of their Exchange Act claims, specifically the element of scienter. As discussed in Sec. III.A.3.a., *supra*, certain Defendants would have argued they lacked motive because, as large investors in Akazoo who ultimately suffered huge losses due to the alleged fraud, they were highly motived to perform adequate due diligence prior to the business combination and had zero incentive to be

10

involved in the fraud itself.  ¶45.  Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim."  *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

**Damages:**  It is axiomatic that proving damages in cases brought under the federal securities laws is complex and fraught with risk.  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud.").  The situation is no different here.  As a result of Plaintiffs' investigation, including consultation with experts, and the significant discussions conducted by the mediator, as well as discussions directly with defense counsel, Class Counsel obtained a clear preview of what arguments would be made to contest Plaintiffs' establishment of class-wide damages.

If damages were ultimately contested in Court, the Parties would rely on expert testimony to assist the jury in determining damages.  *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").  Here, Defendants almost certainly would have presented their own damages expert(s), who would have no doubt presented conflicting conclusions and theories for Akazoo's price declines on the alleged disclosure dates.  *See In re IMAX Securities Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts.").  In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008).

(c)    **Risks of Maintaining Class Action Status**

While Plaintiffs and Class Counsel are confident that the Settlement Class meets the requirements for certification, a class had not yet been certified.  Plaintiffs are aware that there is a risk the Court could accept certain of Defendants' arguments limiting a potential class.  ¶38. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings.  *See Chatelain v. Prudential-Bache Sec*., 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification. *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

(d)    **Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prods. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  Here, the proposed partial Settlement provides a cash payment of $4,900,000 for the benefit of the Settlement Class.  This is an excellent result in light of the significant risks of continued litigation.  Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total maximum damages would be approximately $9 million.  ¶54.  Thus, the $4.9 million settlement

represents a recovery of 54.4%, which lands well above the 2020 median recovery of 19.7% for securities class action settlements with damages under $25 million.  *See* Ex. 11 (Laarni Bulan and Laura Simmons, Securities Class Action Settlements—2020 Review and Analysis (Cornerstone Research 2021) at p. 6 (Fig. 5).

Moreover, given the limited sources of money available to fund a settlement, the partial Settlement is not only an excellent result with respect the non-revisionary $4.9 million recovery, but it also provides for potential additional recoveries for the Settlement Class from the Additional Settlement Amounts and Crowe.  ¶56.  Indeed, an important part of the Settlement is assistance from some of the Settling Defendants in prosecuting the Settlement Class' claims against non-settling Defendant Crowe as well as the assignment of claims against Crowe.  ¶33.

###### 4.    The Remaining Rule 23(e) Factors Support Final Approval

#### The Proposed Method of Distribution to the Class is Effective (Rule 23 (e)(2)(C)(ii)):

The Settlement proceeds will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation.  *See* Sec. III.B., *infra*.  Strategic Claims Services ("SCS"), the Court-appointed Claims Administrator, has and will continue to process claims under Class Counsel's guidance. SCS has and will continue to allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.[8]

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Settling Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶3.2.

**The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii)):** The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in detail in the accompanying Fee Memorandum, the proposed attorneys' fees of one-third to be paid upon approval by the Court, are reasonable in light of the substantial work, efforts and success of Class Counsel, their significant investment of resources in the case, their skillful prosecution of the Class Actions for the benefit of the Settlement Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved. A proposed attorneys' fee of up to one-third is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for one-third of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."); *see also* Ex. 13 (collecting cases); Fee Memorandum, § III.C.1. More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶8.2.

**Other Agreements Related to the Settlement Rule 23(e)(2)(C)(iv) & 23(e)(3):** The Parties entered into a confidential agreement establishing conditions under which the Company may terminate the Settlement if Settlement Class Members who collectively have claims equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

5.    **The Settlement Treats all Members of the Class Equitably Relative to Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether a settlement treats class members equitably relative to one another.  This Settlement easily satisfies that standard.  As discussed in Sec. III.B, *supra*, the proposed Plan of Allocation, developed by Plaintiffs' expert in conjunction with Class Counsel, reflects an assessment of damages Plaintiffs contend could have been recovered under the theories of liability in the Class Actions.  ¶70.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  ¶¶71-75.  Courts have repeatedly approved similar plans.  *See e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

6.    **The Settlement Class's Reaction to the Settlement Supports Final Approval**

The second *Grinnell* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.  *See* Ex. 2-C (Long Notice) at pp. 3, 15-17.  To date, no requests for exclusion have been received, and no objections have been filed with the Court, despite the fact that as of August 2, 2021, a total of 4,343 copies of the Postcard Notice or direct links to the Long Notice and Claim Form have been disseminated to potential Settlement Class

Members and/or their nominees. Evans Decl., ¶¶9, 13-14.[9] The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *See Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### 7. The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Final Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). When the Parties agreed to settle, Plaintiffs and Class Counsel had a thorough understanding of the strengths and weaknesses of their claims and the defenses asserted, and could make an informed appraisal regarding their chances of success.

By the time the Parties convened for the mediation, Class Counsel expended significant time and resources developing their understanding of the Class Actions, which included, among other things: (1) reviewing publicly available information concerning Akazoo and MMAC, including SEC filings, analyst reports, investor presentations, and press releases; (2) reviewing memos of interviews with numerous former Akazoo employees prepared by a private investigator; (3) utilizing the comprehensive investigation and additional research to prepare the

---

[9] The deadline to request exclusion from, or to object to any aspect of, the Settlement is August 17, 2021; any exclusions or objections received after this filing will be addressed on reply.

135-page Complaint in the Federal Action, as well as the operative complaint in the State Action; (4) drafting a motion to intervene in the SEC Action against Akazoo; (5) consulting experts extensively on damages and loss causation issues; (6) drafting a persuasive, evidence-based mediation statement setting forth the facts relevant to the underlying alleged misrepresentations, and analyzing applicable facts and law; (7) expending considerable effort to determine the ability of the various defendants to pay into a settlement or a judgment and researching procedures required to bring actions abroad against certain foreign defendants in the event the mediation was unsuccessful; and (8) participating in an extremely complicated mediation process involving the parties to the Federal Action, State Action, and the PIPE and SPAC Action as well as the Additional Settling Parties, which included three full-day mediation session and weeks of continued telephonic and electronic discussions.  ¶¶10, 15-34.

As a result of these efforts, Plaintiffs and Class Counsel had a thorough understanding of the claims and defenses asserted in the Class Actions, the significant risks to establishing liability and damages, and collecting a greater judgment.  This understanding enabled Plaintiffs and Class Counsel to negotiate the Settlement intelligently and responsibly.  *See Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").  Thus, the fact that there has been no formal discovery in the Class Actions does not weigh against final approval.  *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not

17

an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

**<u>The Ability of Defendants to Withstand a Greater Judgment</u>:**  Defendants ability withstand a greater judgment (*Grinnell* factor seven) weighs heavily in favor of final approval. Akazoo has been delisted, its assets have been frozen, and there was limited D&O coverage, which was wasting and subject to multiple claims—including those of the Susman Godfrey PIPE, SPAC, and Retail Investors.  Nevertheless, Plaintiffs and Class Counsel were able to negotiate a global, partial settlement that not only recovers the vast majority of the assets available to fund a settlement, but also provides potential upside going forward (*i.e.*, the Additional Settlement Amount and assistance from some of the Settling Defendants in prosecuting the Settlement Class' claims against deep pocket Crowe).  This is a terrific result, and it was obtained without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

Conversely, if the litigation continued, the limited assets would have continued to drain. The Company had already spent millions on its defense, and Akazoo and the other Defendants would have spent millions more going forward. ¶51.  This especially true given that Akazoo is a Luxembourg company based in England, with much of the conduct at issue in this case occurring in Greece.  ¶53.  Moreover, there was an ongoing threat that Akazoo would face bankruptcy proceedings in Luxembourg.  ¶51. Continued litigation, especially discovery, would, by necessity, be extremely expensive for all parties.

Finally, it is important to recognize that a portion of the Settlement was funded by a D&O policy and that the Class Actions involve claims of serious wrongdoing.  ¶52.  If the litigation continued and/or ultimately Akazoo or its executives were criminally charged, it is

18

possible that the Company's insurer would have denied coverage, thereby eliminating a potential source of recovery for the Settlement Class. *Id.* Accordingly, this factor weighs strongly in favor of the Court granting final approval of the Settlement. *See In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account").

      **B.**    **The Plan of Allocation is Fair and Reasonable**

A plan of allocation, like a settlement itself, "must be fair and adequate" to warrant approval. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Accordingly, "courts look primarily to the opinion of counsel" in determining if a proposed plan of allocation is fair and adequate to warrant approval. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011).

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Class Counsel, is set forth in the Long Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. 2-C (Long Notice) at pp. 12-15. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Claim Amount for each Settlement Class Member's purchases of: (1) Akazoo common stock purchased or acquired from January 24, 2019 through and including May 21, 2020 ("Section 10(b) Claims"); (2) MMAC common stock that was eligible to vote at MMAC's August 28, 2019 special meeting and was

subsequently exchanged for Akazoo common stock on or around September 11, 2019 ("Section 14(a) Claims"); and/or (3) Akazoo common stock purchased or acquired pursuant or traceable to the Company's registration statement and prospectus issued in connection with the September 2019 Merger ("Section 11 Claims").[10] *Id.*

The calculation of each Settlement Class Member's Recognized Claim Amount under the Plan of Allocation is explained in detail in the Long Notice and will be based on several factors, including when the Akazoo or MMAC common stock was purchased and sold, the purchase and sale price of the shares of Akazoo common stock, and the estimated artificial inflation in the respective prices of the Akazoo common stock at the time of purchase and at the time of sale as determined by Plaintiffs' damages expert.  The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis and in accordance with the various allocations detailed above.

Class Counsel believe that the proposed Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Class Actions.  ¶76.  To date, no objections to the Plan of Allocation have been filed on this Court's docket or received by Class Counsel, suggesting that the Settlement Class also finds the Plan of Allocation to be fair and reasonable. ¶77.  Accordingly, Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

---

[10] The Net Settlement Fund will be allocated to Authorized Claimants as follows:  (1) Settlement Class Members with Section 10(b) Claims shall be allocated approximately 4% of the Net Settlement Fund; (2) Settlement Class Members with Section 14(a) Claims shall be allocated approximately 56.7% of the Net Settlement Fund; and (3) Settlement Class Members with Section 11 Claims shall be allocated approximately 39.3% of the Net Settlement Fund.  *See* Ex. 2-C (Long Notice) at ¶66.  This allocation is based on the maximum potential damages of each claim.  *Id.*

**C.    The Settlement Class Should be Finally Certified**

The Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  *See* ECF No. 36 at ¶ 1.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (*see* ECF No. 34 at 16-23), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

**D.    The Notice Program Satisfies Rule 23 and Due Process**

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal- Mart Stores*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.").  Both the notice program's substance and method of dissemination satisfy those standards here.

In accordance with the Preliminary Approval Order, the Claims Administrator: (i) mailed copies of the Postcard Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (ii) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to email links of the Long Notice and Claim Form or mail the Postcard Notice.  Evans Decl. ¶¶2-8.  The Postcard Notice directed

potential Settlement Class Members to downloadable versions of the Long Notice and Claim Form posted online at www.strategicclaims.net/akazoo-s-a-securities-litigation/ (the "Settlement Website").  *Id.* at ¶12.  SCS also posted copies of the Stipulation, the Preliminary Approval Order, the Long Notice, and Claim Form on the Settlement Website (*id.*) and established a toll-free number to respond to Settlement Class Member inquiries (*id.* at ¶11).  Additionally, SCS caused the Summary Notice to be published in *Investor's Business Daily* and transmitted electronically once over *GlobeNewswire* on June 7, 2021.  *Id.* at ¶10.

The Long Notice informs Settlement Class Members of, among other things: (1) the nature of the Class Actions; (2) the Settlement Class definition; (3) the claims and defenses asserted; (4) a description of the terms of the partial Settlement; (5) the right of a Settlement Class Member to enter an appearance; (6) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions on how to do so; (7) the right of a Settlement Class Member to object to any aspect of the Settlement, including the Plan of Allocation and the request for attorneys' fees and Litigation Expenses, along with instructions on how to do so; (8) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (9) the date and time of the final Settlement Hearing.  *See* Fed. R. Civ. P. 23(c)(2)(B); Evans Decl., Ex. 2-C (Long Notice).  The Long Notice also advises that Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, as well as reimbursement of Litigation Expenses, including an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class.  *Id.* (Long Notice) at ¶¶4, 85.

These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Settlement.  Moreover, courts routinely

find that a combination of a mailed postcard directing class to a more detailed online notice sufficient to satisfy due process requirements.  *See Advanced Battery*, 298 F.R.D. at 183 n.3 (citing cases).  Accordingly, the notice program satisfied both Rule 23 and due process.

## IV.    CONCLUSION

For the foregoing reasons, and for the reasons stated in the Joint Declaration, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.[11]

Dated: August 3, 2021                                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 6861060
Facsimile: (212) 202-3827
Email:  pkim@rosenlegal.com
Email:  lrosen@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice*)
Joseph D. Cohen (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  csadler@glancylaw.com
Email:  jcohen@glancylaw.com

*Class Counsel for the Settlement Class*

---

[11] Proposed orders will be filed in conjunction with Plaintiffs' reply brief.

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: August 3, 2021                    <u>*/s/ Phillip Kim*                              </u>
                                          Phillip Kim