**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY .................................................... 4

III.  ARGUMENT ........................................................................................................ 4

    A.  The Common Fund Doctrine Applies to the Settlement ........................................ 4

    B.  The Court Should Award a Reasonable Percentage of the Common Fund ........... 5

    C.  The Requested Attorneys' Fees Are Reasonable ................................................... 7

        1.  The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method ..................................................................................... 7

        2.  The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ......................................................................... 10

    D.  The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable ...... 12

        1.  Time and Labor Expended Support the Requested Fee ........................... 12

        2.  The Risks of Litigation Support the Requested Fee ................................ 14

        3.  The Magnitude and Complexity of the Class Actions Support the Fee .... 19

        4.  The Quality of Representation Supports the Requested Fee ................... 20

        5.  The Requested Fee in Relation to the Settlement Amount ...................... 22

        6.  Public Policy Considerations Support the Requested Fee ....................... 23

    E.  Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ............................................................................ 23

    F.  Plaintiffs Should be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4) ............................................................. 24

IV.  CONCLUSION .................................................................................................. 25

i

# **TABLE OF AUTHORITIES**

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ............................................................... 2

*Asare v. Change Group of New York, Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)........................................ 11

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013).................................... 6, 11

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ......................................... 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................... 4

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ...................................... 11

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ....................................................... 17

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................. 14

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................... 20, 23

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 18, 2011) ...................................... 11

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................. 11

*Elkin v. Walter Investment Management Corp.*,
2018 WL 8951073 (E.D. Pa. 2018) ........................................................ 9

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................... 17

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................... *passim*

*Goldstein v. MCI Worldcom*,
340 F.3d 238 (5th Cir. 2003) .................................................................. 16

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P.,
212 F.R.D. 400 (E.D. Wis. 2002) ............................................................ 16

*Gross v. GFI Group, Inc.*,
784 Fed. App'x. 27 (2d Cir. Sept. 13 2019) ........................................... 15

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ......................................... 11

*Hicks v. Morgan Stanley, & Co.*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................... 5, 23

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ......................................... 22

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................. 18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................. 19

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014) .................................................................... 25

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................... 18

*In re Bisys Sec. Litig.*,
2007 WL 2049726 (S.D.N.Y July 16, 2007) ........................................... 11

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001)..................................................................... 17

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................... 10, 14, 22

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................... 17, 23

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................ 11

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ........................................................................ 11

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)..................................................................................... 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................................................... 21

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).......................................................................... 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................................................. *passim*

*In re Giant Interactive Group, Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. Nov. 2, 2011) ......................................................................... 15, 17

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................................ 10

*In re Idreamsky Tech. Limited Sec. Litig.*,
  2018 WL 8950640 (S.D.N.Y. April 6, 2018) ........................................................................... 9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...................................................................................... 15, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................................... 24

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ......................................................................... 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................................. 17, 25

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................ 18

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) .................................................................... 8, 25

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................. 9

*In re Signet Jewelers Limited Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................... 25

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ...................................... 3

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................... *passim*

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................ 19

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ....................................................................... 10

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................. *passim*

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ..................................................................................... 5

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................... 10

*Monzon v. 103W77 Partners, LLC*,
   2015 WL 993038 (S.D.N.Y. 2015) ....................................................... 5, 9

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
   2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ...................................... 16

*Ray v. Lundstrom*,
   2012 WL 5458425 (D. Neb. Nov. 8, 2012) ............................................. 9

*Savoie v. Merchs. Banks*,
   166 F.3d 456 (2d Cir. 1999) ....................................................................... 9

*Schuler v. Medicines Co.*,
   2016 WL 3457218 (D.N.J. June 24, 2016) ............................................. 9

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ....................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................ 14

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................................................ 15

*Taft v. Ackermans*,
    2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .............................................. 19

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................... 23

*Too v. Rockwell Medical, Inc.*,
    2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020) .............................................. 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................... 5, 11

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ........................................... 11

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. 2014) ........................................................... 18

*Zeltser v. Merrill Lynch & Co., Inc.*,
    2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .............................................. 9

## STATUTES

15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4)24 ................................................... 24

15 U.S.C. § 77z-1 ................................................................................................... 2

15 U.S.C. § 78u-4(a)(4)24 ................................................................................. 24

Court-appointed Class Counsel, The Rosen Law Firm, P.A. ("Rosen Law")[1] and Glancy Prongay & Murray LLP ("GPM" and together with the Rosen Law, "Class Counsel"), respectfully request that the Court grant their motion, which is made on behalf of all Plaintiffs' Counsel, for an award of attorneys' fees in the amount of one-third of the $4,900,000 Class Action Settlement Amount (*i.e.*, $1,633,333, plus interest) and one-third of any Additional Settlement Amount allocated to the Class Actions.[2] Class Counsel also seek: (i) reimbursement of $62,267.98 in out-of-pocket litigation expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Class Actions; and (ii) awards in the aggregate amount of $21,000 for Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    INTRODUCTION

The proposed partial Settlement provides for a non-reversionary cash payment of $4,900,000 (the "Class Action Settlement Amount"), additional contingent cash compensation (the "Additional Settlement Amount"), and assistance from some of the Settling Defendants in prosecuting the Settlement Class's claims against non-settling defendant Crowe U.K. LLP ("Crowe") as well as an

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Partial Settlement dated April 22, 2021 (ECF No. 32, the "Stipulation") or the concurrently filed Declaration of Phillip Kim and Casey E. Sadler in Support of: (1) Plaintiffs' Motion for Final Approval of Partial Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

[2] The Notice informed the Settlement Class that Class Counsel would apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed one-third of the Class Action Settlement Amount and one-third of any Additional Settlement Amount allocated to the Class Actions. As used herein, the term "Settlement Fund" means all funds transferred to the Escrow Account pursuant to the Stipulation and any and all interest or other income earned thereon. The Settlement Fund will include the Class Action Settlement Amount and the Additional Settlement Amount allocated to the Class Actions, if any.

assignment of claims against Crowe, is an excellent result for the Settlement Class.[3]  In fact, the $4.9 million Settlement alone represents a recovery of 54.4% of the Settlement Class's maximum estimated damages.  This result is even more outstanding when juxtaposed against the significant hurdles Plaintiffs would have to overcome in order to prevail in this complex securities fraud litigation.  In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Plaintiffs' Counsel would be litigating against several foreign defendants represented by several highly skilled defense firms, under the heightened pleading standard and/or automatic stay of discovery imposed by the PSLRA.  *See* 15 U.S.C. §§ 77z-1, 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[4]

Moreover, Akazoo's delisting, the SEC's freezing of Akazoo's assets, limited and rapidly depleting insurance coverage, the competing claims of the PIPE and SPAC Action, the significant costs involved in taking discovery overseas, and the practical limits of recovery from the individual defendants, meant that there was no guarantee that Plaintiffs' Counsel would be paid, or their hard costs reimbursed, regardless of effort or result.  Despite these risks, Plaintiffs' Counsel worked 1,066.65 hours, and advanced $62,267.98 in expenses, all on a fully continent basis.[5]

As compensation for their significant efforts and achievements on behalf of the Settlement

---

[3] Defendant Crowe is a certified public accounting firm and was the auditor for Akazoo Limited from 2015 until 2017.  Akazoo Limited's audit reports and other financial information was included in the registration statement filed in conjunction with the merger of Akazoo Limited and Media Acquisition Corp. ("MMAC").  Following the merger, Crowe served as the certified public accountant and auditor for the surviving entity, Akazoo S.A. ("Akazoo" or the "Company").

[4] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

[5] The work performed by Plaintiffs' Counsel is summarized below (*see infra* § IV.D.1) and is set forth in greater detail in the Joint Declaration.

Class, Class Counsel respectfully request a fee award in the amount of one-third of the Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar. Indeed, the requested fee represents a multiplier of 2.22 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. Sept. 10, 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Class Counsel also seek reimbursement of $62,267.98 in out-of-pocket litigation expenses incurred by Plaintiffs' Counsel in prosecuting the Class Actions. *See* ¶¶102-08. This amount is below the $100,000 limit on Litigation Expenses disclosed in the Long Notice—which, by definition, included PSLRA awards to Plaintiffs—and it equates to less than 1.5% of the Settlement Fund. The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Class Actions. Accordingly, they should be approved.

Finally, plaintiff Tim Caldwell, Sharon Caldwell, Nikolaos Poulakis and John Pullen, who were appointed Lead Plaintiffs in the Federal Action (collectively, "Federal Plaintiffs"), and plaintiffs Eva Pareja and Greg Sweet, plaintiffs in the State Action ("State Plaintiffs" and together with the Federal Plaintiffs, "Plaintiffs"), respectfully request PSLRA awards in the aggregate amount of $21,000 ($3,500 for each Plaintiff) to compensate them for the time and effort they have expended on behalf of the Settlement Class. Exs. 3-7. Each of these Plaintiffs, *inter alia*, researched the facts of the case, reviewed filings, conferred with Plaintiffs' Counsel about litigation and settlement strategies, and authorized Plaintiffs' Counsel to settle the case. But for their "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not

have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Joint Declaration, Class Counsel respectfully request that the Court award Plaintiffs' Counsel one-third of the Settlement Fund, approve reimbursement of $62,267.98 in litigation expenses, and grant PSLRA awards of $3,500 to each of the Plaintiffs.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the history of the Class Actions (¶¶15-34); the nature of the claims asserted (¶¶14-16); the negotiations leading to the Settlement (¶¶29-34); the risks and uncertainties of continued litigation (¶¶36-53); a summary of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class (¶¶10, 81); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (¶¶79-101).

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies to the Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages

"skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Veeco*, 2007 WL 4115808, at *2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Plaintiffs' Counsel's efforts conferred a substantial benefit—at least $4.9 million in cash—on an ascertainable class. And, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F.Supp.2d 369.

**B.     The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful

incentive for the efficient prosecution and early resolution of litigation.").[6]  The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §§ 77z-1(a)(6), 78u-4(a)(6).[7]

The percentage method does not, however, render the lodestar irrelevant.  Rather, the reasonableness inquiry includes a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'"  *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50).  "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee.  *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar

---

[6] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[7] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

### C.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method

The one-third fee requested by Class Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in comparable, complex class actions. *See Maley*, 186 F. Supp. 2d at 370 (finding a one-third fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating that "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF No. 38, slip op. at ¶ 19 (S.D.N.Y. June 10, 2013) (awarding approximately 41% of $18.5 million settlement) (Ex. 14); *Wilson v. LSB Industries, Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding one-third of $18.45 million settlement fund); *In re China Media Express Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding 33.33% of $12 million settlement fund); *In re van der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding one-third of $8 million settlement fund) (Ex. 15); *Hayes v. Harmony Gold Mining Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding one-third of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Cnova N.V. Sec. Litig.*, Master File No.

1:16-cv-00444-LTS-OTW (S.D.N.Y. Mar. 20, 2018), ECF No. 148 at 5 (awarding 33.3% of $28.5 million settlement fund) (Ex. 16).[8]

Moreover, recognizing the importance of efficient and effective advocacy, Courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly thereafter, and where no or very limited discovery had been obtained as a result of the PSLRA discovery stay. *See Maley*, 186 F. Supp. 2d at 370 (awarding one-third of $11.5 million settlement, representing a 4.65 multiplier, where motions to dismiss were pending); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM), ECF No. 49 at 6 (S.D.N.Y. March 27, 2020) (awarding 33.3% of $15 million settlement, where settlement was reached prior to the filing of a motion to dismiss) (Ex. 20); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding one-third of $8.5 million settlement following decision on motion to dismiss, but prior to formal discovery).[9]

---

[8] *See also* Ex. 13 (collecting cases); *Levine v. Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding one-third and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 17); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations") (Ex. 24); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding 33.3% of $18.5 million settlement); *Merryman v. Citigroup, Inc.*, No. 1:15-09185-CM, ECF No. 163 (S.D.N.Y. July 12, 2019) (one-third of $14.75 million settlement) (Ex. 18); *Beach v. JPMorgan Chase Bank*, No. 17-cv-00563-JMF, ECF No. 232 at 2 (S.D.N.Y. Oct. 7, 2020) (awarding 33% of $9 million settlement fund) (Ex. 19); *Guevoura Fund*, 2019 WL 6889901, at *1 (awarding one-third of $7.5 million settlement).

[9] *See also In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, ECF No. 10, slip op. at ¶3 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million, representing a multiplier of 3.17, where settlement was reached while motion to dismiss was pending) (Ex. 21); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB), ECF No. 170, slip op. at ¶16 (S.D.N.Y. July 18, 2007) (awarding 27% of $100 million, where settlement was reached while motion to dismiss was pending) (Ex. 22); *In re Idreamsky Tech. Limited Sec. Litig.*, 2018 WL 8950640, at *4 (S.D.N.Y. April 6, 2018) (awarding one-third of $4.15 million following decision on motion to dismiss, but prior to

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Class Counsel gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims, and further litigation would most likely have yielded a diminished recovery given the limited financial resources of the Settling Parties. Under such circumstances, Plaintiffs' Counsel should be rewarded for their efficient and effective advocacy. *See Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee, equating to a multiplier of 5.1, where settlement was reached after consolidated amended complaint was filed and noting that Plaintiff's Counsel should not be "penalize[d] . . . for achieving an early settlement, particularly where . . . the settlement amount is substantial."); *Savoie v. Merchs. Banks*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet."); *Monzon,* 2015 WL 993038, at *2 (awarding one-third of the settlement fund and noting that the "percentage of the fund method in common fund cases like this one … directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources.").

---

formal discovery); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 80-81, 109 (D.N.J. 2001) (awarding one-third of $4.5 million settlement, representing a 3.57 multiplier, where settlement was reached prior to the filing of the motion to dismiss); *Too v. Rockwell Medical, Inc.*, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) (awarding one-third of $3.7 million settlement fund prior to formal discovery); *In re TeleTech Litig.*, No. 1:08-cv-00913-LTS, ECF No. 82 (S.D.N.Y. June 11, 2010) (awarding 30% of $11 million settlement reached before motion to dismiss was filed) (Ex. 23); *Ray v. Lundstrom*, 2012 WL 5458425, at *5 (D. Neb. Nov. 8, 2012) (awarding one-third of $3.1 million, in case that settled before discovery); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *2, 9, 11 (D.N.J. June 24, 2016) (awarding 33% of $4.25 million settlement, where settlement was reached while motion to dismiss was pending); *Elkin v. Walter Investment Management Corp.*, 2018 WL 8951073, at *1 (E.D. Pa. 2018) (awarding one-third of $2,950,000 settlement in case that settled prior to a decision on the motion to dismiss).

## 2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[10] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Plaintiffs' Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,066.65 hours to the prosecution of the Class Actions, resulting in a lodestar of $736,910.75. ¶84.[11] Based on a one-third fee (equal to $1,633,333), Plaintiffs' Counsel's lodestar of $736,910.75 yields a multiplier of 2.22. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-*

---

[10] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[11] Plaintiffs' Counsel's rates range from $725 to $995 for partners, and $425 to $675 for associates (¶83), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Hi-Crush*, 2014 WL 7323417, at *14 (approving rates "ranging from $425 to $825 per hour" *in 2014*); *see also* Ex. 12 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

*Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan Sec. Litig.,* 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement).[12]

In sum, Class Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

---

[12] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar").

**D.    The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.    Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

**1.    Time and Labor Expended Support the Requested Fee**

The time and effort expended by Plaintiffs' Counsel in prosecuting the Class Actions and achieving the Settlement supports the requested fee.    As set forth in greater detail in the Joint Declaration, Plaintiffs' Counsel, among other things:

- researched, drafted and filed the initial complaint in the Federal Action (*i.e.*, *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900-BMC (E.D.N.Y.)), as well as the complaint in *Caldwell, et al., v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737 (E.D.N.Y.), both of which asserted violations of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder (¶¶10, 15, 81(a));

- drafted a motion for consolidation and appointment of lead plaintiffs and lead counsel in the Federal Action (¶15, 81(b));

- researched, drafted and filed the initial complaint in the State Action (*i.e.*, *Pareja, et al., v. Apostolos N. Zervos, et al*, Case No. 2020CV337418 (Super. Ct., Fulton Cnty. Geor.)), which asserted violations of the Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") (¶18, 81(c));

- conducted an extensive investigation of the claims asserted in the Federal and State Actions, which included, among other things: (a) reviewing and analyzing (i) U.S. Securities and Exchange Commission ("SEC") filings by MMAC, and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC, and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; and (b) retaining and working with a private investigator who conducted an investigation in the Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information (¶27, 81(c));

- utilized the comprehensive investigation and additional research to draft and file the 135-page Amended Complaint for Violations of the Federal Securities Laws (the

"Complaint") in the Federal Action, which asserted violations of both the Exchange Act and Securities Act, against sixteen (16) unique Defendants (¶28, 81(e));

- filed a Consent Motion to Intervene in *Securities and Exchange Commission v. Akazoo S.*A., Case No. 1:20-cv-08101-AKH (S.D.N.Y.) (the "SEC Action") brought by the SEC against Akazoo (¶23, 81(f));

- represented the Settlement Class's interest and appeared at a number of court conferences before Judge Hellerstein in the SEC Action (¶10, 81(g));

- consulted extensively with experts on damages and loss causation issues in connection with preparing for settlement negotiations (¶30, 81(h));

- engaged in a complicated mediation process involving the parties to the Federal Action, State Action, and the PIPE and SPAC Action, as well as the Additional Settling Parties.  The negotiations were facilitated by Gregory Lindstrom, Esq., of Phillips ADR, and proceeded by the submission of detailed mediation statements, and included three full-day mediation sessions and weeks of continued discussions via telephone and email with Mr. Lindstrom's assistance (¶¶31-32, 81(i));

- prepared multiple letter motions related to settlement negotiations (¶10, 81(j));

- negotiated a detailed Term Sheet with the Defense Counsel and counsel for the Susman Godfrey PIPE, SPAC, and Retail Investors (¶10, 81(k));

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with the Settling Defendants and Additional Settling Parties (¶10, 81(l));

- worked with Plaintiffs' damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly (¶10, 81(m));

- drafted the preliminary approval motion (¶¶10, 34, 81(n));

- oversaw the implementation of the notice process and responded to email from Settlement Class Members (¶¶10, 81(o));  and

- drafted the motion for final approval.  ¶¶10, 81(p).

It is also important to recognize that the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement.  Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion.  No additional compensation will be sought for this work.  *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the

claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2. The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55). The many severe risks that Plaintiffs' Counsel faced in prosecuting this suit more than justify the requested one-third fee. *See, e.g.*, ¶¶37-53.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *Flag Telecom*, 2010 WL 4537550, at *27.[13] This case was no exception. From the outset of the Class Actions, Plaintiffs'

---

[13] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than

Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the [Class] Action[s]; counsel also faced the responsibility of advancing litigation and overhead expenses on this case … ." *In re Giant Interactive Group, Inc. Sec. Litig.,* 279 F.R.D. 151, 164 (S.D.N.Y. Nov. 2, 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began …" *Flag Telecom*, 2010 WL 4537550, at *27. Plaintiffs' Counsel's commitment was significant (*i.e.*, $736,910.75 in lodestar and $62,267.98 in out-of-pocket hard costs), and had they not obtained a recovery, it would have all been lost.[14]

While Class Counsel believe that Plaintiffs' claims are meritorious and remain confident in their ability to prove their claims and rebut any potential arguments advanced by Defendants, they also recognize that there were a number of substantial risks in the litigation and that Plaintiffs' ability to succeed at trial and obtain and collect a substantial judgment was far from certain. Obstacles included both the well-known general risks of complex securities litigation, including the PSLRA's automatic stay of discovery and heightened pleading standard, as well as the specific risks inherent in this case. *See In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194-95 (E.D. Pa. 2000) (noting the PSLRA "substantially alters the legal standards applied to securities fraud

---

other forms of litigation."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

[14] *See Gross v. GFI Group, Inc.*, 784 Fed. App'x. 27, 28 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where one of Class Counsel in this case—GPM—served as plaintiff's counsel); *see also* ¶¶82 (lodestar), 105 (expenses).

claims in ways that generally benefit defendants rather than plaintiffs."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

Plaintiffs faced the substantial burdens and unknowns of motions to dismiss (most likely more than one given the Federal Action involved 16 defendants represented by several different law firms), a class certification motion, summary judgment motions, trial and likely appeals. Success was not a forgone conclusion, and a bad decision at any stage might have resulted in a smaller recovery, or no recovery at all. *See Schwartz v. TXU Corp*., 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("there was no assurance that the Litigation would survive Defendants' challenges to the pleadings, motion for summary judgment, trial and appeal."); *Goldstein v. MCI Worldcom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and Worldcom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

The risks inherent in the case were further magnified by the fact that Akazoo is a Luxembourg company based in England, with much of the conduct at issue in this case occurring in Greece. Many of the Defendants and third-party witnesses are located in Europe, and presumably much of the relevant documentary evidence would be written in Greek or other languages. To obtain documents and take depositions outside the U.S., Plaintiffs would have to follow appropriate international conventions and/or apply to this Court for letters rogatory. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C*., 2012 WL 3746220, at *7

16

(E.D.N.Y. Aug. 27, 2012).  As a result, Plaintiffs may not have been able to obtain the necessary evidence to prove their case; and even if they could do so, it would be expensive, time-consuming and complicated.  *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he Company's location in China would have posed a barrier that would have increased the difficulty and expense of discovery, and might have made it impossible to collect some of the evidence or take depositions necessary to prove Plaintiffs' claims."); *Giant Interactive*, 279 F.R.D. at 164 ("counsel faced the additional challenges that many documents needed translation, that evidence, witnesses and depositions were overseas, and that discovery motions were heavily contested").

Even if they established liability, Plaintiffs faced significant risks to proving damages.  In securities class actions, "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion ... .'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically").  "There is the undeniable risk that a jury could be swayed by experts for the Defendants, who could minimize the amount of Plaintiffs' losses." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").  Proving class-wide damages in this case was, therefore, far from a "slam dunk."

Finally, even if Plaintiffs overcame all of these risks and prevailed at trial for the full amount of damages, they would still face the risk of an adverse decision on post-trial motions or reversal on

appeal,[15] and, as a practical matter, a recovery larger than the $4.9 million Settlement was extremely unlikely. This case presented very real ability-to-pay issues. Akazoo has been delisted and its assets frozen. The only realistic sources of recovery for Plaintiffs and the Settlement Class were: (a) Akazoo's D&O Policies, which were wasting and subject to numerous claims, including those of the Susman Godfrey PIPE, SPAC, and Retail Investors; and (b) the Company's assets that were frozen in the SEC Action. The current Settlement accounts for a substantial portion of each. Continued litigation of the Class Actions would only further shrink the small pot from which the Settlement Class could recover, and there was a high probability that, without the Settlement, nothing would be left for the Settlement Class. *See* ¶¶52-53; *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *8 (S.D.N.Y. 2014) ("The Settlement avoids the risk that further litigation would have resulted in a lesser recovery even if Plaintiff prevailed on the merits because defense costs would have significantly depleted, if not exhausted, the available D & O Policy.").[16]

In sum, Plaintiffs faced substantial risks. While Plaintiffs and their counsel believe this case has merit and that they could have successfully navigated each risk presented, the risks remained. If any of them materialized, the Settlement Class might have recovered far less than the proposed Settlement or nothing at all. In the context of all those risks, the $4.9 million partial Settlement—along with the Additional Settlement Amount and assistance in prosecuting the Settlement Class's claims against Crowe—is an excellent result for the Settlement Class, and Plaintiffs' Counsel's

---

[15] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

[16] *See also In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account").

ability to obtain that result despite so many risks supports the reasonableness of the fee request. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3. The Magnitude and Complexity of the Class Actions Support the Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *aft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Such was the case here.

As noted above and in the Joint Declaration, this case involved 16 defendants, separate opt-out and SEC litigation, and raised a number of complex questions concerning liability, damages, and ability to pay. ¶¶37-53. The complexities were especially acute given the case's international dimension, involving a number of foreign defendants, foreign witnesses, and alleged wrongdoing that took place primarily in Greece. To build and settle the cases, Class Counsel, among other things, needed to: (i) conduct an extensive factual investigation, including interviews with former Akazoo employees, consultation with loss causation and damages experts, and a broad review of all publicly available information; (ii) prepare multiple complaints, including the 135-page Complaint, knowing it needed to contain sufficient detail to overcome the PSLRA's heightened pleading

standard; (iii) submit a written mediation statement and make presentations to a well-respected and inquisitive mediator concerning, *inter alia*, Plaintiffs' theories of damages, loss causation and ability to pay; and (iv) engage in three days of complex mediation and weeks of follow up negotiations with Settling Defendants, Additional Settling Parties and Susman Godfrey PIPE, SPAC, and Retail Investors. ¶¶15-32. Moreover, the Federal Action will continue against Crowe, which, absent settlement, will involve large amounts of litigated discovery in the U.S. and abroad; consultation with accounting and auditing experts; depositions of fact and expert witnesses; motion practice; a trial; post-trial motion practice; and mostly likely appeals. ¶33. Consequently, this was, and will continue to be, an incredibly complex matter—even by the standards of securities class actions.

The magnitude of the Class Actions was similarly unquestionable. Millions of dollars of damages are at stake, and the cases required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4. The Quality of Representation Supports the Requested Fee

Class Counsel respectfully submit that the quality of representation the Settlement Class received is best evidenced by the result obtained. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 467 ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities Class . . . ."); *Veeco*, 2007 WL 4115808, at *7 ("the quality of the representation of Plaintiffs' Counsel is best evidenced by the result."). Here, the partial Settlement provides the Settlement Class with a minimum guaranteed cash payment of $4.9 million, as well as additional future upside. This is an excellent result given the limited assets available to settle the various cases, and it has the potential to be even better. Plaintiffs' damages expert estimates that if Plaintiffs had

fully prevailed on their claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' best case scenario—the total ***maximum*** damages potentially available to the Settlement Class would be approximately $9 million.  Under this scenario, the $4.9 million settlement represents a recovery of 54.4% of the maximum estimated damages.  In comparison, according to Cornerstone Research, for settlements where damages were less than $25 million, the median settlement recovery was 19.7% in 2020, and between 2011 and 2019, the average settlement recovery was 16.8%.[17]  This result is even more impressive when juxtaposed against the significant hurdles Plaintiffs would need to overcome in order to prevail in this complex securities fraud litigation, and the limited funds available to settle the cases.  *See EVCI*, 2007 WL 2230177, at *17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."); *see also Maley*, 186 F. Supp. 2d at 373 ("[E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Counsel's representation [], especially given the dire financial straits of [the company].").

Additionally, the quality of Class Counsel's efforts and commitment to providing the Settlement Class with the best possible representation, together with their substantial experience in securities class actions provided leverage necessary to negotiate the Settlement.  *See* Exs. 8, 9 (Rosen Law and GPM resumes).  Recently, the firms achieved a $250 million settlement against the China-based company, Alibaba, which remains the largest securities class action settlement against a Chinese company (*Christine Asia Co. Ltd. et al. v. Jack Yun Ma, et al*., 1:15-md-02631-CM-SDA (S.D.N.Y.)).  Moreover, Mr. Lindstrom recognized Class Counsel as "highly skilled and experienced counsel, who were extremely knowledgeable and clearly had spent a considerable amount of time

---

[17] *See* Ex. 11 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021 at p. 6 (Fig. 5)).

developing the law and facts in this complex litigation." Ex. 1 (Lindstrom Decl.) at ¶16. Thus, Class Counsel's experience and reputation contributed to this successful partial resolution.

The quality of the opposition faced by Plaintiffs' Counsel should also be taken into account. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, the Settling Parties were vigorously represented by Gibson, Dunn & Crutcher LLP, Shearman & Sterling LLP, Dechert LLP, Quinn Emanuel Urquhart & Sullivan, LLP, and Reed Smith LLP, some of the country's most prestigious and experienced law firms. Notwithstanding this capable opposition, Plaintiffs' Counsel obtained an extremely favorable Settlement that takes full advantage of the limited funds currently available to resolve the cases, but also provides for cooperation and increases the likelihood of a further recovery from Crowe. Consequently, this factor militates in favor of the requested fee.

### 5.    The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section IV.C.1, *supra*, the requested one-third fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6. Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Del Global*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9.

Here, Plaintiffs' Counsel invested substantial amounts of time and money vigorously pursuing serious wrongdoing that caused the failure of a public enterprise. Accordingly, public policy considerations favor Class Counsel's attorneys' fee request. *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

### E. Plaintiffs' Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Plaintiffs' Counsel also request reimbursement of $62,267.98 in expenses incurred while

prosecuting the Class Actions.  In support of this request, Plaintiffs' Counsel submitted separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). A significant portion of the expenses were incurred for professional services rendered by Plaintiffs' experts  and investigators, and the remaining expenses are attributable to the costs of mediation, legal and factual research, travel, service of process, and other expenses incurred in the course of the litigation.  ¶¶105-08.  These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action.  As such, they should be reimbursed.  *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund.").  Additionally, no objections to the expense request have been received, and the amount requested is below the $100,000 limit disclosed in the Notice.  ¶103; Ex. 2-C (Long Notice) at ¶4.

### F. Plaintiffs Should be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4)

In connection with their request for reimbursement of Litigation Expenses, Class Counsel also respectfully request PSLRA awards of $3,500 for each of the six Plaintiffs for time spent prosecuting the Class Actions.  The PSLRA specifically provides that an "award of reasonable costs

24

and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4).

Here, each of the Plaintiffs took an active role in the litigation by, among other things: (a) regularly communicating with their attorneys regarding the posture and progress of the case, as well as strategy; (b) producing documents to their attorneys; (c) reviewing all significant pleadings and memoranda; (d) consulting with their attorneys regarding the settlement negotiations; and (e) evaluating and approving the proposed partial Settlement.  Exs. 3-7.  These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. 2009).

Consequently, Class Counsel respectfully request that the Court grant Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class."  *Id.* at *21 (approving $215,000 total award to two lead plaintiffs); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).[18]

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant the motion.

---

[18] *See also Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (FM), ECF No. 1099 at 3 (S.D.N.Y. Mar. 28, 2013) (awarding seven plaintiffs reimbursement amounts ranging from $25,000 to $50,000) (Ex. 24); *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff); *Gormley v. Magicjack Vocaltec Ltd.*, No. 16-cv-01869(VM), slip op. at 1 (S.D.N.Y. Jan. 19, 2018) (awarding lead plaintiffs $5,000 each for PSLRA awards) (Ex. 25).

Dated: August 3, 2021                  Respectfully submitted,

                                       **THE ROSEN LAW FIRM, P.A.**

                                       */s/ Phillip Kim*
                                       Phillip Kim
                                       Laurence M. Rosen
                                       275 Madison Avenue, 40th Floor
                                       New York, New York 10016
                                       Telephone: (212) 6861060
                                       Facsimile: (212) 202-3827
                                       Email:  pkim@rosenlegal.com
                                       Email:  lrosen@rosenlegal.com

                                       **GLANCY PRONGAY & MURRAY LLP**
                                       Casey E. Sadler (admitted *pro hac vice*)
                                       Joseph D. Cohen (admitted *pro hac vice*)
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, California 90067
                                       Telephone: (310) 201-9150
                                       Facsimile: (310) 201-9160
                                       Email:  csadler@glancylaw.com
                                       Email:  jcohen@glancylaw.com


                                       *Class Counsel for the Settlement Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: August 3, 2021                    */s/ Phillip Kim*_____
                                         Phillip Kim