**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC <br><br> <u>CLASS ACTION</u> |

**JOINT DECLARATION OF PHILLIP KIM AND CASEY E. SADLER**
**IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**PARTIAL CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND**
**(II) CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
<u>**REIMBURSEMENT OF LITIGATION EXPENSES**</u>

## TABLE OF EXHIBITS TO DECLARATION

| EXHIBIT | TITLE |
|---|---|
| 1 | Declaration of Mediator Gregory P. Lindstrom, Esq. in Support of Final Approval of Partial Class Action Settlement |
| 2 | Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 3 | Declaration of Lead Plaintiffs Tim Caldwell and Sharon Caldwell in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 4 | Declaration of Lead Plaintiff Nikolaos Poulakis in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 5 | Declaration of Lead Plaintiff John Pullen in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 6 | Declaration of Plaintiff Eva Pareja in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 7 | Declaration of Plaintiff Greg Sweet in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 8 | Declaration of Casey E. Sadler, Esq. in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Glancy Prongay & Murray LLP |
| 9 | Declaration of Phillip Kim, Esq. in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of The Rosen Law Firm, P.A. |

| 10 | Declaration of Corey D. Holzer on Behalf of Holzer & Holzer, LLC in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 11 | Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021) |
| 12 | Table of Law Firm Billing Rates |
| 13 | Table of Select Second Circuit Cases Awarding Attorneys' Fee Awards of 33% or Above Plus Expenses |
| 14 | *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF No. 38 (S.D.N.Y. June 10, 2013) |
| 15 | *In re van der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip op. (S.D.N.Y. Dec. 6, 2006) |
| 16 | *In re Cnova N.V. Sec. Litig.*, Master File No. 1:16-cv-00444-LTS-OTW, ECF No. 148 (S.D.N.Y. Mar. 20, 2018) |
| 17 | *Levine v. Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85 (S.D.N.Y. May 27, 2011) |
| 18 | *Merryman v. Citigroup, Inc.*, No. 1:15-09185-CM, ECF No. 163 (S.D.N.Y. July 12, 2019) |
| 19 | *Beach v. JPMorgan Chase Bank*, No. 17-cv-00563-JMF, ECF No. 232 (S.D.N.Y. Oct. 7, 2020) |
| 20 | *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM), ECF No. 49 (S.D.N.Y. March 27, 2020) |
| 21 | *In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, ECF No. 10 (S.D.N.Y. Mar. 17, 2011) |
| 22 | *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB), ECF No. 170 (S.D.N.Y. July 18, 2007) |
| 23 | *In re TeleTech Litig.*, No. 1:08-cv-00913-LTS, ECF No. 82 (S.D.N.Y. June 11, 2010) |
| 24 | *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (FM), ECF No. 1099 (S.D.N.Y. Mar. 28, 2013) |

| 25 | *Gormley v. Magicjack Vocaltec Ltd.*, No. 16-cv-01869(VM), ECF No. 70 (S.D.N.Y. Jan. 19, 2018) |

We, Phillip Kim and Casey E. Sadler, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.      Our firms, The Rosen Law Firm, P.A. ("Rosen Law") and Glancy Prongay & Murray LLP ("GPM"), respectively, are Court-appointed Class Counsel and counsel of record for Lead Plaintiffs Tim Caldwell ("T. Caldwell"), Sharon Caldwell ("S. Caldwell," together with T. Caldwell, the "Caldwells"), Nikolaos Poulakis ("Poulakis"), and John Pullen ("Pullen" and collectively, "Federal Plaintiffs" or "Lead Plaintiffs"), and plaintiffs Eva Pareja ("Pareja") and Greg Sweet ("Sweet"), plaintiffs in the State Action (collectively, the "State Plaintiffs" and together with Federal Plaintiffs, "Plaintiffs").  We oversaw or conducted the day-to-day activities in the Federal and State Actions.[1]  We are familiar with the proceedings in this litigation, and we have personal knowledge of the matters set forth herein based upon supervising and participating in all aspects the Class Actions.

2.      We respectfully submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motion for Final Approval of Partial Class Action Settlement and Plan of Allocation and the concurrently-filed memorandum in support thereof ("Final Approval Memorandum").  As set forth in the Final Approval Memorandum, Plaintiffs seek final approval of the $4,900,000 partial Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation and Agreement of Partial Settlement, dated April 22, 2021 (the "Stipulation") (ECF No. 32).

[2] The Settlement Class is defined as all persons or entities who or which: (i) purchased or otherwise acquired the publicly traded securities of Akazoo between January 24, 2019 and May 21, 2020, both dates inclusive (the "Settlement Class Period"), including but not limited to, those who purchased or acquired Akazoo securities pursuant to the private placement offering agreement

3.      We also respectfully submit this declaration in support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and the concurrently-filed memorandum in support thereof ("Fee Memorandum").[3]   As set forth in the Fee Memorandum, Class Counsel seek an award of attorneys' fees in the amount of one-third of the Settlement Fund (which, by definition, includes interest accrued thereon), and reimbursement of Litigation Expenses in the total amount of $83,267.98, which includes Plaintiffs' Counsel's total out-of-pocket litigation costs in the amount of $62,267.98, and a total of $21,000 to Plaintiffs ($3,500 to each Plaintiff), pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for their costs, including lost wages, incurred in connection with their representation of the Settlement Class.

---

("PIPE Financing"), and were damaged thereby; (ii) held common stock of Modern Media Acquisition Corp. ("MMAC") as of August 9, 2019, eligible to vote at MMAC's August 28, 2019 special meeting, and were damaged thereby; and/or (iii) purchased or otherwise acquired Akazoo common stock pursuant or traceable to the Company's registration statement and prospectus issued in connection with the September 2019 merger of MMAC and Old Akazoo, and were damaged thereby.  Excluded from the Settlement Class are the Susman Godfrey PIPE, SPAC, and Retail Investors, the Additional Settling Parties, EarlyBirdCapital, RSM US LLP, Grant Thornton, Deloitte, BDO, AGK Partners, the Akazoo Insurers, and Cowen Investments; Crowe; the Settling Defendants and their Immediate Family members; Zervos and his Immediate Family members; the past and current executive officers and directors of Akazoo; the past and current officers, directors and partners of Crowe; any trust of which Zervos or any Settling Defendant is the settlor or which is for the benefit of Zervos or any Settling Defendant; the legal representatives, heirs, predecessors, successors, affiliates, parents, subsidiaries, officers, directors, members, managers, partners, general partners, or assigns of any excluded person or entity; and any entity in which any of the above excluded persons have or had a majority ownership interest.  Also excluded will be any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court.

[3] Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses is made on behalf of Class Counsel and Holzer & Holzer, LLC ("Holzer Firm," and together with Class Counsel, "Plaintiffs' Counsel").  The Holzer Firm served as local counsel in the State Action.  As disclosed in the paragraph 4 of the Long Notice, in addition to the Holzer Firm, Class Counsel may also choose to share part of any attorneys' fees awarded by the Court with The Law Offices of Howard G. Smith and The Law Offices of Frank R. Cruz in accordance with the level of their respective work and responsibility in the prosecution of the Class Actions.  See Ex. 2-C (Long Notice) at ¶4.

4.      The Court preliminarily approved the proposed Settlement by Order dated April 28, 2021 (the "Preliminary Approval Order"), and thereby directed notice of the Settlement to be disseminated to the Settlement Class.  *See* ECF No. 36.  Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program under Class Counsel's  direction, whereby notice was given to potential Settlement Class Members by mail and/or email and by publication.

5.      In total, more than 4,340 copies of the Postcard Notice have been disseminated to potential Settlement Class Members and, to date, no requests for exclusion and no objections have been received.

## I.      INTRODUCTION

6.      The Federal Action is a consolidated class action asserting claims pursuant to Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, as well as Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") against Settling Defendants, Apostolos N. Zervos ("Zervos"), and Crowe U.K. LLP ("Crowe").

7.      The proposed Settlement provides for the resolution of all claims against Settling Defendants and Additional Settling Parties in exchange for a non-reversionary cash payment of $4,900,000 (the "Settlement Amount"), additional contingent cash compensation (the "Additional Settlement Amount"), and assistance from certain Settling Defendants in prosecuting the Settlement Class' claims against non-settling defendant Crowe.  As detailed herein, Plaintiffs and Class Counsel submit that the proposed partial Settlement represents an excellent result for the Settlement Class considering the risks of continued litigation, and very real ability to pay issues.

8.      The $4,900,000 cash Settlement Amount on its own is a terrific result.  Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** on their claims on a motion to

3

dismiss, summary judgment and after a jury trial, if the Court certified the Settlement Class, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $9 million. Thus, the $4,900,000 Settlement Amount represents approximately 54.4% of the total ***maximum*** damages ***potentially*** available to the Settlement Class.

9.    According to Cornerstone Research, in 2020 the average recovery in settlements where damages were less than $25 million was 19.7%, and it was 16.8% between 2011 and 2019. Ex. 11 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021) at p. 6 (Fig. 5)). The 54.4% recovery here is clearly an excellent result, and it is even more impressive given that it does not include potential recoveries from the Additional Settlement Amount, and money that may be recovered from Crowe in the on-going litigation. Consequently, the Settlement, when balanced against the significant risks of continued litigation, including the risk that the Settlement Class could recover less than the Settlement Amount (or nothing) after years of additional litigation and delay, weighs strongly in favor of final approval.

10.    It is also important to recognize that the partial Settlement was negotiated by experienced counsel, who were well aware of the strengths and weaknesses of the case, including the ability to pay issues. Class Counsel's efforts included, among other things:

- researching, drafting and filing the initial complaint in the Federal Action (*i.e.*, *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900-BMC (E.D.N.Y.)), as well as the complaint in *Caldwell, et al., v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737 (E.D.N.Y.), both of which asserted violations of the Exchange Act, and Rule 10b-5 promulgated thereunder;

- drafting a motion for consolidation and appointment of lead plaintiffs and lead counsel in the Federal Action;

- researching, drafting and filing the initial complaint in the State Action (*i.e.*, *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (Super. Ct., Fulton

4

Cnty. Geor.)), which asserted violations of the Sections 11, 12(a)(2), and 15 of the Securities Act;

- conducting an extensive investigation of the claims asserted in the Federal and State Actions, which included, among other things, (a) reviewing and analyzing (i) U.S. Securities and Exchange Commission ("SEC") filings by MMAC and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; and (b) retaining and working with a private investigator who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information;

- utilizing the comprehensive investigation and additional research to draft and file the 135-page Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") in the Federal Action, which asserted, *inter alia*, violations of both the Exchange Act and Securities Act, against sixteen (16) different Defendants;

- filing a Consent Motion to Intervene in *Securities and Exchange Commission v. Akazoo S.*A., Case No. 1:20-cv-08101-AKH (S.D.N.Y.) (the "SEC Action"), a case brought by the SEC against Akazoo;

- representing the Settlement Class's interest and appearing at a number of court conferences before the Honorable Alvin K. Hellerstein of the Southern District of New York in the SEC Action;

- consulting extensively with experts on damages and loss causation issues in connection with preparing for settlement negotiations;

- engaging in an extremely complicated mediation process involving the parties to the Federal Action, State Action, and the PIPE and SPAC Action, as well as the Additional Settling Parties.  The negotiations were facilitated by Gregory Lindstrom, Esq., of Phillips ADR, were proceeded by the submission of detailed mediation statements, and included three full-day mediation sessions and weeks of continued discussions via telephone and email with Mr. Lindstrom's assistance;

- preparing multiple letter motions related to settlement negotiations;

- negotiating a detailed Term Sheet with Defense Counsel and counsel for the Susman Godfrey PIPE, SPAC, and Retail Investors;

- drafting and negotiating the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Settling Defendants and Additional Settling Parties;

- working with Plaintiffs' damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly;

- drafting the preliminary approval motion;

- overseeing the implementation of the notice process and responding to email from Settlement Class Members;  and

- drafting the motion for final approval.

The proposed Settlement is, therefore, the result of arm's length negotiations between and among well-informed, highly experienced counsel.

11.    Based on the foregoing efforts, Plaintiffs and Class Counsel believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members. For all the reasons set forth herein and in the accompanying memoranda and declarations, Plaintiffs and Class Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

12.    In addition, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable.  As discussed in further detail below, Class Counsel developed the Plan of Allocation with the assistance of Plaintiffs' damages consultant.  The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts, and similar plans have been repeatedly approved by the courts.

13.    Finally, Class Counsel seeks approval of the request for attorneys' fees and reimbursement of Litigation Expenses as set forth in the Fee Memorandum.  As discussed in detail in the accompanying Fee Memorandum, the requested one-third fee is well within the range of percentage awards granted by courts in this Circuit in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check, and warranted in light of the extent and quality of the work performed and the substantial result achieved.  Likewise, the requested out-of-pocket litigation costs of $62,267.98 and the requested PSLRA awards of $3,500 to each of the six Plaintiffs are also fair and reasonable.  Accordingly,

for the reasons set forth in the Fee Memorandum and for the additional reasons set forth herein, Class Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## II.  PROSECUTION OF THE ACTION

### A.  Background

14.     This is a securities class action brought by investors alleging, *inter alia*, that certain defendants violated the federal securities laws by making false and misleading statements regarding the profitability of Akazoo Limited ("Old Akazoo") and its rapid rise in subscribership and revenues.  Investors were allegedly misled by Settling Defendants' statements emphasizing Old Akazoo's strong, experienced management team, including the extensive industry-specific background of its founder, Zervos, and Old Akazoo's unique, "hyper-local" focus and abilities, which purportedly garnered it 4.3 million subscribers and 37 million registered users across 25 countries, as well as lucrative partnerships.  As a result of these allegedly false and misleading statements, the prices of Akazoo's publicly-traded securities were allegedly artificially inflated and declined when the truth was revealed.

### B.  Commencement of the Federal Action and Appointment of Lead Plaintiffs and Lead Counsel

15.     Two class action complaints were filed in the United States District Court for the Eastern District of New York (the "Court").  The first, filed on April 24, 2020, was styled *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900.  The second, filed on June 19, 2020, was styled *Caldwell, et al., v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737.  On July 17, 2020, the Court ordered the cases be consolidated into *In re Akazoo S.A. Securities Litigation*, Case No. 1:20-cv-01900-BMC, appointed T. Caldwell, S. Caldwell, Poulakis, and Pullen as Lead Plaintiffs, and approved their selection of Rosen Law to serve as Lead Counsel.  (ECF No. 12).

16.    On September 8, 2020, Federal Plaintiffs filed the Complaint asserting claims against the Settling Defendants, Zervos, and Crowe for alleged violations of Sections 10(b), 14(a) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as well as Sections 11 and 15 of the Securities Act.   (ECF No. 15).

17.    On October 9, 2020, Federal Plaintiffs filed a Consent Motion to Intervene in the SEC Action.

**C.    The State Action**

18.    On June 22, 2020, State Plaintiffs commenced the State Action in the Superior Court for the State of Georgia, Fulton County, on behalf of all persons and entities that purchased or otherwise acquired Akazoo common stock pursuant and/or traceable to the Company's registration statement and prospectus issued in connection with Akazoo's September 2019 business combination.  The State Action asserted violations of Sections 11, 12(a)(2), and 15 of the Securities Act against Akazoo, Zervos, Settling Old Akazoo Defendants, Dickey, MMAC Director Defendants, and Crowe.

19.    On November 9, 2020, defendant Crowe filed: (i) a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to dismiss for failure to state a claim upon which relief can be created; and (ii) an answer and affirmative defenses.  That same day, defendants Dickey, Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo filed a stipulation extending the time for them to answer.  While lead counsel in the State Action had analyzed, researched and were prepared to respond to the motion to dismiss, in light of the agreement between the parties to engage in settlement discussions regarding a potential global resolution of the various actions, including the State Action, the parties in the State Action filed extensions to the relevant deadlines,

and State Plaintiffs' response to Crowe's motion to dismiss is currently stayed until after the final approval hearing in the Federal Action.

**D.     The SEC Action**

20.     On September 30, 2020, the SEC filed a lawsuit against Akazoo alleging that the Company had defrauded groups of investors for several years by falsely stating that it was a rapidly growing music streaming business focused on emerging markets with millions of paying month subscribers.  The SEC Action further alleged that Akazoo admitted in a SEC filing that it had no paying users and negligible revenue, if any.  The SEC Action sought a permanent injunction against Akazoo from committing future violations of the securities laws, disgorgement of all ill-gotten gains obtained as a result of the fraudulent activity, and prejudgment interest.

21.     The same day, the SEC filed an emergency application for Akazoo to show cause why an order should not be issued to: (1) freeze Akazoo's assets; (2) require Akazoo to repatriate ill-gotten gains that are now located outside the United States; and (3) require Akazoo to provide a sworn accounting of all assets in its possession, custody, or control.  Akazoo responded to this emergency application on October 6, 2020.

22.     On October 7, 2020, Judge Hellerstein held a hearing on the emergency application and adjourned the hearing to October 14, 2020.

23.     Federal Plaintiffs filed a Consent Motion to Intervene, as well as the PIPE and SPAC investor's motion to intervene.  On October 23, 2020, Judge Hellerstein granted the SEC's and Akazoo's stipulation addressing the freezing of Akazoo's assets, Akazoo providing an accounting, and Akazoo repatriating its overseas assets.

24.     On April 1, 2021, the SEC filed an unopposed motion enter an agreed judgment against Akazoo.

25.     On April 2, 2021, the motion was granted and the agreed judgment was entered.

26.     A conference is scheduled for August 6, 2021.

**E.      The Comprehensive Pre-Filing Investigation and Preparation of the Complaint**

27.     In preparation for filing the Complaint, Class Counsel conducted an extensive factual and legal investigation that included, among other things, (a) reviewing and analyzing (i) SEC filings by MMAC and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; (b) retaining and working with a private investigator who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information; and (c) retained and worked with damages and loss causation experts.  Class Counsel also conducted an exhaustive analysis of applicable case law to help inform which claims to bring and which claims were not viable.

28.     On September 8, 2020, Plaintiffs filed the Complaint based on their thorough investigation.  ECF No. 15.  The 135-page Complaint alleged six different causes of action, and brought claims against sixteen unique Defendants.  The thoroughness of Class Counsel's investigation, research and analysis is demonstrated by the Complaint, which Plaintiffs were confident would survive a motion to dismiss.

**F.      Mediation Efforts, Settlement Negotiations, and the Settlement's Preliminary Approval**

29.     Following Plaintiffs filing of the Complaint, the Settling Parties as well as the Susman Godfrey PIPE, SPAC, and Retail Investors, began settlement discussions in October 2020 and agreed to mediate under respected neutral, Gregory Lindstrom, Esq. of Phillips ADR.  Acknowledging the complexity of any potential settlement, the parties agreed to a three-day mediation.  Any potential settlement was complicated by the fact that there were numerous entities

that were adverse to each other, including a multitude of individual defendants represented by their own counsel that face potential criminal liability, two separate D&O policies for different entities that were arguably at play, and that numerous defendants, including Crowe, the Company's auditor, were located abroad.

30.    In advance of the mediation session, Class Counsel dedicated substantial efforts to preparing a persuasive, evidence-based mediation statement setting forth the facts relevant to the underlying alleged misrepresentations, and analyzing applicable facts and law.  Moreover, Class Counsel spent considerable effort determining the ability of the various defendants to contribute to a settlement, or pay a judgment in the event the mediation was unsuccessful.  Moreover, Class Counsel researched the procedures and likelihood of success if Plaintiffs were required to bring actions abroad against certain defendants.

31.    On December 15-17, 2020, Class Counsel, Defendants' Counsel, counsel for Susman Godfrey PIPE, SPAC, and Retail Investors, counsel for Crowe, counsel for Macquarie, Lew Dickey and his counsel, counsel for the various Tosca Settling Parties, Pierre Schreuder, Panos Dimitropoulos, and counsel for the two D&O policies that were arguably at issue, participated in mediation sessions with Mr. Lindstrom.  During the mediation sessions, the parties engaged in full and frank discussions concerning the merits of the Class Actions, including, for example, the facts alleged to support Plaintiffs' claims, Defendants' resources, and ability to fund a settlement, and future liability (both civil and criminal) for Defendants.  This negotiation process enabled the parties to meaningfully assess the relative strengths and weaknesses of their respective claims and defenses.

32.    Although a global settlement was not reached during the three-day mediation session, the Settling Parties and the Susman Godfrey PIPE, SPAC, and Retail Investors continued

discussions by telephone and email with Mr. Lindstrom's assistance.  Ultimately, the Settling

Parties agreed to a global settlement of the Class Actions and the PIPE and SPAC Action that

provides for consideration of $35,000,000—with 86% of that amount, or $30,100,000, to be paid

to resolve the claims of the PIPE and SPAC Action,[4] and 14% of that amount, or $4,900,000, to

resolve the claims with Settling Defendants and Additional Settling Parties in the Class Actions.

This percentage breakdown of the $35 million was negotiated between counsel for the Class

Actions and the PIPE and SPAC Action and reflects the proportionate size of the damages for the

PIPE and SPAC Action and the Class Actions.  The same percentage breakdown (*i.e.*, 86% to the

PIPE and SPAC Action and 14% the Class Actions), will apply to any Additional Settlement

Amounts recovered.

33.    While the Settlement recovers a substantial amount of the Settlement Class

Members' damages, Plaintiffs still have claims against certain entities with substantial resources

(*e.g.*, Crowe, the Company's auditor) from which Settlement Class Members may receive

additional funds as Plaintiffs continue to pursue these claims.  Moreover, the Stipulation provides

that: (i) Akazoo and Lewis W. Dickey, Jr. will assign their claims against Crowe to Plaintiffs; and

(ii) upon request, the Tosca Settling Parties will assign to Plaintiffs any claims against Crowe

relating to Akazoo.  *See* Stipulation at ¶¶2.10, 2.14.

34.    Following additional negotiations, the Parties exchanged multiple drafts of—and

ultimately executed—the Stipulation dated April 22, 2021.  The next day, Plaintiffs filed their

Unopposed Motion for: (I) Preliminary Approval of Partial Class Action Settlement; (II)

---

[4] The PIPE and SPAC Action will have its own stipulation to provide for the dismissal of the PIPE and SPAC Action, as set forth more fully in that stipulation.

Certification of the Settlement Class; and (III) Approval of Dissemination of Notice to the Settlement Class.  ECF Nos. 32-35.

35.    On April 28, 2021, the Court entered the Preliminary Approval Order.  ECF No. 36.

## III.    THE RISKS OF CONTINUED LITIGATION

36.    The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a non-reversionary cash payment of $4,900,000.  As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals.  Prior to trial and appeal, the most immediate risks faced by the Settlement Class related to Defendants' ability to pay.  Thus, there was no guarantee that Plaintiffs and the Settlement Class would later achieve any recovery, let alone one greater than $4,900,000.

### A.    Risks Posed By Continued Litigation

37.    At the time the partial Settlement was reached, Defendant Crowe had already filed a demurrer in the State Action both on the merits and for lack of jurisdiction.  Moreover, the adequacy of the Complaint had not been tested in this Court.  While Plaintiffs were confident that they would prevail against any motion(s) to dismiss, there is always a risk that at least some of the claims would not be sustained and/or certain Defendants' motions would be successful.

38.    Defendants would have also opposed class certification.  While Class Counsel researched and analyzed the class question and are confident that all of Rule 23's requirements would have been met, and that the Court would have certified the proposed class, Plaintiffs bear the burden of proof on class certification, and Defendants would have undoubtedly raised arguments challenging the propriety of class certification.  Moreover, even if Plaintiffs

successfully obtained class certification, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery. Class certification was, by no means, a forgone conclusion.

39.     Additionally, a recent ruling by the United States Supreme Court has made obtaining class certification for plaintiffs more difficult and could potentially provide additional challenges should the litigation against Settling Defendants proceed. In *Goldman Sachs Grp. v. AR Teacher Ret.*, No. 20-222, 2, slip op. (U.S. June 21, 2021), the Supreme Court held, in part, that when defendants are seeking to rebut the presumption of reliance established under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as modified by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), courts may consider the generic nature of an alleged misrepresentation as evidence of lack of price impact. Accordingly, courts are now permitted to assess materiality of an alleged misstatement and consider "all evidence relevant to price impact" at the class certification stage. On the plus side for Plaintiffs, the Supreme Court did clarify that defendants bear the burden of persuasion of showing a lack of price impact by a preponderance of the evidence.

**B.      Challenges To Obtaining Discovery**

40.     Plaintiffs would have had to surmount significant obstacles to obtain evidence needed to support their claims, much of which was located abroad, including documents located in Greece that are presumably written in Greek, and documents located in Luxembourg, where Akazoo is incorporated. Accordingly, discovery would be challenging and costly as it would require translation or the retention of multilingual attorneys to facilitate document review.

41.    Document discovery would also have been hampered—if not prevented altogether in at least certain instances—by potential criminal investigations both domestically and abroad. As a result, Plaintiffs' Counsel may have been restricted or forbidden from reviewing certain documents, and there is no guarantee they would have been able to conduct the document discovery necessary to prove their case.

42.    Even if Defendants produced documents, many of those documents may have supported certain Defendants' narrative of the case and undermined Plaintiffs' case. Indeed, the MMAC Defendants argued that even though they had done adequate due diligence they were defrauded like the rest of the Settlement Class and had lost substantial sums. Discovery could potentially help establish this defense.

43.    In addition, if Plaintiffs sought discovery from third-parties in Europe, Plaintiffs would have been required to serve discovery through the Hague Evidence Convention and international protocols, an extremely time consuming process with no guarantee of success. Accordingly, it is possible that Plaintiffs would have needed to apply to the Court for letters rogatory. Moreover, certain fact depositions also would have been contingent on Plaintiffs successfully locating and compelling fact witness in Europe.

44.    An additional benefit of the Settlement is that Akazoo has agreed to provide documents and other testimony against Defendant Crowe (*see* Stipulation ¶2.10). This greatly benefits the Settlement Class and reduces these discovery risks.

### C.    Risks to Proving Liability and Damages

45.    In addition to the hurdle of obtaining foreign discovery and class action status, Plaintiffs and Class Counsel faced numerous additional risks to establishing certain Defendants' liability. Defendants forcefully argued at the mediation—and undoubtedly would have continued

to argue at summary judgment and/or trial—that Plaintiffs could not establish the elements of their Exchange Act claims.  As discussed above, certain Defendants have strenuously argued that they had no motive or scienter since they were large investors in Akazoo themselves and ultimately suffered huge losses due to the fraud.  As such, they were incentivized to perform adequate due diligence and they had no motive to be involved in the scheme.

46.     Although Plaintiffs believe they had strong arguments in response to this argument and others, Defendants' contentions nevertheless posed a risk to establishing liability had the litigation continued.  Indeed, despite believing that the Class Actions are meritorious, Plaintiffs and Class Counsel were well aware of the high hurdles they would have to surmount in order to successfully prove that Defendants actually violated the securities laws.

47.     Even assuming Plaintiffs overcame the above risks and established liability, Plaintiffs would have confronted considerable challenges in establishing class-wide damages.  As a result of Plaintiffs' investigation, including consultation with experts, and the significant discussions conducted with the mediator, as well as discussions directly with defense counsel, Class Counsel obtained a clear preview of what arguments would be made with respect to the damages portion of the Class Actions.

48.     Moreover, if damages were ultimately contested, both sides would have used experts to support their respective positions.  The inevitable "battle of the experts" at class certification, summary judgment, and trial creates substantial litigation risk because there can be no assurance as to which party's expert a jury will find more persuasive.

**D.     Other Risks, Including Trial and Appeals, and Ability to Collect a Judgment**

49.     Plaintiffs would have had to prevail at several stages of litigation, each of which would have presented significant risks in complex class actions such as this one.  Class Counsel

know from experience that despite the most vigorous and competent efforts, success in complex litigation such as this case is never assured. For example, approximately two years ago, GPM lost a six-week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.). Put another way, complex litigation is uncertain, and success in cases like this one is never guaranteed.

50.     Even if Plaintiffs had succeeded in proving all elements of their case at trial and obtained a jury verdict, Defendants would almost certainly have appealed. An appeal not only would have renewed all the risks faced by Plaintiffs—as Defendants would have reasserted all their arguments summarized above—but also would have resulted in significant additional delay. Given these significant litigation risks, Plaintiffs and Class Counsel believe that the Settlement represents an excellent result for the Settlement Class.

51.     If the case was litigated, it was all but assured that the Settlement Class would have received less money than provided for in the Settlement. Here, the global Settlement was able to recover almost all of the Company's funds. If the litigation had continued, Defendants would have continued to use these funds to mount their various defenses, including from ongoing regulatory and potentially criminal investigations. The Company had already spent millions on its defense and Akazoo and the individual defendants would have continued to do so going forward. There was an ongoing threat that Akazoo would face bankruptcy proceedings in Luxembourg. Had the Settlement not been reached, additional costs, time, complexities, and uncertainty would have existed and erode any funds for investors.

52.     Moreover, a portion of the Settlement was funded by a D&O policy.  If the litigation continued and/or ultimately the Company or its executives were criminally charged, it is possible that the policy would have denied coverage and no longer been a source of funds.

53.     Finally, Akazoo is a company that is incorporated and based in Luxembourg.  As such, collecting any remaining assets from the Company in Luxembourg would require hiring Luxembourgian counsel to bring suit there.  This would be extremely costly without any guarantee of success.

**E.     The Settlement is Reasonable in Light of the Maximum Potential Recovery**

54.     As discussed above, Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $9 million.  Thus, the Settlement Amount represents approximately 54.4% of the total ***maximum*** damages ***potentially*** available in the Federal Action.

55.     A recovery of 54.4% of maximum recoverable damages is above comparable settlements and is an excellent result.  According to Cornerstone Research, for settlements where damages were less than $25 million, the average settlement recovery was 19.7% in 2020, and between 2011 and 2019, the average settlement recovery was 16.8%.  *See* Ex. 11 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021) at p. 6 (Fig. 5)).  This weighs strongly in favor of final approval.

56.     Having evaluated the relative strengths and weaknesses of the Class Actions in light of Defendants' arguments, and considering the very real risks presented by continued litigation, it is our informed judgment, based on all of the proceedings to date and our extensive experience in

litigating class actions under the federal securities laws, that the proposed Settlement is fair, reasonable, and adequate and in the Settlement Class's best interest.

## IV.    PLAINTIFFS'   COMPLIANCE   WITH   THE   COURT'S   PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE

57.    The Preliminary Approval Order directed that the Postcard Notice to be mailed to potential Settlement Class Members and also set a deadline of August 17, 2021 (21 calendar days prior to the final fairness hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum or to request exclusion from the Settlement Class, and set a final fairness hearing date of September 7, 2021 (the "Settlement Hearing").

58.    Pursuant to the Preliminary Approval Order, Class Counsel instructed SCS, the Court-approved Claims Administrator, to disseminate copies of the Postcard Notice and publish the Summary Notice.  Contemporaneously with the mailing of the Postcard Notice, Class Counsel instructed SCS to post downloadable copies of the Long Notice and Claim Form online at https://www.strategicclaims.net/akazoo-s-a-securities-litigation (the "Settlement Website").  The Postcard Notice directed Settlement Class Members to the Settlement Website in order to obtain additional information on the Settlement, including how to file a claim, request exclusion or object to the Settlement, and access the Long Notice and Claim Form.

59.    The Court-approved Long Notice disclosed, among other things, the following information to Settlement Class Members: (a) a summary of the Settlement, including the $4.9 million Settlement Amount, the Additional Settlement Amount, and assistance from some of the Settling Defendants in prosecuting the Settlement Class' claims against non-settling defendant Crowe; (b) the proposed Plan of Allocation; (c) that Class Counsel would apply for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed one-third of the

Settlement Amount (*i.e.*, $1,633,333, plus interest) and one-third of any Additional Settlement Amount allocated to the Class Actions, as well as Litigation Expenses in an amount not to exceed $100,000, which could include an application for reimbursement to Plaintiffs for their costs; (d) that any Settlement Class Member could object to the requested attorneys' fees and Litigation Expenses; (e) an explanation of the reasons for the Settlement; (f) that requests for exclusion from the Settlement must be submitted to the Claims Administrator no later than August 17, 2021; (g) that objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum must be filed with the Court no later than August 17, 2021; and (h) that the deadline for submitting a Claim Form is September 23, 2021.

60.    To disseminate the Postcard Notice, on May 26, 2021, SCS mailed a copy of the Postcard Notice to 159 individuals and organizations identified in the transfer agent records provided to Class Counsel by Akazoo's counsel. *See* Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl."), attached hereto as Exhibit 2 at ¶4.

61.    In addition, SCS maintains a proprietary database with names and addresses of the largest and most common banks, brokerage firms, institutions and other third-party nominees. On May 26, 2021, SCS caused a letter to be mailed or emailed to the 1,230 nominees contained in the SCS master mailing list. Evans Decl., ¶5; 2-B (copy of the letter sent to nominees). The letter directed nominees to: (a) send a Postcard Notice to their customers who may be beneficial purchasers/owners; (b) email a direct link to the Long Notice and Claim Form supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses, if available, of such beneficial purchasers/owners so SCS could promptly

mail the Postcard Notice or email links to the Long Notice and Claim Form directly to them.  Evans Decl., ¶5.

62.     As of August 2, 2021, SCS caused 4,343 copies of the Postcard Notice to be disseminated to potential Settlement Class Members.  *See id.* at ¶9.

63.     On June 7, 2021, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted over *GlobeNewswire*.  *See id.* at ¶10; Ex. 2-D (confirmations of publications).

64.     Class Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on May 13, 2021, to provide potential Settlement Class Members with information concerning the Settlement, including exclusion, objection, and claim-filing deadlines for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Long Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order.  Evans Decl., ¶12.

65.     SCS maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request a Long Notice and Claim Form.  SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries.  *Id.* at ¶11.

66.     As set forth above, the Long Notice informed potential Settlement Class Members that the deadline to file objections to the Settlement, the proposed Plan of Allocation and/or the Fee Memorandum, or to request exclusion from the Settlement Class, is August 17, 2021.  To date, no requests for exclusion have been received.  *Id.* at ¶¶13-14.  SCS will file a supplemental affidavit after the August 17, 2021 deadline addressing whether any requests for exclusion have been received.

67.     In addition, to date, no objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum have been entered on this Court's docket or have otherwise been received by Class Counsel.  Class Counsel will file reply papers by August 31, 2021 that will address any objections that may be received.

## V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

68.     Pursuant to the Preliminary Approval Order, and as set forth in the Long Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $4,900,000 Settlement Amount, plus any and all interest earned thereon, less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid Claim Form with all required information either online or postmarked no later than September 23, 2021.  The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, subject to Court approval.  *See* Ex. 2-C (Long Notice) ¶66; Stipulation, ¶1.46.  As set forth in the Long Notice, the Net Settlement Fund will be distributed among Settlement Class Members according to the Plan of Allocation approved by the Court.

69.     The proposed Plan of Allocation is detailed in the Long Notice.  *See* Ex. 2-C (Long Notice) pp. 11-15.  A downloadable version of the Long Notice is posted online on the Settlement Website.  If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Authorized Claimants.  The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the alleged fraud as opposed to losses caused by market- or industry-wide factors or Company-specific factors unrelated to the alleged fraud.  *See id.*

70.     The Plan of Allocation, developed by Plaintiffs' damages expert working in conjunction with Class Counsel, is based on a theory of damages consistent with the securities claims alleged, and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Class Actions and responses to Defendants' negative causation arguments.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' disclosure event allegations and analysis.

71.     Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Claim Amount for each Settlement Class Member's purchases of: (1) Akazoo common stock purchased or acquired from January 24, 2019 through and including May 21, 2020 ("Section 10(b) Claims"); (2) MMAC common stock that was eligible to vote at MMAC's August 28, 2019 special meeting and was subsequently exchanged for Akazoo common stock on or around September 11, 2019 ("Section 14(a) Claims"); and/or (3) Akazoo common stock purchased or acquired pursuant or traceable to the Company's registration statement and prospectus issued in connection with the September 2019 Merger ("Section 11 Claims").  *See* Ex. 2-C (Long Notice) ¶¶67-74.

72.     Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund in accordance with the following allocations: (1) Settlement Class Members with Section 10(b) Claims shall be allocated approximately 4% of the Net Settlement Fund; (2) Settlement Class Members with Section 14(a) Claims shall be allocated approximately 56.7% of the Net Settlement Fund; and (3) Settlement Class Members with Section 11 Claims shall be allocated approximately 39.3% of the Net Settlement Fund.[5]  More specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's

---

[5] These allocations are based on the maximum potential damages of each claim.  Ex. 2-C (Long Notice) at pp. 12-15.

Recognized Claim Amount divided by the total of Recognized Claim Amounts of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund and in accordance with each type of claim's allocation. Ex. 2-C. (Long Notice) at ¶77.

73.     An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Akazoo or MMAC securities the Claimant purchased, acquired, or sold during the relevant period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants.

74.     The Plan of Allocation is based on the premise that the decreases in the price of the Company's common stock may be used to measure the alleged artificial inflation in the price of the Company's common stock prior to these stock price declines.  If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Akazoo or MMAC common stock during the relevant period, or if the Claimant purchased shares during the relevant period, but did not hold such shares long enough, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged wrongdoing. Ex. 2-C. (Long Notice) at ¶80.

75.     If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. Ex. 2-C. (Long Notice) at ¶77. Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater.  *Id.*  In Class Counsel's experience, processing and sending a check for less than $10.00 is cost-prohibitive.

76.     In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Akazoo or MMAC securities that were attributable to the conduct alleged in the

Complaint.  Class Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Plaintiffs prevailed at trial.

77.    To date, no objections to the proposed Plan of Allocation have been received by Class Counsel, the Claims Administrator, or filed on the Court's docket.  *See* Evans Decl. at ¶14.

## VI.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

78.    In addition to seeking final approval of the Settlement and Plan of Allocation, Class Counsel are applying for a fee award of one-third of the Class Action Settlement Amount (*i.e.*, $1,633,333, plus interest) and one-third of any Additional Settlement Amount allocated to the Class Actions.  Class Counsel also request reimbursement of Litigation Expenses from the Settlement Fund in the amount of $83,267.98, which includes $62,267.98 in out-of-pocket expenses that Plaintiffs' Counsel incurred in connection with the prosecution of the Class Actions, and $21,000 to Plaintiffs ($3,500 each) for their reasonable costs (including lost wages) directly incurred in connection with their representation of the Settlement Class.  The total Litigation Expenses amount of $83,267.98 is well below the maximum expense amount of $100,000 set forth in the Postcard and Long Notice.  The legal authorities supporting a one-third fee award are set forth in the accompanying Fee Memorandum, which is being filed contemporaneously herewith. The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

### A.    The Fee Application

79.    Class Counsel are applying for a percentage-of-the-common-fund fee award to compensate Plaintiffs' Counsel for the services they rendered on behalf of the Settlement Class. As set forth in the accompanying Fee Memorandum, the percentage method is the best method for

determining a fair attorneys' fee award, because unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery. The lawyers are motivated to achieve maximum recovery in the shortest amount of time required under the circumstances. This paradigm minimizes unnecessary drain on the Court's resources. Notably, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court and the Second Circuit for cases of this nature. Furthermore, as set forth below, though not required in the Second Circuit, Class Counsel also respectfully submits that the requested fee is fully supported by a "lodestar multiplier cross-check."

80.    Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Class Counsel respectfully submit that the requested fee award is fair and reasonable and should be approved. As discussed in the Fee Memorandum, a one-third fee award is well within the range of percentages awarded in securities class actions with comparable settlements in this Circuit.

### 1.    The Favorable Outcome Achieved is the Result of the Significant Time and Labor That Plaintiffs' Counsel Devoted to the Class Actions

81.    Class Counsel spent considerable time prosecuting the Class Actions on behalf of the Settlement Class. Among other things, Class Counsel spent significant time:

   a. researching, drafting and filing the initial complaint in the Federal Action (*i.e., Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900-BMC (E.D.N.Y.)), as well as the complaint in *Caldwell, et al., v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737 (E.D.N.Y.);

   b. drafting a motion for consolidation and appointment of lead plaintiffs and lead counsel in the Federal Action;

   c. researching, drafting and filing the initial complaint in the State Action (*i.e., Pareja, et al., v. Apostolos N. Zervos, et al*., Case No. 2020CV337418 (Super. Ct., Fulton Cnty. Geor.));

d.  conducting an extensive investigation into the claims asserted in the Class Actions, which included, among other things, (a) reviewing and analyzing (i) SEC filings by MMAC and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; and (b) retaining and working with private investigators who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information;

e.  utilizing the comprehensive investigation and additional research to draft and file the 135-page Complaint in the Federal Action, which asserted, *inter alia*, violations of both the Exchange Act and Securities Act, against sixteen (16) unique Defendants;

f.  filing a Consent Motion to Intervene in SEC Action against Akazoo;

g.  representing the Settlement Class' interest and appearing at a number of court conferences before Judge Hellerstein in the SEC Action;

h.  consulting extensively with experts on damages and loss causation issues in connection with preparing for settlement negotiations;

i.  engaging in an extremely complicated mediation process involving the parties to the Federal Action, State Action, and the PIPE and SPAC Action, as well as the Additional Settling Parties.  The negotiations were facilitated by Mr. Lindstrom, proceeded by the submission of detailed mediation statements, and included three full-day mediation sessions and weeks of continued discussions via telephone and email with Mr. Lindstrom's assistance;

j.  preparing multiple letter motions related to settlement negotiations;

k.  negotiating a detailed Term Sheet with the Defense Counsel and counsel for the Susman Godfrey PIPE, SPAC, and Retail Investors;

l.  drafting and negotiating the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with the Settling Defendants and Additional Settling Parties;

m.  working with Plaintiffs' damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

n.  drafting the preliminary approval motion;

o.  overseeing the implementation of the notice process and responding to email from Settlement Class Members;  and

p.  drafting the motion for final approval.

82.     Attached hereto as Exhibits 8, 9, and 10 are declarations from Plaintiffs' Counsel in support of an award of attorneys' fees and reimbursement of out-of-pocket expenses incurred in connection with prosecution of the Class Actions.  Included within each supporting declaration is a schedule summarizing the hours and lodestar of each firm, a summary of expenses by category, and a firm resume.[6]  The following is a chart of lodestar amounts for the two Class Counsel firms, plus the Holzer Firm, which was local counsel in the State Action:

| LAW FIRM: | LODESTAR |
|---|---|
| Glancy Prongay & Murray LLP | $477,942.00 |
| The Rosen Law Firm, P.A. | $230,125.00 |
| Holzer & Holzer LLP | $28,843.75 |
| TOTAL LODESTAR | $736,910.75 |

83.     The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation in this District. Additionally, the rates billed by Plaintiffs' Counsel attorneys (ranging from $425-$675 per hour for non-partners and $725-$995 per hour for partners) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude.  *See* Ex. 12 attached hereto (table of peer law firm billing rates).

84.     As set forth above and in detail in Exhibits 8, 9, and 10, Plaintiffs' Counsel collectively expended a total of 1,066.65 hours in the investigation and prosecution of the Class Actions.  The resulting total lodestar is $736,910.75.  The requested fee amount of one-third of the Settlement Fund currently equals $1,633,333 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a 2.22 multiplier of Plaintiffs' Counsel's lodestar.

---

[6] Time expended in preparing the application for fees and reimbursement of expenses has not been included.

85.     Moreover, Plaintiffs' Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval.  Among other things, Class Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member's claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process.  No additional compensation will be sought for this work.

86.     As detailed above, throughout this litigation, Class Counsel devoted substantial time to the prosecution of the Class Actions.  Class Counsel maintained control of, and monitored the work performed by, lawyers and other personnel on this cases.  We personally devoted substantial time to this litigation and were personally involved in, among other things: (a) the investigation of the facts and applicable law; (b) drafting or reviewing and editing all pleadings, court filings, the meditation statement, and other correspondence prepared on behalf of Plaintiffs; (c) engaging with damages and loss causation experts; (d) conducting discussions with counsel for Defendants and the Susman Godfrey PIPE, SPAC, and Retail Investors on a variety of matters; and (e) were intimately involved in settlement negotiations.  Other experienced attorneys were involved with drafting, reviewing and/or editing pleadings, court filings, and the mediation submissions, communicating with Plaintiffs, the mediation process, negotiating the terms of the Settlement, term sheet and Stipulation, and other matters.  More junior attorneys and paralegals also worked on matters appropriate to their skill and experience level.  Throughout the litigation, Class Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

87.     Plaintiffs' Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement Class.  In

circumstances such as these, and in consideration of the hard work and the result achieved, we respectfully submit that the requested fee is reasonable and should be approved.

### 2.     The Magnitude and Complexity of the Action

88.     As detailed in the Fee Memorandum, securities class action cases are known for their notorious complexity.  This case was no different.  The Class Actions arose out of MMAC's acquisition of Akazoo through a special purpose acquisition company (SPAC).  As such, there are complicated issues relating to MMAC's due diligence, the culpability of the numerous defendants that were involved in raising funds and soliciting investors, the role of the Company's outside auditor in the transaction, and the ability to collect funds from defendants throughout Europe, including Greece, and Luxembourg, where the Company is incorporated.

89.     Additionally, the mediation and settlement process was long and hard-fought.  The Settling Parties zealously advocated their positions throughout the mediation process and it to several additional months before the Settling Parties reached complete agreement and executed the Stipulation.

### 3.     The Significant Risks Borne By Plaintiffs' Counsel

90.     This prosecution was undertaken by Plaintiffs' Counsel on an entirely contingent-fee basis.  From the outset, there was no guarantee that Plaintiffs' Counsel would ever be compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Class Actions, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required by a litigation like this one were covered.  Although the Class Actions reached this partial resolution relatively quickly, upon initiation, it was unknown how long litigation would last and there are additional

claims against defendants not parties to this partial Settlement.  With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Plaintiffs' Counsel received no compensation during the course of the Class Actions, and incurred $62,267.98 in out-of-pocket litigation-related expenses.

91.    Additionally, Plaintiffs alleged their claims without information gained through subpoena power, as Defendants would likely have argued that any attempt to do so would have been precluded by the PSLRA's automatic stay of discovery.

92.    Plaintiffs' Counsel also bore the risk that no recovery would be achieved.  As discussed above, from the outset, this litigation presented multiple risks and uncertainties that could have prevented any recovery whatsoever.

93.    Moreover, despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured.  Plaintiffs' Counsel know from experience that the commencement of a class action does not guarantee a settlement.  *See supra*, ¶49; *see also Gross v. GFI Group, Inc.*, 784 Fed. App'x. 27, 28 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where one of Class Counsel in this case—GPM—served as plaintiff's counsel).  To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

### 4.    The Quality of Representation, Including the Result Obtained, the Experience and Expertise of Plaintiffs' Counsel, and the Standing and Caliber of Defendants' Counsel

94.    As demonstrated by the firm resumes, attached hereto as Exhibits 8-C, 9-C, and 10-C, Plaintiffs' Counsel are highly experienced and skilled laws firms that focus their practices

on securities class action litigation.  Indeed, Plaintiffs' Counsel have substantial experience in litigating securities fraud class actions and have negotiated scores of other class settlements, which have been approved by courts throughout the country.  Plaintiffs' Counsel enjoy a well-deserved reputation for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters.  We believe Plaintiffs' Counsel's experience added valuable leverage in the settlement negotiations.

95.    Plaintiffs' Counsel also obtained an excellent result for the Settlement Class, as the Settlement recovers more than half of investors' maximum potential damages, and this recovery is only a *partial* settlement.

96.    Additionally, the quality of the work performed by Plaintiffs' Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, the Settling Defendants were represented by, among others, Gibson, Dunn & Crutcher LLP, Shearman & Sterling LLP, and Dechert LLP, well-known law firms that vigorously represented the interests of their clients throughout the Class Actions.  Indeed, from past experience, Plaintiffs' Counsel know firsthand that these firms will zealously and persistently litigate for their clients through class certification, summary judgment and appeals.  In the face of this experienced and formidable opposition, Plaintiffs' Counsel was nonetheless able to persuade Defendants to settle the case on terms favorable to the Settlement Class.

### 5.    The Requested Fee In Relation to the Settlement

97.    The amount of the fee requested (one-third) in relation to the Settlement Amount ($4.9 million) is fair and reasonable.  Courts routinely award fees of one-third in securities class action settlements.  *See* Fee Memorandum at pp.7-10; *see also* Ex. 13 (collecting cases).

### 6.    Interests of Public Policy, Including the Need to Ensure the Availability of Experienced Counsel in High-Risk Contingent Securities Cases

98.     Courts have consistently recognized that it is in the public interest to have vigorous private enforcement of the federal securities laws,  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.  Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

### 7.     The Reaction of the Class Supports Class Counsel's Fee Request

99.     As noted above, as of August 2, 2021, 4,343 copies of the Postcard Notice had been disseminated advising Settlement Class Members that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund.  Evans Decl. ¶9; Ex. 2-A (Postcard Notice).  In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted over *GlobeNewswire*.  Evans Decl. at ¶10; Ex. 2-D (confirmation of Summary Notice publications).  To date, no objections to the maximum potential attorneys' fees request set forth in the Postcard Notice and Long Notice have been received or entered on this Court's docket.  Any objections received after the date of this filing will be addressed in Class Counsel's reply papers, set to be filed by August 31, 2021.

### 8.     Plaintiffs Support Class Counsel's Fee Request

100.     As set forth in the declarations submitted by Plaintiffs, Plaintiffs have concluded that Class Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Class Actions.  *See* Caldwells Decl. ¶7; Poulakis Decl., ¶7; Pullen Decl., ¶7; Pareja Decl., ¶7; and Sweet Decl., ¶7.  Plaintiffs have been intimately involved in this case, and their endorsement of Class Counsel's fee request supports the

reasonableness of the request and should be given weight in the Court's consideration of the fee award.

101.    In sum, Plaintiffs' Counsel accepted the Class Actions on a fully contingent basis, committed significant resources, and prosecuted the Class Actions without any compensation or guarantee of success.  Based on the result obtained, the quality of the work performed, the litigation risks, and the contingent nature of the representation, Class Counsel respectfully submit that a fee award of one-third of the Settlement Fund, resulting in a multiplier of 2.22, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

**B.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable**

102.    Class Counsel seeks a total of $83,267.98 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes: $62,267.98 in out-of-pocket expenses reasonably and necessarily incurred by Plaintiffs' Counsel in connection with commencing, litigating, and settling the claims asserted in the Class Actions; as well as $21,000 to Plaintiffs pursuant to 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4), for their reasonable costs (including lost wages) directly incurred in connection with their representation of the Settlement Class.  *See* Caldwells Decl., ¶9; Poulakis Decl., ¶9; Pullen Decl., ¶9; Pareja Decl., ¶9; and Sweet Decl., ¶9.

103.    The Postcard Notice and the Long Notice informed potential Settlement Class Members that Class Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $100,000.  The total amount requested by Class Counsel and Plaintiffs, $83,267.98, falls well below the $100,000 that Settlement Class Members were advised could be sought.  To date, no objection has been raised as to the maximum amount of expenses set forth in both the Postcard and Long Notice.  If any objection to the request for reimbursement of Litigation Expenses is made after the date of this filing, Class Counsel will address it in their reply papers.

104.    From the beginning of the case, Plaintiffs' Counsel were aware that they might not recover their out-of-pocket expenses.  Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the contemporaneous lost use of funds advanced to prosecute the Class Actions.  Accordingly, Plaintiffs' Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

105.    In our opinion, the expenses paid were necessary and appropriate for the prosecution and resolution of the Class Actions.  The following is a combined breakdown by category of all costs and expenses incurred by Plaintiffs' Counsel to prosecute the Class Actions:

| ITEM | AMOUNT |
| --- | --- |
| COURIER & SPECIAL POSTAGE | $484.04 |
| COURT FILING FEES | $1,574.94 |
| EXPERTS | $24,020.00 |
| INVESTIGATIONS | $8,707.65 |
| MEDIATION | $16,687.50 |
| ONLINE RESEARCH | $3,385.85 |
| PRESS RELEASES | $5,165.00 |
| SERVICE OF PROCESS | $1,908.22 |
| TRAVEL/TRANSPORTATION/MEALS | $134.78 |
| TRAVEL SETTLEMENT HEARING[7] | $200 |
| GRAND TOTAL | $62,267.98 |

106.    The largest component of expenses, $24,020.00, or approximately 38.6% of the total expenses, was expended on the retention of experts—two in the field of damages and loss causation.  These experts were consulted at different points throughout the litigation, including on

---

[7] This expense amount is an estimate, and if the Settlement Hearing is held telephonically or via video conference, the request for this expense of $200 will be withdrawn and not be taken from the Settlement Fund.

matters related to the preparation of the Complaint, on matters relating to the negotiation of the Settlement, and on preparation of the proposed Plan of Allocation.

107. Another large component of expenses, $16,687.50, or approximately 26.8% of the total expenses, was mediation fees owed to Mr. Lindstrom, Esq. for the services he provided during the mediation and the settlement negotiations.

108. The other litigation expenses for which Class Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These litigation expenses included, among other things, court filing fees, service of process costs, postage and delivery expenses, cost for private investigators, and the cost of on-line legal research.

109. Finally, as stated above, Plaintiffs seek reimbursement, pursuant to 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4), of their reasonable costs (including lost wages) directly incurred in connection with their representation of the Settlement Class, in the amounts of $3,500 each. *See* Caldwells Decl., ¶9; Poulakis Decl., ¶9; Pullen Decl., ¶9; Pareja Decl., ¶9; and Sweet Decl., ¶9. The six plaintiffs all lost significant sums of money on their investments in Akazoo/MMAC securities and were highly motived to, and did, work closely with Plaintiffs' Counsel throughout the pendency of the Class Actions to secure the highest possible recovery for themselves and the Settlement Class. Each Plaintiff dedicated time to the successful prosecution of the Class Actions by, among other things: (a) regularly communication with counsel regarding the posture and progress of their respective cases, as well as strategy; (b) produced documents to counsel; (c) reviewed all significant pleadings and briefs filed in the Federal Action and/or State Action; (d) consulted with counsel regarding the settlement negotiations; and (e) evaluated and approved the

proposed partial Settlement. *See* Caldwells Decl., ¶5; Poulakis Decl., ¶5; Pullen Decl., ¶5; Pareja Decl., ¶5; and Sweet Decl., ¶5.

110.    In our opinion, the Litigation Expenses incurred by Plaintiffs' Counsel and Plaintiffs were reasonable and necessary to represent the Settlement Class and achieve the Settlement.  Accordingly, Class Counsel respectfully submit that the Litigation Expenses should be reimbursed in full from the Settlement Fund.

## VII.    CONCLUSION

111.    In view of the significant recovery for the Settlement Class and the substantial risks related to the prosecution of the Class Actions, as described herein and in the accompanying Final Approval Memorandum, we respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable.  We further submit that the requested fee in the amount of one-third of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses, including PSLRA reimbursement for costs in the amounts of $3,500 for each of the Plaintiffs, should also be approved.

We declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 3rd day of August 2021, at Los Angeles, California.

*/s/ Casey E. Sadler*
CASEY E. SADLER

Executed this 3rd day of August 2021, at New York, New York.

*/s/ Phillip Kim*
PHILLIP KIM