# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC <br><br> CLASS ACTION |


## DECLARATION OF MEDIATOR GREGORY P. LINDSTROM, ESQ.
## IN SUPPORT OF FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

I, Gregory P. Lindstrom, hereby declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.      I am filing this declaration in my capacity as the mediator in connection with the proposed partial settlement ("Settlement") in the above-captioned securities class action (the "Federal Action"), and a related action styled *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418, pending in the Superior Court for the State of Georgia, Fulton County, (the "State Action" and together with the Federal Action, the "Class Actions").[1]

2.      The Parties' negotiations were conducted in confidence and under my supervision. All participants in the mediation and negotiations executed a confidentiality agreement indicating that the mediation process was to constitute settlement negotiations for the purpose of Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication and/or use in evidence. By making this declaration, neither I nor the Parties waive in any way the provisions of the confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth below to be used in support of approval of the Settlement. Thus, without waiving the mediation privilege, I make this declaration based on personal knowledge, and I am competent to testify as to the matters set forth herein.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Partial Settlement, dated April 22, 2021 ("Stipulation" (ECF No. 32)).

**Relevant Professional Background and Experience**

3.      I graduated from the University of California at Los Angeles *summa cum laude* in 1975, received my J.D. degree in 1978 from the University of Chicago Law School, and am licensed to practice law in the State of California.

4.      I joined Latham & Watkins in Los Angeles in June, 1978, and spent the next thirty years of my career with the firm, becoming a partner in 1986 and ultimately serving as the Managing Partner of the San Francisco office for seven years.  I also served two terms on the firm's Global Executive Committee.

5.      At Latham, I specialized in complex litigation, handling major matters in a wide array of substantive areas, including antitrust, unfair competition, business torts, securities fraud, intellectual property, real estate and employment law.  I have tried more than 30 cases, was elected to the American College of Trial Lawyers in 1998, and was named as one of the "Best Lawyers in America" each year for more than a decade. I served as co-lead counsel in the landmark case, *United States v Oracle Corporation*, which the National Law Journal selected as the "Defense Verdict of the Year" for 2004.

6.      In 2008, I retired from Latham and joined my longtime client, The Irvine Company, as General Counsel.  Over the next four years, my duties expanded to include responsibility for all administrative functions of the company.  Throughout my tenure at The Irvine Company, I served as a member of the four-person Office of the Chairman, which oversaw the entire operations of the company.  Finally, I acted as a Corporate Secretary and the primary liaison with the Board of Directors.  In 2011, I retired from The Irvine Company.

7.      While in private practice, and later as a general counsel, I was an active proponent of alternative dispute resolution, participating in dozens of mediations and arbitrations.  My

3

commitment to the efficient out-of-court resolution of business disputes prompted me to become a full-time alternative dispute resolution professional in 2012.

8.      After completing training with Pepperdine/Straus Institute and the International Institute for Conflict, Prevention and Resolution (CPR), I gained extensive experience participating in public service ADR programs for the California Superior Courts and the U.S. District Court for the Central District of California.  In 2012, I affiliated with Judicate West and proceeded to develop a statewide practice in California, focusing on business and commercial disputes.

9.      I joined Phillips ADR at its inception in November 2014.  Since then, I have specialized in the resolution of procedurally complex matters, principally antitrust suits and securities class action litigation involving numerous parties.  I have successfully resolved more than one hundred disputes, and facilitated multiple settlements in excess of $100 million.

**The Arm's-Length Negotiations Resulting in the Instant Partial Settlement**

10.     The mediation process in this case, like the litigation itself, was extremely complicated, involved many parties, and was hard fought on all sides. In addition to three consecutive full-day mediation sessions conducted via video-conference as a result of the pandemic, I oversaw the mediation of this matter through numerous telephone calls, emails, and written submissions by both sides.  I have no doubt that the Settlement is the result of hard-fought, arm's-length negotiations among the Parties, and I believe final approval of the Settlement to be in the best interests of the Settlement Class, as discussed herein.

11.     Prior to the mediation, counsel for the Class Actions provided a substantial mediation statement that addressed issues related to merits, damages and collectability issues.  In December 2020, the Parties participated in three mediation sessions via video-conference, each

4

lasting a full day. During the mediation, counsel for the Class Actions and the PIPE and SPAC Action provided detailed presentations to both me and Defendants. Moreover, during the mediation sessions, the Parties exchanged and provided to me their damages analyses, which were discussed in detail.

12. Prior to and during the mediation sessions, I believed that reaching a settlement would be a difficult and adversarial process through which all involved would hold strong to their convictions that they had the better factual and legal arguments, and that a resolution without further litigation was by no means certain. Moreover, the mediation—and eventual partial Settlement—involved many moving parts and parties, including participants from around the world, several insurance carriers, separate counsel for individual defendants, and different groups of investors and their counsel.

13. A resolution was not reached at these sessions. Without disclosing confidential aspects of the mediation process, including specifics regarding the Parties' negotiations, some progress was made toward towards narrowing the gap. Eventually, the Parties agreed in principle to the terms for a partial Settlement. This partial Settlement was particularly complex because not only did the investors from the Class Actions and the PIPE and SPAC Action and Defendants need to reach an agreement as to the settlement amount, the investors from the Class Actions and the PIPE and SPAC Action also had to decide how to allocate the settlement amount amongst the different groups of investors and actions.

14. I found the discussions engaged in by the Parties during the mediation sessions to be extremely valuable in helping me—and the Parties—to understand the relative merits of each Party's position, and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement. Counsel for the Class Actions and Defendants' counsel each

5

presented significant arguments regarding their clients' positions, and it was apparent to me that both sides possessed strong, non-frivolous arguments, that their views on the merits and value of the case diverged drastically, and that neither side was assured of victory. While I am bound by confidentiality with regard to the content of the Parties' discussions and negotiations during the mediation sessions, I can say that the arguments and positions asserted by all involved were the product of much hard work, that they were complex and highly adversarial.

15.    The partial settlement of the Class Actions and PIPE and SPAC Action provides for consideration of $35,000,000 (thirty-five million U.S. dollars) in total, with 86% of the total consideration amount, or $30,100,000 (thirty million one hundred thousand U.S. dollars), to be paid to resolve the claims of the PIPE and SPAC Action, and 14% of the total consideration amount, or $4,900,000 (four million nine hundred thousand U.S. dollars), to resolve the claims with Settling Defendants in the Class Actions. It is my understanding that this percentage breakdown of $35 million reflects the proportionate size of the damages for the PIPE and SPAC Action and the Class Actions. For any Additional Settlement Amounts recovered, as described in the Stipulation, the same percentage breakdown (*i.e.*, 86% to the PIPE and SPAC Action and 14% the Class Actions) will be applied.

**Endorsement of the Partial Settlement**

16.    After presiding over the mediation process in this case, it is my professional opinion that the partial Settlement is the product of vigorous and independent advocacy and arm's-length negotiation conducted in good faith by the Parties. The Parties were represented by highly skilled and experienced counsel, who were extremely knowledgeable and clearly had spent a considerable amount of time developing the law and facts in this complex litigation. I

6

believe the partial Settlement reflects counsel for the Class Actions well-informed assessment of the best interests of the Plaintiffs and the Settlement Class.

17.    The partial Settlement provides the Settlement Class with a significant recovery in the face of potentially losing all or part of the case on a dispositive motion or at class certification, and, of course, the risk of losing at a jury trial or on appeal.  The Settlement thus provides the Settlement Class with an excellent recovery that avoids the significant risk, expense, and delay of further litigation to achieve and recover upon a judgment, and avoids the significant risk of recovering nothing at all.  From Settling Defendants' perspective, the Settlement removes the risk of a potential adverse judgment in a much higher amount.

18.    Based on my experience as a litigator and a mediator, and based on my knowledge of the issues in dispute, my review of the materials and advocacy presented in connection with the mediation sessions, the rigor of the negotiations, and the benefits that will be conferred by the Settlement, I believe that the terms of the Settlement are fair, adequate, reasonable and in the best interests of the Settlement Class.  Therefore, I respectfully endorse final approval of the Settlement by the Court.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 2, 2021 in Sun Valley, Idaho.

Gregory P. Lindstrom

7