**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR: (I) PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT WITH CROWE U.K. LLP; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) <u>APPROVAL OF DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  NATURE OF THE ACTION .............................................................................. 3

III. FACTUAL BACKGROUND ............................................................................. 3

    A.   The Federal Action ..................................................................................... 3

    B.   The PIPE and SPAC Action ....................................................................... 4

    C.   Mediation Efforts and Settlement Negotiations......................................... 5

IV.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) ........................ 6

    A.   Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate" and the Court Will "Likely" be Able to Grant Final Approval ............................................................................................. 6

    B.   A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair ....................................................................................... 7

    C.   Public Policy Favors Settlement of Securities Class Actions ................................ 8

V.   ARGUMENT................................................................................................... 9

    A.   The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors and Thus, Warrants Preliminary Approval ...................................................................................................... 9

        1.   Plaintiffs and Counsel Adequately Represented the Settlement Class ....... 9

        2.   The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation............................................................................. 10

        3.   The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation............ 11

            (a)   Risks of Establishing Liability and Damages ............................... 11

            (b)   Other Factors Established by Rule 23(e)(2)(C) ............................ 13

        4.   The Settlement Treats all Members of the Settlement Class Equitably Relative to Each Other............................................................................ 15

        5.   Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval ... 15

i

    B.     Certification of the Settlement Class for Settlement Purposes is Appropriate ..... 17

    C.     The Court Should Approve the Proposed Form and Method of Notice ............... 19

VI.  PROPOSED SCHEDULE OF EVENTS ............................................................................ 21

VII. CONCLUSION ................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Anwar v. Fairfield Greenwich Ltd.*,
   2012 WL 1981505 (S.D.N.Y. June 1, 2012) ........................................... 14

*Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotech, Inc. v. Auerbach*,
   2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) ............................................ 10

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................... 15

*Consol. Edison, Inc. v. Ne. Utilities*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ..................................................... 19

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................... 10

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ................................................................... 17

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ........................................................... 17

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) .................................................... 11, 17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................ 20

*In re Akazoo S.A. Sec. Litig.*,
   2021 WL 4318070 (E.D.N.Y. Sept. 10, 2021) .................................... 11, 18

*In re Akazoo S.A. Sec. Litig.*,
   2021 WL 8945767 (E.D.N.Y. Apr. 28, 2021) .......................................... 18

*In re BankAtlantic Bancorp, Inc.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................... 13

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .............................................................. 6

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..................................................... 15

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................................................... 16

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 17

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 8, 16

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................. 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..................................................... 17

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................. 8

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006).................................................................... 12

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 15

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................... 16

*In re Mut. Funds Inv. Litig.*,
  2010 WL 2342413 (D. Md. May 19, 2010)............................................................ 20

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................. 6

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................ 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................... 7, 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................... 14

*In re Platinum & Palladium Commodities Litig.*,
  2014 WL 3500655 (S.D.N.Y. July 15, 2014) .......................................................... 8

iv

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................... 9

*In re Puda Coal Sec. Inc., Litig.*,
    30 F. Supp. 3d 230 (S.D.N.Y. 2014) ................................................................... 12

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    2005 WL 1635158 (S.D.N.Y. July 8, 2005) ......................................................... 6

*Leung v. Home Boy Rest. Inc.*,
    2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ....................................................... 10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ............................................................................... 17

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .................................................... 13

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .......................................................................... 13

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 CIV 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................. 19

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................................. 17

*Vargas v. Cap. One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ......................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................... 8, 9, 10

**Statutes**

15 U.S.C. § 78u-4(a)(7) ............................................................................................. 19

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

**Other Authorities**

*Newberg on Class Actions* § 11:25 (4th ed. 2002) ...................................................... 6

Lead Plaintiffs Tim Caldwell, Sharon Caldwell, Nikolaos Poulakis, and John Pullen (collectively, "Federal Plaintiffs"), and plaintiffs Eva Pareja and Greg Sweet, plaintiffs in the State Action (collectively, the "State Plaintiffs" and together with Federal Plaintiffs, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in support of their unopposed motion seeking: (i) preliminary approval of the proposed partial Settlement (the "Settlement") as set forth in the Stipulation and Agreement of Partial Settlement, dated July 20, 2022 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Hearing") where the Court will consider (a) final approval of the Settlement and entry of the proposed Final Order and Partial Judgment, (b) the Plan of Allocation (the "Plan") of settlement proceeds, and (c) the application for an award of attorneys' fees, expenses, and reimbursement to Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    INTRODUCTION

Plaintiffs obtained a highly favorable resolution of the Action against Crowe U.K. LLP ("Crowe"), the only remaining defendant following the Court's final approval of the previous, partial Akazoo Settlement on September 10, 2021. (Dkt. No. 51). The proposed Settlement resolves all claims against Crowe in exchange for a cash payment of $1,610,000 (the "Crowe Settlement

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation, filed concurrently herewith. The State Plaintiffs joined this Action during the Akazoo Settlement and as a condition of the Akazoo Settlement, dismissed the State Action *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418, which was pending in the Superior Court for the State of Georgia, Fulton County.

Amount")[2] for the Settlement Class's benefit. Plaintiffs previously recovered $4,900,000 for Settlement Class Members in the Akazoo Settlement. Thus, the Crowe Settlement Amount is an additional significant recovery for Settlement Class Members. The two settlements collectively recover $6,370,000 for Akazoo investors, a highly favorable and guaranteed result despite many risks with ongoing litigation.

By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims and Crowe's defenses. Indeed, prior to reaching the Settlement, Plaintiffs' Counsel: (i) conducted a comprehensive investigation, which included, *inter alia*, a review and analysis of Akazoo's filings with the U.S. Securities and Exchange Commission ("SEC"), media and analyst reports about Akazoo, and consultation with damages experts; (ii) reviewed and analyzed documents Akazoo produced to the SEC regarding Crowe's retention as its external auditor, which included emails between Akazoo and Crowe; (iii) drafted the Amended Complaint against all defendants; (iii) drafted the highly-detailed Second Amended Complaint (the "Complaint") with Crowe as the remaining defendant; (iv) opposed Crowe's pre-motion to dismiss letter; (v) exchanged mediation submissions; (vi) participated in two mediation sessions before mediator Gregory P. Lindstrom, Esq. of Phillips ADR; and (vii) engaged in extensive negotiations regarding the terms of the proposed Settlement. The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, in conjunction with a well-

---

[2] Crowe agreed to a global settlement of $11,500,000 to resolve the claims in this Action and the PIPE and SPAC Action (defined below). According to the agreed-upon allocation based on the proportional size of damages, 14%, or $1,610,000, will be allocated to Settlement Class Members. Pursuant to the stipulation of settlement governing the Akazoo Settlement, the Akazoo Investors must pay $1,000,000 to Modern Media Acquisition Corp.'s insurer, XL Specialty Insurance Company ("XL Specialty"), as the Akazoo Settlement ($35,000,000 in total) and $11,500,000 here, collectively exceeds $43,000,000. (*See* Dkt. No. 32 at ¶2.8). In accordance with the previously-negotiated breakdown, following entry of final approval, Plaintiffs will pay $140,000, or 14%, of the $1,000,000 owed to XL Specialty. Thus, the Settlement Fund for Settlement Class Members will be $1,470,000.

respected mediator. As discussed in greater detail below, Plaintiffs and their counsel believe the proposed Settlement meets the standards for preliminary approval and is in Settlement Class's best interest. Accordingly, Plaintiffs respectfully request the Court preliminarily approve the Settlement.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging, *inter alia*, that Crowe violated the federal securities laws by making false and misleading statements regarding Akazoo's financial statements and permitting Akazoo to mislead the public of its financial condition. Specifically, the Complaint alleges that Crowe violated professional standards by issuing unqualified, "clean" audit opinions regarding Akazoo's financial statements despite failing to conduct any reasonable inquiry into Akazoo's reported results. The Complaint further alleges that as a result of Crowe's false and misleading statements, including its audit opinions, the price of Akazoo's publicly-traded securities were allegedly artificially inflated and declined when the truth was revealed.

## III.   FACTUAL BACKGROUND

### A.    The Federal Action

Two class action complaints were filed in this Court. The first, filed on April 24, 2020, was styled *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900. The second, filed on June 19, 2020, was styled *Caldwell, et al.*, *v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737. On July 17, 2020, the Court: ordered the cases be consolidated into *In re Akazoo S.A. Securities Litigation*, Case No. 1:20-cv-01900-BMC; appointed the Federal Plaintiffs as Lead Plaintiffs; and approved their selection of The Rosen Law Firm, P.A. ("Rosen Law") to serve as Lead Counsel. (Dkt. No. 12).

On September 8, 2020, Federal Plaintiffs filed an amended complaint asserting claims against the Previous Settling Parties and Crowe for alleged violations of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated

thereunder, as well as Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") (Dkt. No. 15). On October 9, 2020, Federal Plaintiffs filed a Consent Motion to Intervene in the action brought by the SEC against Akazoo, *Securities and Exchange Commission v. Akazoo S.*A., Case No. 1:20-cv-08101-AKH (S.D.N.Y.) ("SEC Action").

On April 28, 2021, the Court preliminarily approved the Akazoo Settlement. (Dkt. No. 36). On September 10, 2021, the Court finally approved the Akazoo Settlement, preserving Plaintiffs' ability to continue litigating against Crowe. (Dkt. No. 51).

On February 11, 2022, Plaintiffs filed the operative Complaint, (Dkt. No. 57), alleging violations of Sections 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as well as Section 11 of the Securities Act against Crowe for its auditing work related to Akazoo.

On February 25, 2022, Crowe submitted a letter motion requesting a pre-motion conference to discuss Crowe's intention to file a motion to dismiss the Complaint and presented a summary of its basis for the anticipated motion. (Dkt. No. 58). On March 7, 2022, Plaintiffs responded to Crowe's letter motion for a pre-motion conference in anticipation of filing a motion to dismiss the Complaint. (Dkt. No. 59). On March 18, 2022, the Court conducted the pre-motion telephonic conference and stayed the case pending the upcoming mediation.

On May 16, 2022, Plaintiffs notified the Court that the Settling Parties had reached an in agreement in principle to settle the claims. (Dkt. No. 62).

### B. The PIPE and SPAC Action

Another group of Akazoo shareholders, represented by Susman Godfrey L.L.P. filed the action *Ursula Capital Partners, LP et al, v. Crowe U.K. LLP*, Case No. 1:22-CV-01153, pending in the United States District Court for the Northern District of Georgia (the "PIPE and SPAC Action") which asserts claims against for those who: (i) invested in the business combination between Old

Akazoo and MMAC through a private investment in public entity ("PIPE") offering; and/or (ii) converted shares of MMAC into Akazoo securities; and/or (iii) purchased Akazoo securities on the open market.

### C.    Mediation Efforts and Settlement Negotiations

The Settling Parties, as well as the parties to the PIPE and SPAC Action, attended a mediation with Gregory Lindstrom of Phillips ADR on November 15, 2021. Prior to the mediation, the participants exchanged mediation submissions. A mediation was unsuccessful and litigation proceeded with the filing of the Complaint and the pre-motion to dismiss letters. Another mediation session was held before Mr. Lindstrom on May 11, 2022. The mediation session ended with all parties accepting a mediator's proposal to resolve all claims against Crowe.

The global settlement with Crowe provides for consideration of $11,500,000 in total. This total will be treated the same as the Akazoo Settlement, with 86% of the consideration amount, or $9,890,000, to be paid to resolve the PIPE and SPAC Action,[3] and 14% of the consideration amount, or $1,610,000, to resolve this Action. This percentage breakdown was negotiated between counsel for this Action and the PIPE and SPAC Action and reflects the proportionate size of the damages for the PIPE and SPAC Action and the Action. Pursuant to ¶2.8 of the settlement stipulation in the Akazoo Settlement (Dkt. No. 32), the Akazoo Investors must pay $1,000,000 to Modern Media Acquisition Corp.'s insurer, XL Specialty, as the total amount Akazoo Investors recovered exceeds $43,000,000. The same percentage breakdown allocated to this Action and the PIPE and SPAC Action will be applied to the $1,000,000 payment to XL Specialty. Thus, Plaintiffs will pay $140,000, or 14% of what is owned to XL Specialty.

---

[3] The PIPE and SPAC Action has its own stipulation to provide for the dismissal of the PIPE and SPAC Action, as set forth more fully in that stipulation.

## IV.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

### A.    Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate" and the Court Will "Likely" be Able to Grant Final Approval

Class action settlements require court approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013).[4] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Thus, "[p]reliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). For preliminary approval, "courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The preliminary evaluation's purpose is to identify "terms [that] are unacceptable at the outset," and which would render "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." *Newberg on Class Actions* § 11:25 (4th ed. 2002).

Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Under Rule 23(e)(2)—which governs final approval—courts consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

---

[4] Unless otherwise noted, all emphasis is added and internal citations are omitted throughout.

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitable relative to each other.

These factors "add to, rather than displace, the *Grinnell* factors"[5] traditionally considered by courts within the Second Circuit. *Payment Card,* 330 F.R.D. at 29. The proposed Settlement merits preliminary approval and the Court should approve the Settling Parties' requested form, manner and schedule for notice, final approval, and related events because these will fairly apprise the Settlement Class of the Settlement terms and give them adequate opportunity to file claims in,[6] submit objections to, or exclude themselves from, the Settlement.

## B.    A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair

In determining whether a settlement will likely be approvable under Rule 23(e)(2), courts "consider[] the Rules 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Payment Card,* 330 F.R.D. at 29. However, courts cannot "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'"

---

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

[6] Claimants who submitted a claim form in the previous Akazoo Settlement will receive a notice informing them that the information previously submitted will be automatically submitted in this Settlement. *See* Stipulation, Ex. A-1 ("Long Notice"), Ex. A-2 ("Claim Form"), Ex. A-3 ("Summary Notice") and Ex. A-4 ("Postcard Notice").

when considering preliminary approval. *Id.* at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—may be premature at this stage. *See id.*

Thus, in conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *Platinum & Palladium*, 2014 WL 3500655, at *11. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### C.  Public Policy Favors Settlement of Securities Class Actions

"The decision to grant or deny such approval lies squarely within the discretion of the trial court, and this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context…The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"). This strong judicial policy equally applies here.

## V.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors and Thus, Warrants Preliminary Approval

While Plaintiffs intend to make a fulsome showing under Rule 23(e)(2) in advance of the Settlement Hearing, preliminary review of the Rule 23(e)(2) factors is warranted at this stage to demonstrate that the proposed Settlement merits preliminary approval and notice of the Settlement to be disseminated to the Settlement Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the Class relief is adequate; and (d) the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(3)(2)(A)-(D); *see also* Sec. IV, *supra*.

Further, because the amendments to Rule 23 did not displace the Second Circuit's existing *Grinnell* test, it is appropriate to preliminarily consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

### 1.    Plaintiffs and Counsel Adequately Represented the Settlement Class

Plaintiffs and their counsel adequately represented the interests of absent Settlement Class Members for the purposes of Rule 23(e)(2)(A). Throughout the litigation, and in connection with the Settlement, Plaintiffs' interests have been fully aligned with the Settlement Class. *Wal-Mart*, 396 F.3d at 106-07. Plaintiffs' claims are typical of, and coextensive, with the claims of the Settlement Class, and they have no antagonistic interests; rather, their interest in obtaining the largest possible recovery aligns with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of

maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Indeed, Plaintiffs contributed significantly to the Action by overseeing the litigation and communicating with counsel, and participating in settlement discussions with Plaintiffs' Counsel.

Moreover, Plaintiffs' Counsel adequately represented the Settlement Class by, among other things: (a) skillfully litigating the Action, including conducting a comprehensive investigation and drafting the comprehensive Complaint based thereon; (b) researching and responding to Crowe's pre-motion to dismiss letter; (c) drafting a mediation submission; (d) participating in two mediation sessions, and negotiating the terms of the proposed Settlement; and (e) drafting the Stipulation.

### 2. The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"). Here, the Settlement is the result of good faith, arm's-length negotiations between well-informed and experienced counsel aided by a highly respected mediator. The manner by which the Settlement was achieved supports the conclusion that the Settlement is fair and achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotech, Inc. v. Auerbach*, 2019 WL 7753447, at *1 (C.D. Cal. Jan. 7, 2019) (settlement finally approval where negotiations overseen by mediator Gregory Lindstrom).

### 3.     The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides the Settlement Class a guaranteed, cash payment of $1,610,000. Of this, after payment to XL Specialty in accordance with the Akazoo Settlement, $1,470,000 will remain in the Settlement Fund. This is a highly favorable outcome for Settlement Class Members particularly in light of the significant risks of continued litigation. The Crowe Settlement alone would be an excellent result for Settlement Class Members, however, together with the Akazoo Settlement, Plaintiffs recovered $6,510,000 in total, with $6,370,000 for investors. The Court previously acknowledged that the Akazoo Settlement was fair, reasonable and adequate. *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4318070, at *3 (E.D.N.Y. Sept. 10, 2021). Thus, this additional recovery against Crowe, Akazoo's external auditor, for Settlement Class Members is significant. The overall recovery is an impressive result given the considerable hurdles Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation.

### (a)     Risks of Establishing Liability and Damages

Although Plaintiffs and their counsel believe the claims asserted against Crowe are meritorious, they recognize that further litigation created substantial risks, including the very real risk that *no* recovery or a substantially smaller recovery might be achieved. At the pre-motion

conference, the Court foreshadowed its skepticism on whether Plaintiffs would be able to survive a motion to dismiss particularly as to personal jurisdiction over Crowe and Crowe's scienter. Although Plaintiffs believe their claims against Crowe were sufficiently pled, a real risk existed that the Court would disagree, even with amendment of the Complaint. Even if Plaintiffs were to survive Defendants' anticipated motion to dismiss, Plaintiffs face significant obstacles to obtaining enough proof to survive summary judgment. Plaintiffs would also encounter significant loss causation defenses and damages arguments that could substantially reduce, or even eliminate, Plaintiffs' alleged damages.

In addition to the complexity of a securities class action by its very nature, it is particularly challenging to plead claims successfully against an external auditor. *See e.g.*, *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 488 (S.D.N.Y. 2006) ("The standard for pleading auditor scienter is demanding. The scienter of an auditor must 'approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 248 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) ("Facts merely supporting an inference that an audit could have been done better constitute 'fraud by hindsight' and do not support the requisite scienter."). In addition to the challenges of pleading liability against an external auditor, the fact that Crowe and many witnesses are located in Europe adds another layer of complexity and creates substantial obstacles for discovery. Crowe is based in England and Akazoo is a Luxembourg company based in England, with much of the conduct at issue in this case occurring in Greece. To take depositions, Plaintiffs would have to follow appropriate international conventions and/or apply to this Court for Letters Rogatory. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the

United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members.

If Plaintiffs survived summary judgment, they would then have to establish each element of their claims and damages to a jury's satisfaction. And even if Plaintiffs overcame all of the significant risks and prevailed at trial, such a victory would not guarantee the Class an ultimate recovery larger than the $1,610,000 Crowe Settlement Amount.[7] Moreover, in the time it takes to proceed through each of these stages of litigation, every hour Crowe's attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks and provides an immediate and guaranteed benefit to the Settlement Class.

**(b)    Other Factors Established by Rule 23(e)(2)(C)**

Courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or are neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and

---

[7] *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

efficiently distributing the Net Settlement Fund. As in the Akazoo Settlement, the Claims Administrator will process claims under Plaintiffs' Counsel's guidance, allow Claimants an opportunity to cure deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan), after Court approval. This proposed claims processing method is standard in securities class action settlements as it has been long found to be effective. Additionally, since the Settlement Class Members mirror those in the Akazoo Settlement, the proposed Claims Administrator, Strategic Claims Services ("SCS"), already has the information necessary to disseminate the notice. Thus, the administration of this Settlement can move faster.

Second, as the Notice[8] discloses, Class Counsel, on behalf of Plaintiffs' Counsel, intends to seek a percentage of the common fund fee award up to one-third of the Settlement Fund, to compensate them for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to one-third of the Settlement Fund is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *Anwar v. Fairfield Greenwich Ltd*., 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."). Importantly, approval

---

[8] "Notice" refers to the Notice of Pendency and Proposed Partial Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Partial Settlement of Securities Class Action ("Summary Notice'), and the Postcard Notice, attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation.

of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶8.2.

Third, with respect to Rule 23(e)(2)(C)(iv), the Settling Parties entered into a confidential agreement establishing certain conditions under which Crowe may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Akazoo common stock request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 4. The Settlement Treats all Members of the Settlement Class Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. In fact, this Court has already approved this exact plan of allocation in the Akazoo Settlement. (Dkt. No. 52). Moreover, Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 5. Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with the new factors set forth in Rule 23(e)(2), namely: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the

settlement fund in light of the best possible recovery and the risks of litigation. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

First, the fact that there has been no formal discovery in this case does not weigh against preliminary approval. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has interviewed several former employees of [Defendant] and obtained a number of internal documents, and all parties have conducted extensive research[.]"). Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Here, Plaintiffs had access to documents Akazoo produced in the SEC Action, which included email communications between Akazoo and Crowe, which assisted in developing Plaintiffs' theory against Crowe.

Second, a defendant's ability to withstand a judgment greater than that secured by settlement, generally, is not a determining factor. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). As stated above, Crowe is based in England, with the alleged misconduct occurring overseas. Thus, even if Plaintiffs obtained a judgement against Crowe, there is no guarantee Plaintiffs could collect it. Moreover, while Crowe's insurance is financing the defense of the lawsuit and the Settlement, the amount of available insurance would be substantially depleted if this Action were to proceed or if policy writers denied coverage.

16

Finally, the Court needs to determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In conducting this analysis, the reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Agent Orange*, 597 F. Supp. at 762; *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). Here, in light of the risks of continued litigation discussed above, the Settlement clearly falls within the range of reasonableness. *See Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

**B.    Certification of the Settlement Class for Settlement Purposes is Appropriate**

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Here, the Crowe Settlement utilizes the same class definition that the Court evaluated in the Akazoo Settlement. Specifically, the Settlement Class is defined as all persons or entities who or which: (i) purchased or otherwise acquired the publicly traded securities of Akazoo between January 24, 2019 and May 21, 2020, both dates inclusive (the "Settlement Class Period"), including but not limited to, those who

17

purchased or acquired Akazoo securities pursuant to the private placement offering agreement ("PIPE Financing"), and were damaged thereby; (ii) held common stock of Modern Media Acquisition Corp. ("MMAC") as of August 9, 2019, eligible to vote at MMAC's August 28, 2019 special meeting, and were damaged thereby; and/or (iii) purchased or otherwise acquired Akazoo common stock pursuant or traceable to the Company's registration statement and prospectus issued in connection with the September 2019 merger of MMAC and Old Akazoo, and were damaged thereby.[9]

Plaintiffs previously provided the Court their reasoning why the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3), which the Court preliminarily certified for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3) in its April 28, 2021 Order Preliminarily Approving Partial Class Action Settlement and Providing for Notice. *See In re Akazoo S.A. Sec. Litig.*, 2021 WL 8945767, at \*1 (E.D.N.Y. Apr. 28, 2021). The Court then affirmed its determination certifying the Settlement Class under Rules 23(a) and (b)(3) in its September 10, 2021 Final Order and Partial Judgment. *See Akazoo S.A.*, 2021 WL 4318070, at \*2.

There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief in the Akazoo Settlement (*see* Dkt. No. 34 at 16-23), Plaintiffs respectfully request that the Court affirm its

---

[9] Excluded from the Settlement Class are the Susman Godfrey PIPE, SPAC, and Retail Investors, EarlyBirdCapital, RSM US LLP, Grant Thornton, Deloitte, BDO, AGK Partners, Akazoo Insurers, and Cowen Investments; Crowe; Previous Settling Parties and their Immediate Family members; Zervos and his Immediate Family members; the past and current executive officers and directors of Akazoo; the past and current officers, directors and partners of Crowe; any trust of which Zervos or Settling Defendant or any Previous Settling Party is the settlor or which is for the benefit of Zervos or Settling Defendant or any Previous Settling Party; the legal representatives, heirs, predecessors, successors, affiliates, parents, subsidiaries, officers, directors, members, managers, partners, general partners, or assigns of any excluded person or entity; and any entity in which any of the above excluded persons have or had a majority ownership interest.  Also excluded will be any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court.

18

determinations in the proposed Order Preliminarily Approving Partial Class Action Settlement and Providing for Notice ("Preliminary Approval Order") certifying the Settlement Class under Rules 23(a) and (b)(3).

###   C.    The Court Should Approve the Proposed Form and Method of Notice

Notice of a settlement must satisfy Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

Plaintiffs propose using the same manner of notice that the Court previously approved in the Akazoo Settlement with updated details for this specific Crowe Settlement. The proposed Notice provides detailed information including: how to file claims, object to or opt-out of the Settlement; a description of Class Actions' claims; the Plan; and the fees and expenses to be sought by Plaintiffs'

Counsel.[10] The proposed Notice also states that those who submitted valid claims in the Akazoo Settlement do not need to file another claim for the Crowe Settlement as their original claims will be used. The Notice also explains, however, that those who previously filed valid claims in the Akazoo Settlement have the right to exclude themselves from or object to the Crowe Settlement.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, SCS [11] will: mail the Postcard Notice to Settlement Class Members who were previously identified in the Akazoo Settlement; publish the Summary Notice in *Investor's Business Daily* and over *GlobeNewswire*; and will create and maintain a settlement website that will be referenced in the Notice. The Long Notice and Claim Form will be available at the settlement website, along with other important documents including the Stipulation and deadlines. Courts routinely find these methods of notice sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *In re Mut. Funds Inv. Litig.,* 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical"). In sum, Plaintiffs respectfully submit that the combination of the mailed Postcard Notice, publication of the Summary Notice, and availability of the Long Notice and Claim Form online provides the best notice that is practicable.

The only difference between the proposed notice program here and the previous Akazoo Settlement is that notice of this partial settlement with Crowe can be disseminated almost immediately. The Settlement Class is the same as the Akazoo Settlement and the proposed Claims

---

[10] The proposed Long Notice closely tracks a model notice published by the Federal Judicial Center. *See* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (last viewed July 20, 2022).

[11] Plaintiffs request the Court approve SCS as the claims administrator as it has significant experience administering securities settlements, including the Akazoo Settlement.

Administrator already has the names and contact information for the Settlement Class Members from the Akazoo Settlement. Accordingly, notice can be promptly issued after preliminary approval as SCS does not need to go through the typical steps of communicating with nominees or Akazoo for investors' contact information. In this vein, Plaintiffs propose, as outlined below, that the Court shorten the schedule for filing claims and the scheduling of the Settlement Hearing.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing:

| Event | Deadline for Compliance |
|---|---|
| Mailing of Postcard Notice. | No later than 10 Business Days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶7(a)) ("Notice Date") |
| Publication of Summary Notice. | No later than 10 Business Days after Notice Date. (Preliminary Approval Order ¶7(c)) |
| Deadline for filing Claim Form. | No later than 60 calendar days after Notice Date. (Preliminary Approval Order ¶10) |
| Deadline for requests for exclusion. | Received no later than 21 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶13) |
| Deadline for objections. | Received no later than 21 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶17) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan and for application for attorneys' fees and reimbursement of expenses. | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶26) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶25) |
| Settlement Hearing. | At least 60 days after the entry of the Preliminary Approval Order |

## VII.    CONCLUSION

Plaintiffs respectfully request that the Court: preliminarily certify the class for settlement purposes; preliminarily approve the Settlement; approve the form and manner of Notice; and schedule the Settlement Hearing.

Dated: July 20, 2022

THE ROSEN LAW FIRM, P.A.

*/s/ Phillip Kim*
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 6861060
Facsimile: (212) 202-3827
Email:  pkim@rosenlegal.com
Email:  lrosen@rosenlegal.com

*Lead Counsel for Federal Plaintiffs and the Settlement Class*

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

*State Court Lead Counsel for State Plaintiffs and the Settlement Class*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of July 2022, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Phillip Kim*
Phillip Kim