**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH CROWE U.K. LLP AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 5

III.    ARGUMENT..................................................................................................... 6

        A.      The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors
                Outlined By Rule 23(E)(2) And The Remaining *Grinnell* Factors......................... 6

                1.      Plaintiffs And Class Counsel Adequately Represented The Settlement
                        Class ..................................................................................................... 6

                2.      The Settlement Is The Result Of Arm's-Length Negotiations ................... 8

                3.      The Settlement Is A Favorable Result For The Settlement Class,
                        Particularly In Light Of The Benefits Of The Settlement And The Risks
                        Of Continued Litigation ......................................................................... 8

                        (a)     Complexity, Expense And Duration Of Litigation ........................ 9

                        (b)     Establishing Liability And Damages ........................................... 11

                        (c)     Risks Of Maintaining Class Action Status.................................. 13

                        (d)     Range Of Reasonableness In Light Of The Best Possible Recovery
                                And Attendant Risks Of Litigation ............................................. 13

                4.      The Remaining Rule 23(e) Factors Support Final Approval .................... 14

                5.      The Settlement Treats All Settlement Class Members Equitably Relative
                        To Each Other ...................................................................................... 16

                6.      The Settlement Class's Reaction To The Settlement Supports Final
                        Approval .............................................................................................. 16

                7.      The Remaining *Grinnell* Factors Weigh In Favor Of Final Approval...... 17

        B.      The Plan Of Allocation Is Fair And Reasonable ................................................. 20

        C.      The Settlement Class Should Be Finally Certified .............................................. 21

        D.      The Notice Program Satisfies Rule 23 And Due Process ..................................... 21

IV.     CONCLUSION................................................................................................. 24

# TABLE OF AUTHORITIES

<u>CASES</u>

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ................................................................................................ 7

*Beach v. JPMorgan Chase Bank, N.A.*,
2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ..................................................................... 6

*Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ........................................................................................................ 12

*Chatelain v. Prudential-Bache, Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................................. 13

*Christine Asia Co., Ltd. v. Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................. 15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ......................................................................................... 6, 9

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................... 20

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......................................................................................... 8, 18

*de Rommerswael on Behalf of Puma Biotech., Inc. v. Auerbach*,
2018 WL 6003560 (C.D. Cal. Nov. 5, 2018) ................................................................... 8

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................................................... 11

*In re "Agent Orange" Prods.* Liab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 1984) .................................................................................. 13

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................... 19, 24

*In re Akazoo S.A. Sec. Litig.*,
2021 WL 4318070 (E.D.N.Y. Sept. 10, 2021) ................................................................ 24

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................................. 17

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................. 16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................... 20

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 12

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)..................................................... 9, 10, 11, 13

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................... 12, 17

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006).................................................................... 9

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................... 16

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ......................................................................... 22

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................. 19

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................... 7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 Fed.Appx. 760  (2d Cir. Oct. 2, 2020) ........................................................... 6, 7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................. 6

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014)................................................................... 9, 10

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................... 13

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................... 15, 17

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)..................................................................... 20

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
  2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012)....................................................... 10

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)..................................................................................... 11

*Springer v. Code Rebel Corp.*,
  2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018)......................................................... 15

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .................................................. 15, 18

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  672 F. Supp. 2d 596 (S.D.N.Y. 2009).................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................................ 8, 21

## STATUTES

15 U.S.C.A. § 78u-4(f)................................................................................................ 12

## RULES

Fed. R. Civ. P. 23 ............................................................................................... *passim*

iv

Pursuant to Fed. R. Civ. P. 23(e), Court-appointed Lead Plaintiffs Tim Caldwell, Sharon Caldwell, Nikolaos Poulakis, and John Pullen (collectively, "Federal Plaintiffs"), and plaintiffs Eva Pareja and Greg Sweet, plaintiffs in the recently voluntarily dismissed action as part of the Akazoo Settlement (collectively, the "State Plaintiffs" and together with Federal Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Crowe Settlement and Plan of Allocation.[1]

## I.    INTRODUCTION[2]

Plaintiffs have reached highly favorable settlement that will resolve all remaining claims in the Action.[3] Pursuant to the  proposed Settlement, Crowe U.K. LLP ("Crowe") will pay $1,610,000 (the "Crowe Settlement Amount") to the Settlement Class.[4]  As described below and

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation and Agreement of Partial Settlement dated July 20, 2022 (ECF No. 66, the "Stipulation") or the concurrently filed Joint Declaration of Phillip Kim and Casey E. Sadler in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement with Crowe U.K. LLP and Plan of Allocation; and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration").  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of the factual background and the nature of the claims asserted (¶15); the work done by Plaintiffs and Class Counsel to prosecute the Action (¶¶16-31); the risks and uncertainties of the litigation (¶¶32-48); and the negotiations leading to the Settlement (¶¶24, 27-29).

[3] Defendant Apostolos N. Zervos is not a party to the Akazoo Settlement or the Crowe Settlement. After careful consideration, Plaintiffs determined they are not going to pursue claims against Zervos.

[4] Crowe agreed to a global settlement of $11,500,000 to resolve the claims in this Action and the PIPE and SPAC Action. According to the agreed-upon allocation based on the proportional size of damages, 14%, or $1,610,000, will be allocated to Settlement Class Members.  Pursuant to the stipulation of settlement governing the Akazoo Settlement, the Akazoo Investors must pay $1,000,000 to Modern Media Acquisition Corp.'s ("MMAC") insurer, XL Specialty Insurance Company ("XL Specialty"), as the Akazoo Settlement ($35,000,000 in total) and $11,500,000

in the Joint Declaration, the Crowe Settlement provides a significant and certain recovery in a case that presented numerous hurdles and risks, including: (i) the challenge of pleading securities fraud claims against a company's external auditor under the heightened pleading standard and automatic stay of discovery of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) the competing claims of the PIPE and SPAC Action; and (iii) the high cost and difficulty of taking discovery against foreign entities based on conduct that took place overseas (*i.e.*, Akazoo is a Luxembourg company based in England, Crowe is based in England, much of the conduct at issue in this case occurred overseas, and, presumably, most of the relevant documentary evidence would be written in  other languages).  The Crowe Settlement is, therefore, a highly favorable result, especially when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a substantially smaller recovery, or no recovery at all. In short, the Crowe Settlement is substantively fair.

The Crowe Settlement is also procedurally fair.  By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims, as well as Crowe's defenses.  Indeed, as described in detail in the Joint Declaration, prior to reaching the Settlement, Class Counsel, among other things:

- researched, drafted, and filed the initial complaint in the State Action (*i.e.*, *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (Super. Ct., Fulton Cnty. Ga.)), which asserted violations of the Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") against Crowe and other defendants;
- conducted an extensive investigation of the claims asserted in the Federal and State Actions, which included, among other things: (a) reviewing and analyzing (i) U.S. Securities and Exchange Commission ("SEC") filings by MMAC, and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial

here, collectively exceeds $43,000,000.  *See* ECF No. 32 at ¶2.8.  In accordance with the previously negotiated breakdown, following entry of final approval, Plaintiffs will pay $140,000, or 14%, of the $1,000,000 owed to XL Specialty.  Thus, the Settlement Fund for Settlement Class Members will be $1,470,000.

analysts, and news articles related to MMAC, and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; and (b) retaining and working with a private investigator who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information;

- utilized the comprehensive investigation and additional research to draft and file the 135-page Amended Complaint for Violations of the Federal Securities Laws in the Federal Action, which asserted violations of both the Exchange Act and Securities Act, against sixteen (16) unique defendants, including Crowe;

- negotiated an agreement in the State Action pursuant to which Crowe accepted service;

- researched Crowe's motion to dismiss arguments in the State Action;

- negotiated the Akazoo Settlement, which provided, *inter alia*, that "Akazoo … will make reasonable efforts to assist the Akazoo Investors in pursuing claims against Crowe by, among other things, producing documents and providing testimony" (ECF No. 32 at ¶2.10);

- investigated the specific claims against Crowe, which included, among other things: (i) reviewing documents Akazoo produced in *Securities and Exchange Commission v. Akazoo S.*A., Case No. 1:20-cv-08101-AKH (S.D.N.Y.) (the "SEC Action"); (ii) retaining and working with an audit and accounting expert; and (iii) reviewing publicly available materials;

- utilized the investigation and additional research to draft and file the 88-page Second Amended Complaint for Violations of the Federal Securities Laws ("Operative Complaint") against Crowe;

- researched, drafted and filed an opposition to Crowe's pre-motion to dismiss letter and attended a hearing on the matter: and

- participated in a complicated mediation process facilitated by Gregory Lindstrom, Esq., of Phillips ADR, which involved two-full day mediation sessions (on November 15, 2021 and May 11, 2022), the parties to the PIPE and SPAC Action, and a settlement based on a mediator's recommendation;

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement;

- drafted the preliminary and final approval motions; and

- oversaw the implementation of the notice process and responded to email from Settlement Class Members. ¶11.

In view of the foregoing, and as discussed in greater detail below, it is clear that the Crowe Settlement was negotiated by well-informed Parties at arm's length, under the auspices of a highly experience mediator, and that the Crowe Settlement is a successful outcome for the

3

Settlement Class.  Accordingly, Plaintiffs' respectfully request that the Court grant final approval of the Crowe Settlement, and enter the agreed upon Judgment.

Plaintiffs also request approval of the Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation, which the Court previously approved in the Akazoo Settlement (ECF No. 52), is designed to distribute the proceeds of the Net Settlement Fund to Settlement Class Members fairly and equitably.  ¶¶62-69  As such, Plaintiffs respectfully submit that it is fair and should be approved.

The Court should finally certify the Settlement Class for settlement purposes.  In the Order Preliminarily Approving Partial Class Action Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 69), the Court preliminarily certified the Settlement Class. Nothing has changed since that order which would challenge certification. No Settlement Class Members has challenged class certification, and thus far, there have been no request for exclusion.  Ex. 2 (Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Declaration" or "Bravata Decl.")) at ¶¶12-13.

Finally, the notice program constituted the "best notice ... practicable under the circumstances" and thus satisfies Rule 23 and due process. There were 4,949 potential Settlement Class Members notified of the Crowe Settlement either through mailed Postcard Notice (3,434) or emailed links to the Long Notice and Claim Form (1,515). The Postcard Notice directed potential Settlement Class Members to online versions of the Long Notice and Claim Form.  SCS also published the Summary Notice in *Investor's Business Daily* and caused it to be transmitted electronically over *GlobeNewswire*, and made the Long Notice, Claim Form, and other important documents available on a dedicated webpage on the Claims Administrator's

website.  Bravata Decl.¶¶6-9, 11.  The Notice clearly stated that if Akazoo investors submitted a valid claim in the Akazoo Settlement, they would not need to resubmit a claim for the Crowe Settlement. The Notice, however, stated that Settlement Class Members could object to or exclude themselves from the Crowe Settlement, regardless of whether they submitted a valid claim in the Akazoo Settlement.  *Id.*  While the deadline to request exclusion or object to the Settlement has not yet passed, it is indicative of the high quality of the Settlement that no objections or requests for exclusion have been received.  *Id.* at ¶¶12, 13.

In sum, the Settlement is both procedurally and substantively fair, reasonable, and adequate.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Crowe Settlement and Plan of Allocation.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[5] Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
    (i)      the costs, risks, and delay of trial and appeal;
    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitably relative to each other.

---

[5] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors" traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for final approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## III.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(E)(2) And The Remaining *Grinnell* Factors

#### 1.    Plaintiffs And Class Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed.Appx. 760, 764

6

(2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs suffered substantial losses as a result of Crowe's allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See **Error! Bookmark not defined.**Patriot*, 2020 WL 5868283, at *3 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Plaintiffs diligently oversaw the litigation and communicated regularly with their respective counsel regarding the litigation and the two settlements. Ex. 3 ("Caldwells Decl.") ¶5; Ex. 4 ("Poulakis Decl.") ¶5; Ex. 5 ("Pullen Decl.") ¶5; Ex. 6 ("Pareja Decl.") ¶5; and Ex. 7 ("Sweet Decl.") ¶5.

Second, Plaintiffs retained counsel who are highly experienced in securities litigation, and who have a long and successful track record representing investors in such cases. *See* Exs. 8-C and 9-C (Rosen Law's and GPM's firm resumes). As noted above, Class Counsel vigorously prosecuted the Settlement Class's claims, were acutely aware of the case's strengths and weaknesses prior to entering the Settlement, and they fully support the Settlement. ¶¶32-48. Accordingly, this factor militates in favor of final approval. *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

2.    **The Settlement Is The Result Of Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel. **Error! Bookmark not defined.***Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Here, as detailed in the Joint Declaration and Declaration of Mediator Gregory P. Lindstrom, Esq. in Support of Final Approval of Class Action Settlement with Crowe U.K. LLP ("Lindstrom Decl." attached to the Joint Declaration as Exhibit 1), the mediation process was complicated by that fact that it included the parties to both this Action and to the PIPE and SPAC Action. Although the first meditation session was unsuccessful, at the end of the day of the second session, all of the parties accepted a mediator's proposal. ¶¶24, 27-29; Lindstrom Decl., ¶¶11, 13. Mr. Lindstrom's declaration attests to the integrity of the mediation process and recommends the Crowe Settlement as being in the best interests of the Settlement Class. *Id.* at ¶¶10, 16. Mr. Lindstrom's participation in the settlement negotiations underscores that the Settlement is the product of non-collusive, arm's-length negotiations. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *de Rommerswael on Behalf of Puma Biotech., Inc. v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018) (acknowledging that Mr. Lindstrom is a "qualified mediator" and found that negotiations were arm's-length).

3.    **The Settlement Is A Favorable Result For The Settlement Class, Particularly In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" along with

other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).[6]  As discussed below, each of these factors supports the Settlement's approval.

### (a)   Complexity, Expense And Duration Of Litigation

At the time the Crowe Settlement was reached, the adequacy of the Operative Complaint had not been tested in this Court.  At the pre-motion to dismiss conference, however, the Court foreshadowed its skepticism on whether Plaintiffs would be able to survive a motion to dismiss particularly as to the points of personal jurisdiction over Crowe and Crowe's scienter.  Although Plaintiffs believe that the claims against Crowe were sufficiently pled, they understood that there was a very real risk that their claims would not successful.  Putting aside the significant risk of proving liability and damages (*see* Sec. III.A.3.b., *infra*; ¶¶39-42), litigating the Action, like the litigation of all securities class cases, is a complex and expensive endeavor.  By their nature, securities class actions are complex, however, it is more challenging to plead claims successfully against an external auditor. *See, e.g.*, *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 488 (S.D.N.Y. 2006) ("The standard for pleading auditor scienter is demanding. The scienter of an auditor must 'approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 248 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong,* 649 F. App'x 55 (2d Cir. 2016) ("Facts merely supporting an inference that an audit could have been done better constitute 'fraud by hindsight' and do not support the requisite scienter.").

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

In addition to pursuing securities claim against an external auditor, there were additional hurdles, including obtaining discovery in the event Plaintiffs survived the motion to dismiss. Crowe is based in England and Akazoo is a Luxembourg company based in England, which would have made discovery efforts significantly more expensive and challenging than prosecuting claims against a domestic defendant.  ¶36.  As a result, Class Counsel may have been restricted or forbidden from reviewing certain documents, and there is no guarantee they would have been able to conduct the document or deposition discovery necessary to prove their case.  **Error! Bookmark not defined.***Id.*

If Plaintiffs sought discovery from Crowe and the various third-parties located globally, Plaintiffs would have been required to obtain evidence through the Hague Convention and/or letters rogatory, an extremely time consuming process with no guarantee of success.  ¶38. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012).  Moreover, obtaining certain fact depositions would have been contingent on Plaintiffs successfully locating and compelling percipient witnesses overseas. ¶39.

Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class.  *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'").  There is no guarantee that further litigation—even if Plaintiffs were prevailed at trial and on appeal— would have produced a better result.  By contrast, the proposed Crowe Settlement provides an

immediate and substantial recovery for the Settlement Class without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### (b)     Establishing Liability And Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *GSE*, 414 F. Supp. 3d at 694. While Class Counsel believe that Plaintiffs' claims are meritorious, they also recognize they faced substantial obstacles to proving liability and damages, particularly in light of the Court's comments at the pre-motion to dismiss conference. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:**  In addition to the hurdle of obtaining foreign discovery and, potentially, class action status, Plaintiffs faced numerous obstacles to establishing Crowe's liability. A threshold issue was whether Plaintiffs could exercise personal jurisdiction, which Crowe hotly contested in its pre-motion to dismiss letter and during mediation. At the pre-motion conference, the Court questioned Plaintiffs about the personal jurisdiction issue, leaving uncertainty about whether Plaintiffs would survive this threshold issue before even turning to the merits of the claims. ¶39. As to the merits, Crowe argued that Plaintiffs did not adequately plead scienter. *Id.* At the pre-motion conference, the Court also cast doubt on whether Plaintiffs had met the high pleading burden for their Exchange Act claim, characterizing Plaintiffs' scienter allegations as thin. Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011). But pleading, and proving, an external auditor's scienter is even more challenging than an issuer's scienter. *Rothman v. Gregor*, 220 F.3d 81, 98

11

(2d Cir. 2000) ("to satisfy securities fraud scienter [of a non-fiduciary accountant], 'such recklessness must be conduct that is 'highly unreasonable', representing 'an extreme departure from the standards of ordinary care.' It must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 609 (S.D.N.Y. 2009) ("When pleading fraud against auditors, the standards for alleging scienter are especially stringent."). Thus, Plaintiffs faced significant challenges to establishing liability should the litigation continue. *See* Honigsberg, C., *et al.*, *The Changing Landscape of Auditors' Liability*, Journal of Law and Economics, Vol. 63 (May 2020) at p. 367, and 383 ("Our analysis provides strong evidence that the higher liability standards imposed by *Janus* [*Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)] significantly reduced auditors' liability exposure …"; and calculating a 75% dismissal rate of 10b-5 claims asserted against auditors from 2014 through June 2016).

**Damages:** It is axiomatic that proving damages in cases brought under the federal securities laws is complex and fraught with risk. *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud."). The situation is no different here, and it would have been further complicated by apportionment issues related to the Akazoo Settlement. *See* 15 U.S.C.A. § 78u-4(f).

If damages were ultimately contested in Court, the Parties would rely on expert testimony to assist the jury in determining damages. *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y.

12

2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts.").  In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony is credited, and ultimately, which damages would be found" by the jury.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008).

### (c)      Risks Of Maintaining Class Action Status

While Plaintiffs and Class Counsel are confident that the Settlement Class meets the requirements for certification, a class had not yet been certified.  Plaintiffs are aware that there is a risk the Court could accept Crowe's arguments opposing class certification.  ¶34.  Moreover, even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Crowe undoubtedly would have challenged class certification.  *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

### (d)      Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  ***Error! Bookmark not defined.****In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed Crowe Settlement provides a cash payment of $1,470,000, after a payment of $140,000 to XL Specialty, for the benefit of the Settlement Class. This is a favorable result in

13

light of the significant risks of continued litigation. The Crowe Settlement alone would have been a highly favorable result for Settlement Class Members, however, this recovery is in addition to the $4,900,000 recovered in the Akazoo Settlement. In total, the Crowe Settlement and Akazoo Settlement recouped $6,510,000, with $6,370,000 for Akazoo investors. This recovery against an external auditor is substantial and an impressive result given the many obstacles Plaintiffs would need to overcome if litigation continued.

### 4.    The Remaining Rule 23(e) Factors Support Final Approval

#### i.    The Proposed Method Of Distribution To The Class Is Effective (Rule 23 (E)(2)(C)(i))

The Settlement proceeds will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation. *See* Sec. III.B., *infra*.   The Plan of Allocation is the same method of distribution the Court approved in the Akazoo Settlement. ECF No. 52.  Strategic Claims Services ("SCS"), the Court-appointed Claims Administrator, has and will continue to process claims under Class Counsel's guidance.  SCS has and will continue to allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.[7]

#### ii.    The Requested Attorneys' Fees Are Fair And Reasonable (Rule 23(e)(2)(C)(iii))

The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in detail in the

---

[7] This is not a claims-made settlement.  If the Settlement is approved, Crowe will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶3.2.

accompanying Fee Memorandum, the proposed attorneys' fees of one-third to be paid upon approval by the Court, are reasonable in light of the substantial work, efforts and success of Class Counsel, their significant investment of resources in the case against Crowe, their skillful prosecution of the Action for the benefit of the Settlement Class, the risks that they faced in the litigation, and the overall benefit of the Settlement achieved. A proposed attorneys' fee of up to one-third is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for one-third of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement prior to formal discovery); *Springer v. Code Rebel Corp.*, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (awarding one-third of $1 million settlement prior to motion to dismiss); *see also* Fee Memorandum, § III.C.1. More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶8.2.

### iii. Other Agreements Related To The Settlement – Rule 23(e)(2)(C)(iv) & 23(e)(3)

The Parties entered into a confidential agreement establishing conditions under which Crowe may terminate the Crowe Settlement if Settlement Class Members who collectively purchased or otherwise acquired a certain number of shares request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

**5.    The Settlement Treats All Settlement Class Members Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether a settlement treats class members equitably relative to one another.  The Settlement easily satisfies that standard.  As discussed in Sec. III.B, *supra*, the proposed Plan of Allocation, developed by Plaintiffs' expert in conjunction with Class Counsel, reflects an assessment of damages Plaintiffs contend could have been recovered under the theories of liability in the Action.  ¶64.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  ¶¶65-66. Courts have repeatedly approved similar plans.  *See, e.g.*, **Error! Bookmark not defined.***In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).  Moreover, the Court previously approved the same proposed Plan of Allocation in the Akazoo Settlement.  ECF No. 52.

**6.    The Settlement Class's Reaction To The Settlement Supports Final Approval**

The second *Grinnell* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) & (5), the Crowe Settlement affords Settlement Class Members, even those who submitted valid claims in the Akazoo Settlement, the opportunity to request exclusion from, or object to, the Settlement.  At of the time of the execution of the Bravata Declaration, no requests for exclusion have been received, and no objections have been filed with the Court, despite the fact, a total of 4,949 copies of the Postcard Notice or direct links to the Long Notice and Claim Form have been disseminated to potential Settlement Class Members and/or their nominees.

16

Bravata Decl., ¶¶8, 12, 13.[8]    The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *See Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### 7.    The Remaining *Grinnell* Factors Weigh In Favor Of Final Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

### i.    The Stage Of The Proceedings And The Amount Of Discovery Completed

This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012).  When the Parties agreed to settle, Plaintiffs and Class Counsel had a thorough understanding of the strengths and weaknesses of their claims and the defenses asserted, and could make an informed appraisal regarding their chances of success.  Although no formal discovery was conducted, this does not weigh against the Settlement's approval.  *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").  Plaintiffs had access to documents

---

[8] The deadline to request exclusion from, or to object to any aspect of, the Settlement is September 7, 2022; any exclusions or objections received after this filing will be addressed on reply.

Akazoo produced in the SEC Action, which included email communications between Akazoo and Crowe. These documents assisted in developing Plaintiffs' theory of the case.

In addition, by the time the Crowe Settlement was reached, Class Counsel expended significant time and resources developing their understanding of the case, which included, among other things: (i) conducting a comprehensive investigation, which included, *inter alia*, a review and analysis of Akazoo's filings with the SEC, media and analyst reports about Akazoo, and consultation with auditing, accounting, loss causation and damages experts; (ii) a review and analysis of documents Akazoo produced to the SEC regarding Crowe's retention as its external auditor; (iii) drafting the Operative Complaint against Crowe; (iv) opposing Crowe's pre-motion to dismiss letter; (v) participating in the pre-motion conference; and (vi) reviewing mediation submissions and participating in two mediation sessions before Mr. Lindstrom.¶¶16-30.

As a result of these efforts, Plaintiffs and Class Counsel had a thorough understanding of the claims and defenses asserted in the Action, the significant risks to establishing liability and damages, and collecting a greater judgment. This understanding enabled Plaintiffs and Class Counsel to negotiate the Crowe Settlement intelligently and responsibly. *See Vaccaro*, 2017 WL 6398636, at *5 ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Thus, the fact that there has been no formal discovery in the Action does not weigh against final approval. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) ("the district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information" and thus,

18

the "stage of proceedings …weighed in favor of settlement approval."). **Error! Bookmark not defined.**

### ii.      The Ability Of Defendants To Withstand A Greater Judgment

Defendants' ability to withstand a greater judgment (*Grinnell* factor seven), although not a determining, factor weighs in favor of final approval. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). Crowe is based in England, with the alleged misconduct occurring overseas. Even if Plaintiffs secured a judgment, it is not guaranteed that they would be able to collect the judgment from a foreign defendant.

Moreover, insurance is funding Crowe's defense. The insurance is wasting and subject to multiple claims—including those of the Susman Godfrey PIPE, SPAC, and Retail Investors. Protracted litigation would have continued to chip away at any available funds to source recovery for Akazoo investors. Nevertheless, Plaintiffs and Class Counsel were able to negotiate a global settlement that provides a substantial recovery to Settlement Class Members. This is a great result, and it was obtained without exposing the Settlement Class to the risk, expense, and delay of continued litigation. Accordingly, this factor weighs in favor of the Court granting final approval of the Settlement. *See In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account").

**B.**     **The Plan Of Allocation Is Fair And Reasonable**

A plan of allocation, like a settlement itself, "must be fair and adequate" to warrant approval. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015).  A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Consequently, "courts look primarily to the opinion of counsel" in determining if a proposed plan of allocation is fair and adequate to warrant approval. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011).

Here, the proposed Plan of Allocation, mirrors the same plan the Court previously approved in the Akazoo Settlement (ECF No. 52), is set forth in the Long Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. 2-A (Long Notice) at pp. 10-14.  Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Claim Amount for each Settlement Class Member's purchases of: (i) Akazoo common stock purchased or acquired from January 24, 2019 through and including May 21, 2020; (ii) MMAC common stock that was eligible to vote at MMAC's August 28, 2019 special meeting and was subsequently exchanged for Akazoo common stock on or around September 11, 2019; and/or (iii) Akazoo common stock purchased or acquired pursuant or traceable to the Company's registration statement and prospectus issued in connection with the September 2019 Merger. *Id.*

The calculation of each Settlement Class Member's Recognized Claim Amount under the Plan of Allocation is explained in detail in the Long Notice and will be based on several factors, including when the Akazoo common stock was purchased and sold, the purchase and sale price

20

of the shares of Akazoo common stock, and the estimated artificial inflation in the respective prices of the Akazoo common stock at the time of purchase and at the time of sale. The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis and in accordance with the allocations detailed in the Long Notice at ¶¶43-64.

Class Counsel believe that the proposed Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. ¶69. To date, no objections to the Plan of Allocation have been filed on this Court's docket or received by Class Counsel, suggesting that the Settlement Class also finds the Plan of Allocation to be fair and reasonable. ¶70. Accordingly, Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

### C.    The Settlement Class Should Be Finally Certified

The Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 69 at ¶ 1. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief in conjunction with the Akazoo Settlement (*see* ECF No. 34 at 16-23) and in the Preliminary Approval Brief for the Crowe Settlement (ECF No. 68 at 17-19), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### D.    The Notice Program Satisfies Rule 23 And Due Process

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-*

21

*Mart Stores*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Both the notice program's substance and method of dissemination satisfy those standards here.

As this Crowe Settlement involved the same investors who were eligible to participate in the previous Akazoo Settlement, SCS was able to disseminate notice to Settlement Class Members expeditiously. In accordance with the Preliminary Approval Order, the Claims Administrator mailed copies of the Postcard Notice via first-class mail to all known Settlement Class Members that SCS was able to identify through their efforts in the Akazoo Settlement. Bravata Decl. ¶6.[9] The Postcard Notice directed potential Settlement Class Members to downloadable versions of the Long Notice and Claim Form posted online at www.strategicclaims.net/akazoo-s-a-securities-litigation/ (the "Settlement Website"). *Id.* at ¶11. SCS also posted copies of the Stipulation, the Preliminary Approval Order, the Long Notice, and Claim Form on the Settlement Website (*id.*), and established a toll-free number to respond to Settlement Class Member inquiries. *Id.* at ¶10. Additionally, SCS caused the Summary Notice to be published in *Investor's Business Daily* and transmitted electronically once over

---

[9] On August 8, 2022, SCS mailed Postcard Notice 2,822 potential Settlement Class Members identified as potential Settlement Class Members during the Akazoo Settlement. Bravata Decl. ¶6. Due to a clerical error, those who filed valid claims in the Akazoo Settlement were not mailed the Postcard Notices until August 16, 2022. On August 16 2022, SCS mailed 531 Settlement Class Members who submitted valid claims in the Akazoo Settlement the Postcard Notice. *Id.* In an abundance of caution, out of the 531 Settlement Class Members who received a later-mailed Postcard Notice, 484 of them received an email on August 16, 2022 which included the language of the Postcard Notice. *Id.*

22

*GlobeNewswire* on August 8, 2022. *Id.* at ¶9. The Notice stated that those who submitted valid claims in the Akazoo Settlement did not need to file another claim for the Crowe Settlement as their original claims will be used.    The Notice also explained, however, that those who previously filed valid claims in the Akazoo Settlement still have the right to exclude themselves from or object to the Crowe Settlement. *Id.*, Ex. 2-A, C, D.

The Long Notice informs Settlement Class Members of, among other things: (i) the nature of the Action; (ii) the Settlement Class definition; (iii) the claims and defenses asserted; (iv) a description of the terms of the Crowe Settlement; (v) the right of a Settlement Class Member to enter an appearance; (vi) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions on how to do so; (vii) the right of a Settlement Class Member to object to any aspect of the Settlement, including the Plan of Allocation and the request for attorneys' fees and Litigation Expenses, along with instructions on how to do so; (viii) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (ix) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B); Bravata Decl., Ex. 2-A (Long Notice).    The Long Notice and Postcard Notice also advised that Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, as well as reimbursement of Litigation Expenses, including an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class up to $75,000 in total. *Id*. (Long Notice at ¶¶4, 65; Bravata Decl., Ex. 2-C (Postcard Notice).

These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Crowe Settlement.    Moreover, courts, including this one, routinely find that a combination of a mailed postcard directing class to a

more detailed online notice sufficient to satisfy due process requirements. *See In re Akazoo S.A. Sec. Litig.*, 2021 WL 4318070, at \*3 (E.D.N.Y. Sept. 10, 2021); *Advanced Battery*, 298 F.R.D. at 183 n.3 (citing cases). Accordingly, the notice program satisfied both Rule 23 and due process.

## IV.   CONCLUSION

For the foregoing reasons, and for the reasons stated in the Joint Declaration, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.[10]

Dated: August 24, 2022

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim
Laurence M. Rosen
Erica L. Stone
Brent LaPointe
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: estone@rosenlegal.com
Email: blapointe@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice*)
Joseph Cohen (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Class Counsel for the Settlement Class*

---

[10] Proposed orders will be filed in conjunction with Plaintiffs' reply brief.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: August 24, 2022                     *s/ Phillip Kim*
                                           Phillip Kim