**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**<u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL AND PROCEDURAL HISTORY ......................................................... 4

III.   ARGUMENT ........................................................................................................... 4

     A.    The Common Fund Doctrine Applies To The Settlement .................................... 4

     B.    The Court Should Award A Reasonable Percentage Of The Common Fund ......... 5

     C.    The Requested Attorneys' Fees Should Be Approved .......................................... 7

           1.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The-Fund Method ................................................................................ 7

           2.    The Lodestar "Cross-Check" Supports The Reasonableness Of The Requested Fee ......................................................................................... 10

     D.    The *Goldberger* Factors Confirm The Requested Fee Is Fair And Reasonable ... 12

           1.    Time And Labor Expended Support The Requested Fee .......................... 12

           2.    The Risks Of Litigation Support The Requested Fee ............................... 14

           3.    The Magnitude And Complexity Of The Action Support The Fee .......... 19

           4.    The Quality Of Representation Supports The Requested Fee .................. 20

           5.    The Requested Fee In Relation To The Settlement Amount .................... 21

           6.    Public Policy Considerations Support The Requested Fee ....................... 22

     E.    Class Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained .......................................................................... 23

     F.    Plaintiffs Should Be Awarded Their Reasonable Costs And Expenses Under 15 U.S.C. §§ 77z-1(a)(4) And 78u-4(a)(4) ........................................................... 23

IV.   CONCLUSION...................................................................................................... 25

## TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ........................................................................... 2

*Anwar v. Fairfield Greenwich Ltd.*,
   2012 WL 1981505 (S.D.N.Y. June 1, 2012) ..................................................... 8

*Asare v. Change Group of New York, Inc.*,
   2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013).................................................. 12

*Athale v. Sinotech Energy Ltd.*,
   2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)............................................. 6, 11

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .................................................... 4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...................................................... 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)........................................................................................... 5

*Burns v. Falconstor Software, Inc.*,
   2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ................................................ 11

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................. 17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).............................................................................. 14

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................... 20, 22

*Cornwell v. Credit Suisse Grp.*,
   2011 WL 13263367 (S.D.N.Y. July 18, 2011) ................................................ 11

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011)......................................................... 7, 11

*Elkin v. Walter Inv. Mgmt. Corp.*,
   2018 WL 8951073 (E.D. Pa. 2018) ................................................................... 9

*Fogarazzo v. Lehman Bros.*,
  2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ........................................................................ 8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ............................................................................................ 18

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...................................................................................... *passim*

*Goldstein v. MCI Worldcom*,
  340 F.3d 238 (5th Cir. 2003) ............................................................................................ 16

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ..................................................................................... 16

*Gross v. GFI Group, Inc.*,
  784 Fed. App'x. 27 (2d Cir. Sept. 13, 2019) .................................................................... 15

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................................... 8, 11

*Hayes v. Harmony Gold Mining Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ...................................................................... 8

*Hicks v. Morgan Stanley, & Co.*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................................ 5, 7, 22

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ................................................................... 21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................................................................... 19

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014) ............................................................................................. 24

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................................... 18

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y July 16, 2007) .................................................................... 11

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ................................................................................ 7

iii

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001)................................................................................... 18

*In re China Media Express Holdings, Inc. S'holder Litig.*,
2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015)......................................................... 7

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................................... 17, 22

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)...................................................................... 11

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................... 10, 14, 21

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) ........................................................... 8

*In re Deutsche Telekom AG Sec. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 14, 2005) ......................................................... 11

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005)..................................................................... 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................... 6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................... 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. 2010)................................................... 14, 15, 22, 23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................. 8, 15, 17

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ............................................. 8, 10, 11

*In re Idreamsky Tech. Limited Sec. Litig.*,
2018 WL 8950640 (S.D.N.Y. April 6, 2018) ........................................................... 9

iv

*In re Ikon Office Sols., Inc., Sec. Litig.*,
 194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. 16, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
 302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............................................................... 23

*In re Interpublic Sec. Litig.*,
 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...................................................... 11

*In re Lloyd's Am. Trust Fund Litig.*,
 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................................................... 7

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................... 16, 20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................. 18, 24

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................... 18

*In re Puda Coal Sec. Inc., Litig.*,
 30 F. Supp. 3d 230 (S.D.N.Y. 2014) ................................................................. 20

*In re Qudian Inc. Sec. Litig.*,
 2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...................................................... 9, 24

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005) .............................................................................. 7

*In re Safety Components, Inc. Sec. Litig.*,
 166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................ 9

*In re Signet Jewelers Limited Sec. Litig.*,
 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................... 24

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ................................................... 3

*In re Veeco Instruments Inc. Sec. Litig.*,
 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................... 5, 20, 21, 24

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................. 6

v

*In re Xcel Energy, Inc. Sec. Deriv. & "ERISA" Litig.*,
　364 F. Supp. 2d 980 (D. Minn. 2005)..................................................................... 3

*Janus Capital Group, Inc. v. First Derivative Traders*,
　564 U.S. 135 (2011)............................................................................................... 3

*Johnson v. Brennan*,
　2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)....................................................... 7

*Jorling v. Anthem, Inc.*,
　836 F. Supp. 2d 821 (S.D. Ind. 2011) ................................................................... 2

*Kristal v. Mesoblast Ltd.*,
　2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) ....................................................... 7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
　2009 WL 4730185 (D.N.J. Dec. 4, 2009)............................................................ 19

*Lea v. Tal Educ. Grp.*,
　2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)........................................................ 8

*LeBlanc-Sternberg v. Fletcher*,
　143 F.3d 748 (2d Cir. 1998).................................................................................. 10

*Maley v. Del Global Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................*passim*

*Massiah v. MetroPlus Health Plan, Inc.*,
　2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)...................................................... 24

*Mills v. Elec. Auto-Lite Co.*,
　396 U.S. 375 (1970)................................................................................................ 5

*Missouri v. Jenkins*,
　491 U.S. 274 (1989).............................................................................................. 10

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
　2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ....................................................... 8

*Monzon v. 103W77 Partners, LLC*,
　2015 WL 993038 (S.D.N.Y. 2015)................................................................... 6, 10

*Puddu v. 6D Glob. Techs., Inc.*,
　2021 WL 1910656 (S.D.N.Y. May 12, 2021) ........................................................ 8

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
  2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ................................................................. 17

*Ray v. Lundstrom*,
  2012 WL 5458425 (D. Neb. Nov. 8, 2012) ...................................................................... 9

*Savoie v. Merchs. Banks*,
  166 F.3d 456 (2d Cir. 1999) ........................................................................................... 10

*Schuler v. Medicines Co.*,
  2016 WL 3457218 (D.N.J. June 24, 2016) ...................................................................... 9

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................................. 16

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................................ 14

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) .......................................................................................... 15

*Springer v. Code Rebel Corp.*,
  2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) .................................................................. 9

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................................................. 8

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................................................... 19

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................................ 22

*Too v. Rockwell Medical, Inc.*,
  2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020) .................................................................. 9

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ........................ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................................... 6, 11

*Wilson v. LSB Indus., Inc.*,
   2019 WL 3542844 (S.D.N.Y. June 28, 2019) ........................................................................ 7

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ...................................................................... 11

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)........................................................................ 9

STATUTES

15 U.S.C. § 77z-1(a)(4) ...................................................................................................... 23, 24

15 U.S.C. § 77z-1(a)(6).............................................................................................................. 6

15 U.S.C. §78u-4(a)(4) ........................................................................................................ 23, 24

15 U.S.C. §78u-4(a)(6) .............................................................................................................. 6

Court-appointed Class Counsel, The Rosen Law Firm, P.A. ("Rosen Law")[1] and Glancy Prongay & Murray LLP ("GPM" and together with the Rosen Law, "Class Counsel"), respectfully request that the Court grant their motion for an award of attorneys' fees in the amount of one-third of the Crowe Settlement Amount ($1,610,000) less a $140,000 payment to XL Specialty Insurance Company made in connection with the prior partial Akazoo Settlement (*i.e.*, an award of $490,000, plus interest accrued at the same rate as the Settlement Fund).[2] Class Counsel also seek: (i) reimbursement of $44,720.05 in unreimbursed out-of-pocket litigation expenses reasonably and necessarily incurred by Class Counsel in prosecuting and resolving the Action against Crowe; and (ii) awards in the aggregate amount of $21,000 for Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    INTRODUCTION

The proposed $1,610,000 settlement with Crowe U.K. LLP ("Crowe"; the "Crowe Settlement") is a favorable result for the Settlement Class.[3]  If approved, it will bring the aggregate

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Partial Settlement dated July 20, 2022 (ECF No. 66, the "Stipulation") or the concurrently filed Declaration of Phillip Kim and Casey E. Sadler in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement  with Crowe U.K. LLP and Plan of Allocation; and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration").  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

[2] As used herein, and as defined in the Stipulation, the term "Settlement Fund" means "the net funds retained in the Escrow Account pursuant to this Stipulation plus any and all interest or other income earned thereon.  The Settlement Fund will be the Crowe Settlement Amount less the Plaintiffs' proportionate payment to XL Specialty Insurance Company as set forth in ¶ 2.3 [of the Stipulation]."  Thus, the Settlement Fund equals $1,470,000 million ($1,610,000, less $140,000), plus any interest accrued thereon.

[3] Defendant Crowe is a certified public accounting firm and was the auditor for Akazoo Limited from 2015 until 2017.  Akazoo Limited's audit reports and other financial information was included in the registration statement filed in conjunction with the merger of Akazoo Limited and Media

recovery in the Action to $6,510,000, with $6,370,000 going to the Settlement Class. This result is even more impressive when juxtaposed against the significant hurdles Plaintiffs would have to overcome in order to prevail against Crowe, a foreign defendant, in this complex securities fraud litigation. In addition to facing numerous challenges to establishing liability and damages, Class Counsel, in undertaking this litigation, also faced the significant threshold issue of whether personal jurisdiction could be exercised over Crowe given Plaintiffs' allegations. The risk of losing was very real, and it was greatly enhanced by the fact that Class Counsel would be litigating against a foreign defendant represented by a highly skilled defense firm, under the heightened pleading standard and/or automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. §§ 77z-1, 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process.").[4]

Moreover, the exceedingly high threshold for holding external auditors liable, the competing claims of the PIPE and SPAC Action, and the significant costs involved in taking discovery overseas—to the extent it could even be taken against certain individuals and entities—meant that there was no guarantee that Class Counsel would be paid, or their hard costs reimbursed, regardless of effort or result. *See* Honigsberg, C., *et al.*, *The Changing Landscape of Auditors' Liability*, Journal of Law and Economics, Vol. 63 (May 2020) at p. 367, and 383 ("Our analysis provides

---

Acquisition Corp. Following the merger, Crowe served as the certified public accountant and auditor for the surviving entity, Akazoo S.A. ("Akazoo").

[4] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

2

strong evidence that the higher liability standards imposed by *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)] significantly reduced auditors' liability exposure …"; and calculating a 75% dismissal rate of 10b-5 claims asserted against auditors from 2014 through June 2016); *see also In re Xcel Energy, Inc. Sec. Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."). Despite these risks, Class Counsel worked 475.62 hours, and advanced $44,720.05 in expenses, all on a fully continent basis, following the Court's approval of the Akazoo Settlement.[5]

As compensation for their efforts and achievements on behalf of the Settlement Class, Class Counsel respectfully request a fee award in the amount of one-third of the Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Class Counsel's lodestar. Indeed, the requested fee represents a multiplier of 1.5 on Class Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. Sept. 10, 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Class Counsel also seek reimbursement of $44,720.05 in unreimbursed out-of-pocket litigation expenses incurred in prosecuting the case against Crowe. *See* ¶¶95-101. This amount is below the $75,000 limit on Litigation Expenses disclosed in the Long Notice and Postcard Notice— which, by definition, included PSLRA awards to Plaintiffs. The expenses are reasonable in amount,

---

[5] The work performed by Plaintiffs' Counsel is summarized below (*see infra* § IV.D.1) and is set forth in greater detail in the Joint Declaration.

and were necessarily incurred in the successful prosecution of the case against Crowe. Accordingly, they should be approved.

Finally, plaintiffs Tim Caldwell, Sharon Caldwell, Nikolaos Poulakis and John Pullen, who were appointed Lead Plaintiffs in the Federal Action (collectively, "Federal Plaintiffs"), and plaintiffs Eva Pareja and Greg Sweet, plaintiffs in the State Action ("State Plaintiffs" and together with the Federal Plaintiffs, "Plaintiffs"), respectfully request PSLRA awards in the aggregate amount of $21,000 ($3,500 for each Plaintiff) to compensate them for the time and effort they have expended on behalf of the Settlement Class. Exs. 8 and 9. But for their "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Joint Declaration, Class Counsel respectfully request the Court award Class Counsel one-third of the Settlement Fund, approve reimbursement of $44,720.05 in litigation expenses, and grant PSLRA awards of $3,500 to each Plaintiff.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the history of the Action (¶¶16-31); the nature of the claims asserted (¶15); negotiations leading to the Crowe Settlement (¶¶24, 27-29); risks and uncertainties of continued litigation (¶¶33-48); a summary of the services Class Counsel provided for the benefit of the Settlement Class (¶74); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (¶¶75-77).

## III.     ARGUMENT

### A.     The Common Fund Doctrine Applies To The Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts

create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Veeco*, 2007 WL 4115808, at *2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Class Counsel's efforts conferred a substantial benefit—$1,470,000 million in cash ($1,610,000, less $140,000)—on an ascertainable class. And, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F.Supp.2d 369.

**B.     The Court Should Award A Reasonable Percentage Of The Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this

5

one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC,* 2015 WL 993038, at *2 (S.D.N.Y. 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").[6] The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §§ 77z-1(a)(6), 78u-4(a)(6).[7]

The percentage method does not, however, render the lodestar irrelevant. Rather, the reasonableness inquiry includes a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts [ ] may rely on summaries submitted

---

[6] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[7] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

### C.     The Requested Attorneys' Fees Should Be Approved

#### 1.     The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The-Fund Method

Class Counsel's one-third fee request is well within the range of percentage fees awarded in comparable, complex class actions within the Second Circuit. *See Kristal v. Mesoblast Ltd.,* 2022 WL 3442535, *1-*2 (S.D.N.Y. Aug. 15, 2022) (awarding one-third of $2 million in attorneys' fees at settlement after pre-motion to dismiss conference); *Maley*, 186 F. Supp. 2d at 370 (finding one-third fee request of $11.5 million settlement fund "falls comfortably within the range of fees typically awarded in securities class actions"); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *Wilson v. LSB Indus., Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding one-third of $18.45 million settlement fund); *In re China Media Express Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding 33.33% of $12 million settlement fund);

7

*Hayes v. Harmony Gold Mining Co.*, 2011 WL 6019219, at \*1 (S.D.N.Y. Dec. 2, 2011) (awarding one-third of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at \*4 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *In re Hi-Crush Partners L.P. Sec. Litig.,* No. 12-CIV-8557 CM, 2014 WL 7323417, at \*19 (S.D.N.Y. Dec. 19, 2014) (awarding one-third of $3.8 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding one-third of $13 million settlement); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding one-third of $1.5 million settlement and collecting cases); *Puddu v. 6D Glob. Techs., Inc.,* No. 15-CV-8061 (AJN), 2021 WL 1910656, at \*6 (S.D.N.Y. May 12, 2021) (awarding one-third of $400,000 partial settlement); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*11 (S.D.N.Y. Nov. 30, 2021) (awarding one-third of $7.5 million settlement).[8]

Moreover, recognizing the importance of efficient and effective advocacy, Courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly thereafter, and where no or very limited discovery had been obtained as a result of the PSLRA discovery stay. *See Maley*, 186 F. Supp. 2d at 370 (awarding one-third of $11.5 million settlement, representing a 4.65 multiplier, where motions to dismiss were pending); *In re Ubiquiti*

---

[8] *See also* Ex. 11 (collecting cases); *Levine v. Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding one-third and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 12); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at \*5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd*., 2012 WL 1981505, at \*3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at \*1 (S.D.N.Y. June 11, 2020) (awarding 33.3% of $18.5 million settlement); *Beach v. JPMorgan Chase Bank*, No. 17-cv-00563-JMF, ECF No. 232 at 2 (S.D.N.Y. Oct. 7, 2020) (awarding 33% of $9 million settlement fund) (Ex. 13); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*1 (S.D.N.Y. Dec. 18, 2019) (awarding one-third of $7.5 million settlement).

*Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM), ECF No. 49 at 6 (S.D.N.Y. March 27, 2020) (awarding 33.3% of $15 million settlement, where settlement was reached prior to the filing of a motion to dismiss) (Ex. 14); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding one-third of $8.5 million settlement following decision on motion to dismiss, but prior to formal discovery); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement prior to formal discovery).[9]

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case where, as here, Class Counsel gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims, and it is doubtful that further litigation would have yielded a better result. Under such circumstances, Class Counsel should be rewarded for their efficient and effective advocacy. *See Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee, equating to a multiplier of 5.1, where settlement was reached after consolidated amended complaint was filed and noting that Plaintiff's Counsel should not be

---

[9] *See also In re Idreamsky Tech. Limited Sec. Litig.*, 2018 WL 8950640, at *4 (S.D.N.Y. April 6, 2018) (awarding one-third of $4.15 million following decision on motion to dismiss, but prior to formal discovery); *Springer v. Code Rebel Corp.*, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (awarding one-third of $1 million settlement prior to motion to dismiss); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 80-81, 109 (D.N.J. 2001) (awarding one-third of $4.5 million settlement, representing a 3.57 multiplier, where settlement was reached prior to the filing of the motion to dismiss); *In re L.G. Philips LCD Co. Sec. Litig.,* No. 1:07-cv-00909-RJS, ECF No. 10, slip op. at ¶3 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million, representing a multiplier of 3.17, where settlement was reached while motion to dismiss was pending) (Ex.15); *Too v. Rockwell Medical, Inc.*, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) (awarding one-third of $3.7 million settlement fund prior to formal discovery); *Ray v. Lundstrom*, 2012 WL 5458425, at *5 (D. Neb. Nov. 8, 2012) (awarding one-third of $3.1 million, in case that settled before discovery); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *2, 9, 11 (D.N.J. June 24, 2016) (awarding 33% of $4.25 million settlement, where settlement was reached while motion to dismiss was pending); *Elkin v. Walter Inv. Mgmt. Corp.*, 2018 WL 8951073, at *1 (E.D. Pa. 2018) (awarding one-third of $2,950,000 settlement in case that settled prior to a decision on the motion to dismiss).

"penalize[d] . . . for achieving an early settlement, particularly where . . . the settlement amount is substantial."); *Savoie v. Merchs. Banks*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet."); *Monzon,* 2015 WL 993038, at *2.

### 2. The Lodestar "Cross-Check" Supports The Reasonableness Of The Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[10] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Class Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 475.62 hours to the prosecution of the Crowe Action, resulting in a lodestar of $333,582.50. ¶75.[11] Based on a one-third fee (equal to $490,000), Class Counsel's

---

[10] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush*, 2014 WL 7323417, at *15; *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[11] Class Counsel's rates range from $750 to $1,050 for partners, and $525 to $625 for non-partners (¶76), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar

lodestar of $333,582.50 yields a multiplier of 1.5 on their time from September 10, 2021 (the day after the Akazoo Settlement was approved) through and including August 23, 2022. Class Counsel's lodestar multiplier for the Crowe Settlement is 1.5. If the attorneys' fees previously awarded in the connection with the Akazoo Settlement and the fees requested here are considered in the aggregate and compared to the total lodestar for counsel in the Action, the fees represent a multiplier of 1.9 to the total lodestar. Both of these multipliers are well within the range of multipliers commonly awarded in class actions with substantial contingency risks such as this one. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement).[12]

---

magnitude." *Hi-Crush*, 2014 WL 7323417, at *14 (approving rates "ranging from $425 to $825 per hour" **in 2014**); *see also* Ex. 10 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

[12] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund*, 2019 WL 6889901, at *18 ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18,

11

In sum, Class Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in complex class actions like this one, whether calculated as a percentage of the fund or in relation to Counsel's lodestar.  Moreover, as discussed below, each of the factors the Second Circuit established in *Goldberger* supports a finding that the requested fee is reasonable.

**D.      The *Goldberger* Factors Confirm The Requested Fee Is Fair And Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

**1.      Time And Labor Expended Support The Requested Fee**

The time and effort expended by Class Counsel in prosecuting the Action and achieving the Crowe Settlement supports the requested fee.  As set forth in greater detail in the Joint Declaration, Class Counsel, among other things:

- researched, drafted and filed the initial complaint in the State Action (*i.e.*, *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (Super. Ct., Fulton Cnty. Ga.)), which asserted violations of the Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") against Crowe and other defendants;

- conducted an extensive investigation of the claims asserted in the Federal and State Actions, which included, among other things: (a) reviewing and analyzing (i) U.S. Securities and Exchange Commission ("SEC") filings by MMAC, and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC, and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; and (b) retaining and working with a private investigator who

---

2017) (awarding fee representing a 3.14 multiplier); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar").

conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information;

- utilized the comprehensive investigation and additional research to draft and file the 135-page Amended Complaint for Violations of the Federal Securities Laws in the Federal Action, which asserted violations of both the Exchange Act and Securities Act, against sixteen (16) unique defendants, including Crowe;

- negotiated an agreement in the State Action pursuant to which Crowe accepted service;

- researched Crowe's motion to dismiss arguments in the State Action;

- negotiated the Akazoo Settlement, which provided, *inter alia*, that "Akazoo … will make reasonable efforts to assist the Akazoo Investors in pursuing claims against Crowe by, among other things, producing documents and providing testimony" (ECF No. 32 at ¶2.10);

- investigated the specific claims against Crowe, which included, among other things: (i) reviewing documents Akazoo produced in *Securities and Exchange Commission v. Akazoo S.A.*, Case No. 1:20-cv-08101-AKH (S.D.N.Y.) (the "SEC Action"); (ii) retaining and working with an audit and accounting expert; and (iii) reviewing publicly available materials;

- utilized the investigation and additional research to draft and file the 88-page Second Amended Complaint for Violations of the Federal Securities Laws ("Operative Complaint") against Crowe;

- researched, drafted and filed an opposition to Crowe's pre-motion to dismiss letter and attended a hearing on the matter;

- participated in a complicated mediation process facilitated by Gregory Lindstrom, Esq., of Phillips ADR, which involved two-full day mediation sessions (on November 15, 2021 and May 11, 2022), the parties to the PIPE and SPAC Action, and a settlement based on a mediator's recommendation;

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Crowe;

- drafted the preliminary and final approval motions; and

- oversaw the implementation of the notice process and responded to email from Settlement Class Members. ¶74.

It is also important to recognize that the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution

13

motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at \*10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2. The Risks Of Litigation Support The Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55). The many severe risks that Class Counsel faced in prosecuting this suit more than justify the requested one-third fee. *See, e.g.*, ¶¶33-46.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at \*5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings,*

14

*Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. 2010).[13]  This case was no exception.  From the outset of the Action, Class Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the [Class] Action[s]; counsel also faced the responsibility of advancing litigation and overhead expenses on this case … ."  *Giant Interactive*, 279 F.R.D. at 164.  Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began …"  *Flag Telecom*, 2010 WL 4537550, at *27.  Although Class Counsel has been reimbursed for their time pursuing the Akazoo Settlement, they have not been reimbursed for the continued litigation against Crowe.  Class Counsel's commitment to the case against Crowe was significant (*i.e.*, $333,582.50 in lodestar and $44,720.05 in out-of-pocket hard costs), and had they not obtained a recovery, it would have all been lost.[14]

While Class Counsel believe Plaintiffs' claims are meritorious and remain confident in their ability to prove their claims and rebut any potential arguments advanced by Crowe, they also recognize that there were a number of substantial risks in the litigation and that Plaintiffs' ability to succeed at trial and obtain and collect a substantial judgment was far from certain.  Obstacles included both the well-known risks generally associated with complex securities litigation, including

---

[13] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

[14] *See Gross v. GFI Group, Inc.*, 784 Fed. App'x. 27, 28 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where one of Class Counsel in this case—GPM—served as plaintiff's counsel); *see also* ¶¶75 (lodestar), 98 (expenses).

15

the PSLRA's automatic stay of discovery and heightened pleading standard, as well as the specific risks inherent in this case—such as Crowe's jurisdictional arguments and difficulties of succeeding against an external auditor. *See In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194-95 (E.D. Pa. 2000) (noting the PSLRA "substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

Plaintiffs faced the substantial burdens and unknowns of a motion to dismiss, a class certification motion, summary judgment, trial and likely appeals. Success was not a forgone conclusion, and a bad decision at any stage might have resulted in a smaller recovery, or no recovery at all. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("there was no assurance that the Litigation would survive Defendants' challenges to the pleadings, motion for summary judgment, trial and appeal."); *Goldstein v. MCI Worldcom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action against Bernard Ebbers and Worldcom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted). Indeed, at the pre-motion to dismiss conference, the Court characterized Plaintiffs' scienter allegations against Crowe as thin, and also expressed jurisdictional concerns. ¶39. Class Counsel took the Court's concerns about the Operative Complaint seriously and recognized that surviving the imminent motion to dismiss was not guaranteed. *See e.g.*, *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 488 (S.D.N.Y. 2006) ("The standard for pleading auditor scienter is demanding. The scienter of an auditor must approximate an actual intent to aid in the fraud being perpetrated by the audited company.").

16

The risks inherent in the case were further magnified by the fact that Akazoo is a Luxembourg company based in England, Crowe is based in England, and much of the conduct at issue in this case occurred in Europe. Many of the witnesses—including those that work for Crowe—are located in Europe, and the Akazoo accounts at issue involved parties located in Asia and South America. Presumably then, much of the relevant documentary evidence would be written in other languages, which would make discovery more challenging. To obtain documents and take depositions outside the U.S., Plaintiffs would have to follow appropriate international conventions and/or apply to this Court for letters rogatory. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). As a result, Plaintiffs may not have been able to obtain the necessary evidence to prove their case; and even if they could do so, it would be expensive, time-consuming and complicated. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he Company's location in China would have posed a barrier that would have increased the difficulty and expense of discovery, and might have made it impossible to collect some of the evidence or take depositions necessary to prove Plaintiffs' claims."); *Giant Interactive*, 279 F.R.D. at 164 ("counsel faced the additional challenges that many documents needed translation, that evidence, witnesses and depositions were overseas, and that discovery motions were heavily contested").

Even if they established liability, Plaintiffs faced significant risks to proving damages. In securities class actions, "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion ... .'" *Global Crossing*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the

"complexities of calculating damages increase geometrically"). "There is the undeniable risk that a jury could be swayed by experts for the Defendants, who could minimize the amount of Plaintiffs' losses." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Proving class-wide damages in this case was, therefore, far from a "slam dunk."

Finally, even if Plaintiffs overcame all of these risks and prevailed at trial for the full amount of damages, they would still face the risk of an adverse decision on post-trial motions or reversal on appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

In sum, Plaintiffs faced substantial risks. While Plaintiffs and their counsel believe the case against Crowe has merit and that they could have successfully navigated each risk presented, the risks remained. If any of them materialized, the Settlement Class might have recovered far less than the proposed Settlement, or nothing at all. In the context of all those risks, the $1,610,000 Crowe Settlement is an excellent result for the Settlement Class, and Class Counsel's ability to obtain that result despite so many risks supports the reasonableness of the fee request. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this

case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.     The Magnitude And Complexity Of The Action Support The Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ("Class action securities litigation is usually complex."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *Ikon Office Sols.*, 194 F.R.D. at 194; *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Such was the case here.

As noted above and in earlier filings, this case involved auditor liability, separate opt-out and SEC litigation, and raised a number of complex questions concerning liability, damages, and ability to pay. The complexities were especially acute given the case's international dimension, involving an auditor based in the U.K., foreign witnesses, and alleged wrongdoing that primarily took place overseas. To build and settle the case, Class Counsel, among other things, needed to: (i), consult with experts, including an accounting and auditing expert; (ii) review documents Akazoo produced in the SEC Action, as well as a broad review of all publicly available information; (iii) prepare multiple complaints, including the 88-page Operative Complaint solely against Crowe, knowing it needed to contain sufficient detail to overcome the PSLRA's heightened pleading standard and the

19

relevant case law as it pertains to auditors;[15] and (iv) engage in two-full day mediation sessions, which included presentations to a well-respected and inquisitive mediator concerning, among other things, Plaintiffs' theories of liability, loss causation and damages.  Consequently, this was a particularly complex matter—even by the standards of securities class actions.

The magnitude of the litigation was similarly unquestionable.  Millions of dollars of damages were at stake, and the cases required considerable skill and resources to litigate.  As such, the magnitude and complexity of the litigation support the requested fee.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.      The Quality Of Representation Supports The Requested Fee

Class Counsel respectfully submit that the quality of representation the Settlement Class received is best evidenced by the result obtained.  *See, e.g.*, *Global Crossing*, 225 F.R.D. at 467 ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities Class . . . ."); *Veeco*, 2007 WL 4115808, at *7 ("the quality of the representation of Plaintiffs' Counsel is best evidenced by the result.").  Here, as discussed in the Joint Declaration and the accompanying Settlement Brief, the Crowe Settlement is a favorable result for the Settlement Class in light of the expense, risks and delays of continued litigation.  ¶¶33-48.  Class Counsel submit that the quality of their efforts in, and their commitment to, this litigation, in conjunction with their substantial experience in securities class actions, provided them with the leverage necessary to negotiate a favorable Settlement in the face of strong opposition by Crowe's Counsel.  *See* Exs. 8-C

---

[15] *See e.g.*, *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 248 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) ("Facts merely supporting an inference that an audit could have been done better constitute 'fraud by hindsight' and do not support the requisite scienter."); *In re Marsh*, 501 F. Supp. 2d at 488.

and 9-C (Rosen Law and GPM resumes); *see also* Ex. 1 (Lindstrom Decl.) at ¶16 ("The Parties were represented by highly skilled and experienced counsel, who were extremely knowledgeable and clearly had spent a considerable amount of time developing the law and facts in this complex litigation."). Thus, Class Counsel's hard work, experience and reputation contributed to the successful resolution of the case against Crowe.

The quality of the opposition faced by Plaintiffs' Counsel should also be taken into account. *See, e.g.*, *Veeco*, 2007 WL 4115808, at \*7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Crowe was vigorously represented by Wilson Elser Moskowitz Edelman & Dicker LLP, a very capable and experienced law firm. Notwithstanding this formidable opposition, Class Counsel's thorough investigation, ability to obtain documents and cooperation vis-à-vis the Akazoo Settlement, and demonstrated willingness to fight for the Settlement Class by refusing to settle prematurely at the first mediation, enabled them to achieve a favorable result. Consequently, this factor militates in favor of the requested fee.

### 5.   The Requested Fee In Relation To The Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at \*3. As discussed in detail in Section III.C.1, *supra*, the requested one-third fee is consistent with

21

percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.      Public Policy Considerations Support The Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Del Global*, 186 F. Supp. 2d at 373.  This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.  "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them.  This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9.

Here, Class Counsel invested substantial amounts of time and money vigorously pursuing serious wrongdoing on behalf of Akazoo investors.  Accordingly, public policy considerations favor Class Counsel's attorneys' fee request. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

22

**E.      Class Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained**

Class Counsel also request reimbursement of $44,720.05 in unreimbursed out-of-pocket expenses incurred since September 10, 2021 (the day after the Akazoo Settlement was approved). In support of this request, Class Counsel submitted separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). A significant portion of the expenses were incurred for professional services rendered by Plaintiffs' experts and the mediator, and the remaining expenses are attributable to the costs of legal and factual research, and other expenses incurred in the course of the litigation. ¶¶98-100. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). Additionally, no objections to the expense request have been received, and the amount requested is below the $75,000 limit disclosed in the Notice. ¶96; Ex. 2-A (Long Notice) at ¶4, 65.

**F.      Plaintiffs Should Be Awarded Their Reasonable Costs And Expenses Under 15 U.S.C. §§ 77z-1(a)(4) And 78u-4(a)(4)**

In connection with their request for reimbursement of Litigation Expenses, Class Counsel

23

also respectfully request PSLRA awards of $3,500 for each of the six Plaintiffs for time spent prosecuting the Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4).

Here, each Plaintiff took an active role in the litigation by, among other things: (a) regularly communicating with their attorneys regarding the posture and progress of the case, as well as strategy; (b) consulting with their attorneys regarding the settlement negotiations; and (c) evaluating and approving the proposed Crowe Settlement. Exs. 8-B and 9-B. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21.

As this Court has previously recognized, similar service awards are commonly granted in the Second Circuit. *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (J. Cogan) (awarding $5,000 service awards to plaintiffs and citing cases with service awards up to $15,000 each). Consequently, Class Counsel respectfully request that the Court grant Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Marsh & McLennan*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *Qudian,*, 2021 WL 2328437, at *2 (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *In re Signet Jewelers Limited Sec. Litig.*,

24

2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff).

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant this motion.

Dated: August 24, 2022

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim
Laurence M. Rosen
Erica L. Stone
Brent LaPointe
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 6861060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: estone@rosenlegal.com
Email: blapointe@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice*)
Joseph D. Cohen (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  csadler@glancylaw.com
Email:  jcohen@glancylaw.com

*Class Counsel for the Settlement Class*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: August 24, 2022                    *s/ Phillip Kim*
                                          Phillip Kim