## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC<br><br>CLASS ACTION |

**JOINT DECLARATION OF PHILLIP KIM AND CASEY E. SADLER
IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH CROWE U.K. LLP AND PLAN OF
ALLOCATION; AND (II) CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 3

II.  PROSECUTION OF THE ACTION ................................................................... 6

     A.   Background ................................................................................................ 6

     B.   Commencement Of The Federal Action And Appointment Of Lead Plaintiffs And
          Lead Counsel ............................................................................................. 7

     C.   The State Action ........................................................................................ 7

     D.   The Comprehensive Pre-Filing Investigation, Preparation Of The Amended
          Complaint, And Akazoo Settlement ........................................................... 8

     E.   Settlement Efforts With Crowe, The Investigation And Filing Of The Operative
          Complaint; Crowe's Pre-Motion To Dismiss Letter ................................. 9

III. THE RISKS OF CONTINUED LITIGATION ................................................. 11

     A.   Risks Posed By Continued Litigation ....................................................... 11

     B.   Challenges To Obtaining Discovery ......................................................... 13

     C.   Risks To Proving Liability And Damages ................................................ 13

     D.   Other Risks, Including Trial And Appeals, And Ability To Collect A
          Judgment ................................................................................................. 14

     E.   The Settlement Is Reasonable In Light Of The Maximum Potential Recovery ... 15

IV.  PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL
     ORDER REQUIRING ISSUANCE OF THE NOTICE ................................... 16

V.   ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT ......................... 19

VI.  CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT
     OF LITIGATION EXPENSES ........................................................................ 22

     A.   The Fee Application ................................................................................. 23

          1.   The Favorable Outcome Achieved Is The Result Of The Significant Time
               And Labor That Class Counsel Devoted To The Action ......................... 23

          2.   The Magnitude And Complexity Of The Action ................................... 27

          3.   The Significant Risks Borne By Class Counsel ..................................... 27

4.      The Quality Of Representation, Including The Result Obtained, The Experience And Expertise Of Class Counsel, And The Standing And Caliber Of Crowe's Counsel ........................................................................ 28

5.      The Requested Fee In Relation To The Settlement ................................. 29

6.      Interests Of Public Policy, Including The Need To Ensure The Availability Of Experienced Counsel In High-Risk Contingent Securities Cases ....... 29

7.      The Reaction Of The Class Supports Class Counsel's Fee Request ........ 30

8.      Plaintiffs Support Class Counsel's Fee Request ...................................... 30

B.      Reimbursement Of The Requested Litigation Expenses Is Fair And Reasonable 31

VII.    CONCLUSION ....................................................................................................... 34

**TABLE OF EXHIBITS TO DECLARATION**

| EXHIBIT | TITLE |
|---------|-------|
| 1 | Declaration Of Mediator Gregory P. Lindstrom, Esq. In Support Of Final Approval Of Class Action Settlement With Crowe U.K. LLP |
| 2 | Declaration Of Josephine Bravata Concerning: (A) Mailing Of The Postcard Notice; (B) Publication Of The Summary Notice; And (C) Report On Requests For Exclusion And Objections |
| 3 | Declaration Of Lead Plaintiffs Tim Caldwell And Sharon Caldwell In Support Of: (1) Plaintiffs' Motion For Final Approval Of Class Action Settlement With Crowe U.K. LLP And Plan Of Allocation; And (2) Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses |
| 4 | Declaration Of Lead Plaintiff Nikolaos Poulakis In Support Of: (1) Plaintiffs' Motion For Final Approval Of Class Action Settlement With Crowe U.K. LLP And Plan Of Allocation; And (2) Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses |
| 5 | Declaration Of Lead Plaintiff John Pullen In Support Of: (1) Plaintiffs' Motion For Final Approval Of Class Action Settlement With Crowe U.K. LLP And Plan Of Allocation; And (2) Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses |
| 6 | Declaration Of Plaintiff Eva Pareja In Support Of: (1) Plaintiffs' Motion For Final Approval Of Class Action Settlement With Crowe U.K. LLP And Plan Of Allocation; And (2) Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses |
| 7 | Declaration Of Plaintiff Greg Sweet In Support Of: (1) Plaintiffs' Motion For Final Approval Of Class Action Settlement With Crowe U.K. LLP And Plan Of Allocation; And (2) Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses |
| 8 | Declaration Of Casey E. Sadler, Esq. In Support Of Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses Filed On Behalf Of Glancy Prongay & Murray LLP |
| 9 | Declaration Of Phillip Kim In Support Of Class Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses Filed On Behalf Of The Rosen Law Firm, P.A. |

| 10 | Table Of Law Firm Billing Rates |
| 11 | Table Of Select Second Circuit Cases Awarding Attorneys' Fee Awards Of 33% Or Above Plus Expenses |
| 12 | *Levine v. Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85 (S.D.N.Y. May 27, 2011) |
| 13 | *Beach v. JPMorgan Chase Bank*, No. 17-cv-00563-JMF, ECF No. 232 (S.D.N.Y. Oct. 7, 2020) |
| 14 | *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM), ECF No. 49 (S.D.N.Y. March 27, 2020) |
| 15 | *In re L.G. Philips LCD Co. Sec. Litig.,* No. 1:07-cv-00909-RJS, ECF No. 10 (S.D.N.Y. Mar. 17, 2011) |

We, Phillip Kim and Casey E. Sadler, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      Our firms, The Rosen Law Firm, P.A. ("Rosen Law") and Glancy Prongay & Murray LLP ("GPM"), respectively, are Court-appointed Class Counsel and counsel of record for Lead Plaintiffs Tim Caldwell, Sharon Caldwell (with Tim Caldwell, the "Caldwells"), Nikolaos Poulakis ("Poulakis"), and John Pullen ("Pullen" and collectively, "Federal Plaintiffs" or "Lead Plaintiffs"), and plaintiffs Eva Pareja ("Pareja") and Greg Sweet ("Sweet"), plaintiffs in the recently voluntarily dismissed action as part of the Akazoo Settlement[1] (collectively, the "State Plaintiffs" and together with Federal Plaintiffs, "Plaintiffs"). We oversaw or conducted the day-to-day activities in the Actions. We are familiar with the proceedings in this litigation, and we have personal knowledge of the matters set forth herein based upon supervising and participating in all aspects the Action.

2.      We submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motion for Final Approval of Class Action Settlement with Crowe U.K. LLP and Plan of Allocation as well as the concurrently filed memorandum in support thereof ("Final Approval Memorandum"). As set forth in the Final Approval Memorandum, Plaintiffs seek final approval of the $1,610,000 Crowe Settlement, of which $1,4700,000 will be paid for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation and Agreement of Partial Settlement, dated July 20, 2022 (the "Stipulation") (ECF No. 66).

[2] The Settlement Class is defined all persons or entities who or which: (i) purchased or otherwise acquired the publicly traded securities of Akazoo between January 24, 2019 and May 21, 2020, both dates inclusive (the "Settlement Class Period"), including but not limited to, those who purchased or acquired Akazoo securities pursuant to the private placement offering agreement

3.      We also submit this declaration in support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses as well as the concurrently-filed memorandum in support thereof ("Fee Memorandum").[3]  As set forth in the Fee Memorandum, Class Counsel seek an award of attorneys' fees in the amount of one-third of the Settlement Fund (which, by definition, includes interest accrued thereon), and reimbursement of Litigation Expenses in the total amount of $65,720.05 which includes counsel's total out-of-pocket litigation costs in the amount of $44,720.05 and a total of $21,000 to Plaintiffs ($3,500 to each Plaintiff), pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for their costs, including lost wages, incurred in connection with their representation of the Settlement Class.

4.      The Court preliminarily approved the proposed Crowe Settlement by Order dated July 25, 2022 (the "Preliminary Approval Order"), and thereby directed notice of the Crowe Settlement to be disseminated to the Settlement Class.  *See* ECF No. 69.  Pursuant to the

---

("PIPE Financing"), and were damaged thereby; (ii) held common stock of Modern Media Acquisition Corp. ("MMAC") as of August 9, 2019, eligible to vote at MMAC's August 28, 2019 special meeting, and were damaged thereby; and/or (iii) purchased or otherwise acquired Akazoo common stock pursuant or traceable to the Company's registration statement and prospectus issued in connection with the September 2019 merger of MMAC and Old Akazoo, and were damaged thereby.  Excluded from the Settlement Class are the Susman Godfrey PIPE, SPAC, and Retail Investors, EarlyBirdCapital, RSM US LLP, Grant Thornton, Deloitte, BDO, AGK Partners, Akazoo Insurers, and Cowen Investments; Crowe; Previous Settling Parties and their Immediate Family members; Zervos and his Immediate Family members; the past and current executive officers and directors of Akazoo; the past and current officers, directors and partners of Crowe; any trust of which Zervos or Settling Defendant or any Previous Settling Party is the settlor or which is for the benefit of Zervos or Settling Defendant or any Previous Settling Party; the legal representatives, heirs, predecessors, successors, affiliates, parents, subsidiaries, officers, directors, members, managers, partners, general partners, or assigns of any excluded person or entity; and any entity in which any of the above excluded persons have or had a majority ownership interest. Also excluded will be any person or entity that submits a request for exclusion from the Settlement Class that is accepted by the Court.

[3] As disclosed in the paragraph 4 of the Long Notice, Class Counsel may also choose to share part of any attorneys' fees awarded by the Court with The Law Offices of Howard G. Smith and The Law Offices of Frank R. Cruz in accordance with the level of their respective work and responsibility in the prosecution of the Action.  *See* Ex. 2-A (Long Notice) at ¶4.

Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a notice program under Class Counsel's direction, whereby notice was given to potential Settlement Class Members by mail and/or email and by publication.

5.      In total, approximately 4,949 potential Settlement Class Members have been notified by either mailed Postcard Notice or emailed a direct link to the Long Notice and Claim Form and, to date, no requests for exclusion and no objections have been received.

## I.      INTRODUCTION

6.      The first settlement reached in this matter, the Akazoo Settlement, resolved claims brought under Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, as well as Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") against Akazoo S.A. ("Akazoo" or the "Company"); Petrus (Pierre) Schreuder, Panagiotis Dimitropoulos; Lewis W. Dickey, Jr., Maja Lapcevic, Athan Stephanopoulos, Alexander Macridis, David Bryan Roche, Asit Mehra, Colin Miles, William Drewry, Adam Kagan, Véronique Marty, Blair Faulstich, George Brokaw, John White, MIHI LLC, Macquarie Capital (USA) Inc, Toscafund Asset Management LLP, and Penta Capital LLP and all funds managed by them including Tosca Opportunity, Tosca Mid Cap, The Pegasus Fund Limited and Tosca Penta Music LP (the "Previous Settling Parties").

7.      This second settlement, *i.e.*, the Crowe Settlement, provides for the resolution of all claims against Crowe in exchange for a non-reversionary cash payment of $1,610,000 (the "Crowe Settlement Amount") and therefore resolves all outstanding claims.[4]  As explained below, of this, $1,470,000 is for the benefit of the Settlement Class.

---

[4] Apostolos N. Zervos ("Zervos"), Akazoo's Chief Executive Officer, is the only remaining defendant in the Action.  After careful consideration, Plaintiffs decided to not pursue claims against Zervos.  Thus, the Crowe Settlement will conclude this Action.

8.      Crowe agreed to a global settlement of $11,500,000 to resolve the claims in this Action and the PIPE and SPAC Action.  According to the agreed-upon allocation based on the proportional size of damages, 14%, or $1,610,000, is allocated to Settlement Class Members.  A total of $1,000,000 must be paid to Modern Media Acquisition Corp.'s insurer, XL Specialty Insurance Company ("XL Specialty"), because, as dictated by the stipulation of settlement governing the Akazoo Settlement, the Akazoo Settlement ($35,000,000 in total) plus the Crowe Settlement ($11,500,000 in total) here, collectively exceeds $43,000,000.  *See* ECF No. 32 at ¶2.8. In accordance with the previously negotiated breakdown, upon entry of final approval, Plaintiffs will pay $140,000, or 14%, of the $1,000,000 owed to XL Specialty.  Thus, the Settlement Fund for Settlement Class Members will total $1,470,000.

9.      Collectively, the Crowe Settlement and Akazoo Settlement recover $6,510,000 in total, with $6,370,000 for the benefit of the Settlement Class.

10.     As detailed herein, Plaintiffs and Class Counsel submit that the proposed Crowe Settlement represents a favorable result for the Settlement Class considering the risks of continued litigation.

11.     It is also important to recognize that the Crowe Settlement was negotiated by experienced counsel, who were well aware of the strengths and weaknesses of the case.  Class Counsel's efforts dedicated to the litigation against Crowe included, among other things:

- researched, drafted, and filed the initial complaint in the State Action (*i.e.*, *Pareja, et al., v. Apostolos N. Zervos, et al.*, Case No. 2020CV337418 (Super. Ct., Fulton Cnty. Geor.)), which asserted violations of the Sections 11, 12(a)(2), and 15 of the Securities Act against Crowe and other defendants;

- conducted an extensive investigation of the claims asserted in the Federal and State Actions, which included, among other things, (a) reviewing and analyzing (i) U.S. Securities and Exchange Commission ("SEC") filings by MMAC and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and

4

Akazoo; and (b) retaining and working with a private investigator who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information;

- utilizing the comprehensive investigation and additional research to draft and file the Amended Complaint, which added Crowe as a defendant to the action asserted, *inter alia*, violations of both the Exchange Act and Securities Act, against sixteen (16) unique defendants, including Crowe;

- negotiating an agreement in the State Action pursuant to which Crowe accepted service;

- researching Crowe's motion to dismiss arguments in the State Action;

- negotiating the Akazoo Settlement, which provided, *inter alia*, that "Akazoo … will make reasonable efforts to assist the Akazoo Investors in pursuing claims against Crowe by, among other things, producing documents and providing testimony" (ECF No. 32 at ¶2.10);

- investigating the specific claims against Crowe, which included, among other things: (i) reviewing documents Akazoo produced in the SEC Action; (ii) retaining and working with an audit and accounting expert; and (iii) reviewing publicly available materials;

- utilizing the investigation and additional research to draft and file the Operative Complaint against Crowe;

- research, draft and file an opposition to Crowe's pre-motion to dismiss letter and attended a hearing on the matter;

- participating in a complicated mediation process facilitated by Mr. Lindstrom, which involved two-full day mediation sessions (on November 15, 2021 and May 11, 2022), the parties to the PIPE and SPAC Action, and a settlement based on a mediator's recommendation;

- drafting and negotiating the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Crowe;

- drafting the preliminary approval and final approval motions;

- overseeing the implementation of the notice process and responding to emails from Settlement Class Members; and

- drafting the motion for final approval.

12.     Based on the foregoing efforts, Plaintiffs and Class Counsel believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members. For all the reasons set forth herein and in the accompanying memoranda and declarations, Plaintiffs and Class Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all

respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

13.    In addition, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable. The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts. The proposed Plan of Allocation here mirrors the plan of allocation previously approved by the Court in the Akazoo Settlement. ECF No. 52.

14.    Finally, Class Counsel seeks approval of the request for attorneys' fees and reimbursement of Litigation Expenses as set forth in the Fee Memorandum. As discussed in detail in the accompanying Fee Memorandum, the requested one-third fee is well within the range of percentage awards granted by courts in this Circuit in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check, and warranted in light of the extent and quality of the work performed and the substantial result achieved. Likewise, the requested out-of-pocket litigation costs of $44,720.05 and the requested PSLRA awards of $3,500 to each of the six Plaintiffs are also fair and reasonable. Accordingly, for the reasons set forth in the Fee Memorandum and for the additional reasons set forth herein, Class Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## II.    PROSECUTION OF THE ACTION

### A.    Background

15.    This is a securities class action brought by investors alleging that Crowe violated the federal securities laws by making false and misleading statements regarding Akazoo's financial statements and permitting Akazoo to mislead the public about its financial condition. Specifically,

6

the Operative Complaint alleges that Crowe violated professional standards by issuing unqualified, "clean" audit opinions regarding Akazoo's financial statements despite failing to conduct any reasonable inquiry into Akazoo's reported results.  The Operative Complaint further alleges that as a result of Crowe's false and misleading statements, including its audit opinions, the price of Akazoo's publicly-traded securities were allegedly artificially inflated and declined when the truth was revealed.

**B.    Commencement Of The Federal Action And Appointment Of Lead Plaintiffs And Lead Counsel**

16.    Two class action complaints were filed in the United States District Court for the Eastern District of New York (the "Court").  The first, filed on April 24, 2020, was styled *Soe v. Akazoo S.A. and Apostolos N. Zervos*, Case No. 1:20-cv-01900.  The second, filed on June 19, 2020, was styled *Caldwell, et al., v. Akazoo S.A., et al.*, Case No. 1:20-cv-02737.

17.    On July 17, 2020, the Court ordered the cases be consolidated into *In re Akazoo S.A. Securities Litigation*, Case No. 1:20-cv-01900-BMC, appointed T. Caldwell, S. Caldwell, Poulakis, and Pullen as Lead Plaintiffs, and approved their selection of Rosen Law to serve as Lead Counsel.  ECF No. 12.

18.    On September 8, 2020, Federal Plaintiffs filed the Amended Complaint, that added Crowe as a defendant, and asserted claims against Crowe, the Previous Settling Parties, and Zervos, for alleged violations of Sections 10(b), 14(a) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as well as Sections 11 and 15 of the Securities Act.  ECF No. 15.

**C.    The State Action**

19.     On June 22, 2020, State Plaintiffs commenced the State Action in the Superior Court for the State of Georgia, Fulton County, on behalf of all persons and entities that purchased or otherwise acquired Akazoo common stock pursuant and/or traceable to the Company's

7

registration statement and prospectus issued in connection with Akazoo's September 2019 business combination. The State Action asserted violations of Sections 11, 12(a)(2), and 15 of the Securities Act against Crowe as well as Akazoo, Zervos, Settling Old Akazoo Defendants, and Dickey, MMAC Director Defendants.

20. On November 9, 2020, defendant Crowe filed: (i) a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to dismiss for failure to state a claim upon which relief can be created; and (ii) an answer and affirmative defenses. That same day, defendants Dickey, Drewry, Kagan, Faulstich, Brokaw, White, and Akazoo filed a stipulation extending the time for them to answer. While lead counsel in the State Action had analyzed, researched and were prepared to respond to the motion to dismiss, in light of the agreement between the parties to engage in settlement discussions regarding a potential global resolution of the various actions, including the State Action, the parties in the State Action filed extensions to the relevant deadlines, and State Plaintiffs' response to Crowe's motion to dismiss is currently stayed until after the final approval hearing in the Federal Action.

**D.  The Comprehensive Pre-Filing Investigation, Preparation Of The Amended Complaint, And Akazoo Settlement**

21. In preparation for filing the Amended Complaint, Class Counsel conducted an extensive factual and legal investigation that included, among other things, (a) reviewing and analyzing (i) SEC filings by MMAC and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; (b) retaining and working with a private investigator who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information; and (c) retained and worked with

8

damages and loss causation experts. Class Counsel also conducted an exhaustive analysis of applicable case law to help inform which claims to bring and which claims were not viable.

22.     On September 8, 2020, Plaintiffs filed the Amended Complaint based on their thorough investigation. ECF No. 15. The 135-page Amended Complaint alleged six different causes of action, and brought claims against sixteen unique defendants. The thoroughness of Class Counsel's investigation, research and analysis is demonstrated by the Amended Complaint, which Plaintiffs were confident would survive a motion to dismiss.

23.     After a three-day mediation and several months of ongoing settlement negotiations, Plaintiffs reached a settlement with the Previous Settling Parties which resolved Plaintiffs' claims against all defendants, but Crowe. On April 28, 2021, the Court granted preliminary approval of the Akazoo Settlement and appointed Plaintiffs as Class Representatives and The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP as Class Counsel. ECF. No. 36. Plaintiffs filed their motion for final approval of the Akazoo Settlement on August 3, 2021 (ECF Nos. 44-45 & 48), with reply papers filed on September 2, 2021 (ECF. No. 50). On September 10, 2021, the Court granted final approval of the Akazoo Settlement. (ECF. No. 51). This order preserved Plaintiffs' ability to continue litigating against Crowe.

### E.     Settlement Efforts With Crowe, The Investigation And Filing Of The Operative Complaint; Crowe's Pre-Motion To Dismiss Letter

24.     After the Akazoo Settlement, Plaintiffs and Crowe agreed to mediate the remaining claims and subsequently attended a mediation session before Mr. Lindstrom on November 15, 2021. In addition to Plaintiffs and Crowe, the PIPE and SPAC Investors participated in the session. Prior to this mediation session, the participants drafted mediation submissions, outlining each side's respective positions. The mediation session concluded without reaching a resolution. Litigation against Crowe resumed.

25.    On February 11, 2022, Plaintiffs filed the Operative Complaint. ECF. No. 57. The Operative Complaint alleged violations of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as well as Section 11 of the Securities Act against Crowe for its auditing work related to Akazoo.

26.    On February 25, 2022, Crowe submitted a letter motion requesting a pre-motion conference to discuss Crowe's intention to move to dismiss the Operative Complaint and presented a summary of its basis for the anticipated motion.  ECF No. 58.

27.    On March 7, 2022, Plaintiffs submitted their response to Crowe's letter motion for a pre-motion conference in anticipation of filing a motion to dismiss.  ECF No. 59.  On March 18, 2022, the Court conducted the pre-motion telephonic conference and stayed the case pending the upcoming mediation.

28.    The second mediation session before Mr. Lindstrom was held on May 11, 2022. The same participants as the previous mediation participated.

29.    During the mediation session, the Parties engaged in full and frank discussions concerning the merits of the Action, including, for example, the facts alleged to support Plaintiffs' claims, defenses and potential legal impediments to the claims, Crowe's resources, and ability to fund a settlement, and future potential liability for Crowe.  This negotiation process enabled the Parties to meaningfully assess the relative strengths and weaknesses of their respective claims and defenses.  The mediation session culminated in a mediator's proposal, which the Settling Parties accepted.

30.    The global settlement of the Action and PIPE and SPAC Action provides for consideration of $11,500,000 (eleven million, five hundred thousand U.S. dollars) in total, 86% of the total consideration amount, or $9,890,000 (nine million, eight hundred ninety thousand U.S.

10

dollars), to be paid to resolve the claims of the PIPE and SPAC Action, and 14% of the total consideration amount, or $1,610,000 (one million, six hundred and ten thousand U.S. dollars), to resolve the claims with Crowe in this Action. This percentage breakdown reflects the proportionate size of the damages for the PIPE and SPAC Action and the Action. The PIPE and SPAC Action has its own settlement agreement.

31.    On May 16, 2022, Plaintiffs notified the Court that a settlement in principle had been reached. ECF No. 62. Plaintiffs moved for preliminary approval of the Crowe Settlement on July 20, 2022 (ECF Nos. 66-68), which the Court granted on July 25, 2022 (ECF No. 69).

## III.    THE RISKS OF CONTINUED LITIGATION

32.    The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a non-reversionary cash payment of $1,610,000. As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals. Prior to trial and appeal, the most immediate risks faced by the Settlement Class related to Defendants' ability to pay. Thus, there was no guarantee that Plaintiffs and the Settlement Class would later achieve any recovery, let alone one greater than the Crowe Settlement Amount. .

### A.    Risks Posed By Continued Litigation

33.    At the time the Crowe Settlement was reached, Crowe had already filed a demurrer in the State Action both on the merits and for lack of jurisdiction. Moreover, the adequacy of the Operative Complaint had not been tested in this Court. While Plaintiffs were confident that they would prevail against Crowe's impending motion to dismiss, following the pre-motion letter

11

briefing and the pre-motion conference before the Court, Plaintiffs realized that there is always a risk that at least some of the claims would not be sustained.

34.     Crowe would have also opposed class certification.  While Class Counsel researched and analyzed the class question and are confident that all of Rule 23's requirements would have been met, and that the Court would have certified the proposed class, Plaintiffs bear the burden of proof on class certification, and Defendants would have undoubtedly raised arguments challenging the propriety of class certification.  Moreover, even if Plaintiffs successfully obtained class certification, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery.  Class certification was, by no means, a forgone conclusion.

35.     Additionally, a recent ruling by the United States Supreme Court has made obtaining class certification for plaintiffs more difficult and could potentially provide additional challenges should the litigation against Crowe proceed.  In *Goldman Sachs Grp. v. AR Teacher Ret.*, 141 S.Ct. 1951 (June 21, 2021), the Supreme Court held, in part, that when defendants are seeking to rebut the presumption of reliance established under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as modified by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), courts may consider the generic nature of an alleged misrepresentation as evidence of lack of price impact.  Accordingly, courts are now permitted to assess materiality of an alleged misstatement and consider "all evidence relevant to price impact" at the class certification stage.  On the plus side for Plaintiffs, the Supreme Court did clarify that defendants bear the burden of persuasion of showing a lack of price impact by a preponderance of the evidence.

**B.    Challenges To Obtaining Discovery**

36.    Plaintiffs would have needed to surmount significant obstacles to obtain evidence to support their claims, as many, if not all, of pertinent documents would be located abroad.  Crowe is based in England and Akazoo, though incorporated in Luxembourg, is also based in England.  Moreover, much of the alleged wrongdoing occurred overseas including Europe, Asia, and South America.  These case-specific facts combined would have made discovery challenging and costly especially in light of the need to retain multilingual attorneys to facilitate document review.

37.    Even if Crowe produced documents, those documents may have supported Crowe's narrative of the case and undermined Plaintiffs' case and discovery.

38.    In addition, if Plaintiffs sought discovery from third-parties in Europe, Asia, and South America, they would have been required to serve discovery through the Hague Evidence Convention and international protocols, an extremely time consuming process with no guarantee of success.  Accordingly, it is possible that Plaintiffs would have needed to apply to the Court for letters rogatory.  Moreover, certain fact depositions also would have been contingent on Plaintiffs successfully locating and compelling fact witness from around the world.

**C.    Risks To Proving Liability And Damages**

39.    In addition to the hurdle of obtaining foreign discovery and class action status, Plaintiffs and Class Counsel faced numerous additional risks to establishing Crowe's liability. Crowe forcefully argued in its pre-motion letter, at the pre-motion conference, and during mediation—and undoubtedly would have continued to argue at summary judgment and/or trial— that Plaintiffs could not exercise personal jurisdiction nor establish the elements of their Exchange Act claims, particularly scienter.  At the pre-motion conference, the Court also expressed doubt as

13

to Plaintiffs' ability to overcome the threshold hurdle of establishing personal jurisdiction. And on the merits, the Court too gave Plaintiffs pause as to being able to establish Crowe's scienter.

40.     Although Plaintiffs believe they had strong counter-arguments in response to Crowe's argument, Crowe's contentions nevertheless posed a risk to establishing liability had the litigation continued. Additionally, despite believing that the Action is meritorious, Plaintiffs and Class Counsel were well aware of the high hurdles they would have to surmount in order to successfully prove that Crowe actually violated the securities laws.

41.     Even assuming Plaintiffs overcame the above risks and established liability, Plaintiffs would have confronted considerable challenges in establishing class-wide damages. As a result of Plaintiffs' investigation, including consultation with experts, and the significant discussions conducted with the mediator, as well as discussions directly with defense counsel, Class Counsel obtained a clear preview of what arguments would be made with respect to the damages portion of the Action.

42.     Moreover, if damages were ultimately contested, both sides would have used experts to support their respective positions. The inevitable "battle of the experts" at class certification, summary judgment, and trial creates substantial litigation risk because there can be no assurance as to which party's expert a jury will find more persuasive.

**D.      Other Risks, Including Trial And Appeals, And Ability To Collect A Judgment**

43.     Plaintiffs would have had to prevail at several stages of litigation, each of which would have presented significant risks in complex class actions such as this one. Class Counsel know from experience that despite the most vigorous and competent efforts, success in complex litigation such as this case is never assured. For example, approximately two years ago, GPM lost a six-week antitrust jury trial in the Northern District of California after five years of litigation,

14

which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.). Put another way, complex litigation is uncertain, and success in cases like this one is never guaranteed.

44.     Even if Plaintiffs had succeeded in proving all elements of their case at trial and obtained a jury verdict, Crowe would almost certainly have appealed. An appeal not only would have renewed all the risks faced by Plaintiffs—as Crowe would have reasserted all its arguments summarized above—but also would have resulted in significant additional delay. Given these significant litigation risks, Plaintiffs and Class Counsel believe that the Crowe Settlement represents a favorable resolution for the Settlement Class.

45.     If the case was litigated, it was all but assured that the Settlement Class would have received less money than provided for in the Settlement. The Crowe Settlement is funded by insurance which is wasting and subject to claims in the Action and in the PIPE and SPAC Action. Had the Settlement not been reached, additional costs, time, complexities, and uncertainty would have existed and erode any funds for investors.

46.     Finally, Crowe is based in England. As such, collecting any remaining assets from Crowe in England would require hiring counsel in England to bring suit there. This would be extremely costly without any guarantee of success.

**E.    The Settlement Is Reasonable In Light Of The Maximum Potential Recovery**

47.     On its own, the $1,470,000 Settlement Amount is a very favorable resolution for Settlement Class Members. This guaranteed result, despite numerous obstacles, supports approval. Coupled with the Akazoo Settlement that recovered $4,900,000, a total of $6,510,000 has been recovered, of which $6,370,000 is for the benefit of the Settlement Class.

15

48.     Having evaluated the relative strengths and weaknesses of the Action in light of Crowe's arguments, and considering the very real risks presented by continued litigation, it is our informed judgment, based on all of the proceedings to date and our extensive experience in litigating class actions under the federal securities laws, that the proposed Settlement is fair, reasonable, and adequate and in the Settlement Class's best interest.

## IV.     PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE

49.     The Preliminary Approval Order directed that the Postcard Notice to be mailed to potential Settlement Class Members and also set a deadline of September 7, 2022 (21 calendar days prior to the final fairness hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum or to request exclusion from the Settlement Class, and set a final fairness hearing date of September 28, 2022 (the "Settlement Hearing").

50.     SCS was able to mail the Postcard Notice expeditiously as they already possessed Settlement Class Members' contact information from the Akazoo Settlement. Contemporaneously with the mailing of the Postcard Notice, SCS posted downloadable copies of the Long Notice and Claim Form online at https://www.strategicclaims.net/akazoo-s-a-securities-litigation (the "Settlement Website"). The Postcard Notice directed Settlement Class Members to the Settlement Website in order to obtain additional information on the Settlement, including how to file a claim, request exclusion or object to the Settlement, and access the Long Notice and Claim Form.

51.     The Court-approved Long Notice disclosed, among other things, the following information to Settlement Class Members: (a) if a valid claim was previously submitted in the Akazoo Settlement, Settlement Class Members did not need to resubmit a claim here; (b) even if a valid claim was filed in the Akazoo Settlement, Settlement Class Members had the right to object

16

to, or request exclusion, from the Crowe Settlement; (c) a summary of the Settlement, including the $1,610,000 Crowe Settlement Amount and an explanation for the $140,000 reduction to pay XL Specialty; (d) the proposed Plan of Allocation; (e) that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Crowe Settlement Amount (*i.e.*, $490,000, plus interest) as well as Litigation Expenses in an amount not to exceed $75,000, which could include an application for reimbursement to Plaintiffs for their costs; (f) that any Settlement Class Member could object to the requested attorneys' fees and Litigation Expenses; (g) an explanation of the reasons for the Settlement; (h) that requests for exclusion from the Settlement must be submitted to the Claims Administrator no later than September 7, 2022; (i) that objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum must be filed with the Court no later than September 7, 2022; and (j) that the deadline for submitting a Claim, if one was not previously submitted in the Akazoo Settlement, is October 7, 2022.

52.     To disseminate the Postcard Notice, on August 8, 2022, SCS mailed a copy of the Postcard Notice to 2,822 potential Settlement Class Members that were identified during the notification process in the Akazoo Settlement. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl."), attached hereto as Exhibit 2 at ¶6.[5]

53.     In addition, SCS maintains a proprietary database with names and addresses of the largest and most common banks, brokerage firms, institutions and other third-party nominees ("Nominee Account Holders and Institutional Groups"). Although SCS previously contacted

---

[5] Due to a clerical error, the Postcard Notice was not mailed to the 531 Settlement Class Members who submitted valid claims in the Akazoo Settlement until August 16, 2022. *Id*. In an abundance of caution, on August 16, 2022, SCS emailed the Postcard Notice to 484 of the 531 investors who submitted valid claims for whom SCS had verified email addresses. *Id.*

Nominee Account Holders and Institutional Groups in connection with the Akazoo Settlement, on August 3, 2022, SCS caused a letter to be mailed or emailed to the 1,741 nominees contained in the SCS master mailing list. Bravata Decl., ¶4; 2-B (copy of the letter sent to nominees). The letter directed nominees to: (a) send a Postcard Notice to their customers who may be beneficial purchasers/owners; (b) email a direct link to the Long Notice and Claim Form supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses, if available, of such beneficial purchasers/owners so SCS could promptly mail the Postcard Notice or email links to the Long Notice and Claim Form directly to them. *Id*.

54.     In response to this letter, SCS received 81 additional names and addresses of potential Settlement Class Members. On or before August 11, 2022, SCS mailed Postcard Notices to these 81 additional investors. *Id*.

55.     Additionally, a nominee alerted SCS that it emailed 1,515 of its customers to notify them of the Crowe Settlement and provided direct links to the Notice and Claim Form. *Id*. at ¶7.

56.     As of August 19, 2022, SCS caused a total of 3,434 copies of the Postcard Notice to be mailed to potential Settlement Class Members. *See id.* at ¶6. In total, 4,949 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed a direct link to the Long Notice and Claim Form. *Id*. ¶8.

57.     On August 8, 2022, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted over *GlobeNewswire*. *See id.* at ¶9; Ex. 2-D (confirmations of publications).

58.     Class Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on August 3, 2022 to provide potential Settlement Class Members with information concerning the Settlement, including exclusion, objection, and claim-filing deadlines

for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Long Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order. Bravata Decl., ¶11.

59.     SCS maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request a Long Notice and Claim Form. SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries. *Id.* at ¶10.

60.     As set forth above, the Long Notice informed potential Settlement Class Members that the deadline to file objections to the Settlement, the proposed Plan of Allocation and/or the Fee Memorandum, or to request exclusion from the Settlement Class, is September 7, 2022. As of August 19, 2022, no requests for exclusion have been received. *Id.* at ¶12. SCS will file a supplemental affidavit after the September 7, 2022 deadline addressing whether any requests for exclusion have been received.

61.     In addition, to date, no objections to the Settlement, the Plan of Allocation, and/or the Fee Memorandum have been entered on this Court's docket or have otherwise been received by Class Counsel. Class Counsel will file reply papers by September 21, 2022 that will address any objections that may be received.

## V.     ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

62.     Pursuant to the Preliminary Approval Order, and as set forth in the Long Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the remaining $1,470,000 of the Crowe Settlement Amount, plus any and all interest earned thereon, less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid

Claim Form with all required information either online or postmarked no later than October 7, 2022.  If a Settlement Class Member previously submitted a valid claim in the Akazoo Settlement, that valid claim will be automatically resubmitted here.  The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, subject to Court approval.  *See* Ex. 2-A (Long Notice) ¶66; Stipulation, ¶1.34.  As set forth in the Long Notice, the Net Settlement Fund will be distributed among Settlement Class Members according to the Plan of Allocation approved by the Court.

63.    The proposed Plan of Allocation is detailed in the Long Notice.  *See* Ex. 2-C (Long Notice) pp. 10-14.  A downloadable version of the Long Notice is posted online on the Settlement Website.  If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Authorized Claimants.  The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the alleged fraud as opposed to losses caused by market- or industry-wide factors or Company-specific factors unrelated to the alleged fraud.  *See id.*

64.    The Plan of Allocation, developed by Plaintiffs' damages expert working in conjunction with Class Counsel, is based on a theory of damages consistent with the securities claims alleged, and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Action and responses to Defendants' negative causation arguments.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' disclosure event allegations and analysis.

65.    Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund in accordance with the following allocations: (1) Settlement Class Members with Section 10(b) Claims shall be allocated approximately 9.24%

of the Net Settlement Fund and Settlement Class Members with Section 11 Claims shall be allocated approximately 90.76% of the Net Settlement Fund.[6]  More specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim Amount divided by the total of Recognized Claim Amounts of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund and in accordance with each type of claim's allocation.  Ex. 2-A. (Long Notice) at ¶57.

66.     An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Akazoo securities the Claimant purchased, acquired, or sold during the relevant period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants.

67.     The Plan of Allocation is based on the premise that the decreases in the price of the Company's common stock may be used to measure the alleged artificial inflation in the price of the Company's common stock prior to these stock price declines.  If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Akazoo common stock during the relevant period, or if the Claimant purchased shares during the relevant period, but did not hold such shares long enough, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged wrongdoing.  Ex. 2-C. (Long Notice) at ¶¶49, 53.

68.     If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant.  Ex. 2-A. (Long Notice) at ¶57.  Any prorated amounts of less than $10.00 will be included in the pool distributed to those

---

[6] These allocations are based on the maximum potential damages of each claim. Ex. 2-A (Long Notice) at ¶47.

21

Authorized Claimants whose prorated payments are $10.00 or greater. *Id.* In Class Counsel's experience, processing and sending a check for less than $10.00 is cost-prohibitive.

69.     In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Akazoo securities that were attributable to the conduct alleged in the Operative Complaint. Class Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Plaintiffs prevailed at trial.

70.     As of August 19, 2022, no objections to the proposed Plan of Allocation have been received by Class Counsel, the Claims Administrator, or filed on the Court's docket. *See* Bravata Decl. at ¶13.

## VI.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

71.     In addition to seeking final approval of the Settlement and Plan of Allocation, Class Counsel are applying for a fee award of one-third of the Crowe Settlement Amount (*i.e.*, $490,000, plus interest). Class Counsel also request reimbursement of Litigation Expenses from the Settlement Fund in the amount of $65,720.05 which includes $44,720.05 in out-of-pocket expenses that counsel incurred in connection with the prosecution of the Action against Crowe, and $21,000 to Plaintiffs ($3,500 each) for their reasonable costs (including lost wages) directly incurred in connection with their representation of the Settlement Class. The total Litigation Expenses amount of $65,720.05 is well below the maximum expense amount of $75,000 set forth in the Postcard and Long Notice. The legal authorities supporting a one-third fee award are set forth in the accompanying Fee Memorandum, which is being filed contemporaneously herewith.

The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

### A.     The Fee Application

72.     Class Counsel are applying for a percentage-of-the-common-fund fee award to compensate Plaintiffs' Counsel for the services they rendered on behalf of the Settlement Class. As set forth in the accompanying Fee Memorandum, the percentage method is the best method for determining a fair attorneys' fee award, because unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery.  The lawyers are motivated to achieve maximum recovery in the shortest amount of time required under the circumstances.  This paradigm minimizes unnecessary drain on the Court's resources.  Notably, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court and the Second Circuit for cases of this nature.  Furthermore, as set forth below, though not required in the Second Circuit, Class Counsel also submits that the requested fee is fully supported by a "lodestar multiplier cross-check."

73.     Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Class Counsel submit that the requested fee award is fair and reasonable and should be approved.  As discussed in the Fee Memorandum, a one-third fee award is well within the range of percentages awarded in securities class actions with comparable settlements in this Circuit.

### 1.     The Favorable Outcome Achieved Is The Result Of The Significant Time And Labor That Class Counsel Devoted To The Action

74.     Class Counsel spent considerable time prosecuting the Action on behalf of the Settlement Class.  Among other things, Class Counsel spent significant time:

- researching, drafting and filing the initial complaint in the State Action, which asserted violations of the Sections 11, 12(a)(2), and 15 of the Securities Act against Crowe and other defendants;

- conducting an extensive investigation of the claims asserted in the Federal and State Actions, which included, among other things, (a) reviewing and analyzing (i) SEC filings by MMAC and Akazoo, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to MMAC and Akazoo, (iii) investor call transcripts, and (iv) court filings and other publicly available material concerning MMAC and Akazoo; and (b) retaining and working with a private investigator who conducted an investigation in Europe that involved, *inter alia*, numerous interviews of former Akazoo employees and other sources of potentially relevant information;

- utilizing the comprehensive investigation and additional research to draft and file the 135-page Amended Complaint in the Federal Action, which added Crowe as a defendant to the action asserted, *inter alia*, violations of both the Exchange Act and Securities Act, against sixteen (16) different Defendants, including Crowe;

- negotiating an agreement in the State Action pursuant to which Crowe accepted service;

- researching Crowe's motion to dismiss arguments in the State Action;

- negotiating the Akazoo Settlement, which provided, *inter alia*, that "Akazoo … will make reasonable efforts to assist the Akazoo Investors in pursuing claims against Crowe by, among other things, producing documents and providing testimony" (ECF No. 32 at ¶2.10);

- investigating the claims specifically against Crowe which included, among other things: (i) reviewing documents Akazoo produced in the SEC Action; (ii) retaining and working with an audit and accounting expert; and (iii) reviewing publicly available materials;

- utilizing the investigation and additional research to draft and file the Operative Complaint against Crowe;

- research, draft and file an opposition to Crowe's pre-motion to dismiss letter and attended a hearing on the matter;

- engaging in a complicated mediation process facilitated by Mr. Lindstrom, which involved two-full day mediation sessions (on November 15, 2021 and May 11, 2022), the parties to the PIPE and SPAC Action, and a settlement based on a mediator's recommendation;

- drafting and negotiating the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Crowe;

- drafting the preliminary approval motion;

- overseeing the implementation of the notice process and responding to emails from Settlement Class Members;  and

24

- drafting the motion for final approval.

75.    Attached hereto as Exhibits 8 and 9 are declarations from Class Counsel in support of an award of attorneys' fees and reimbursement of out-of-pocket expenses incurred in connection with prosecution of the Action against Crowe.  Included within each supporting declaration is a schedule summarizing the hours and lodestar of each firm, a summary of expenses by category, and a firm resume.[7]  The hours included are from September 10, 2021, the day after the Akazoo Settlement was finally approved, through August 23, 2022.  The following is a chart of lodestar amounts for the two Class Counsel firms:

| LAW FIRM: | LODESTAR |
|---|---|
| Glancy Prongay & Murray LLP | $132,165.00 |
| The Rosen Law Firm, P.A. | $201,417.50 |
| TOTAL LODESTAR | $333,582.50 |

76.    The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation in this District. Additionally, the rates billed by Class Counsel attorneys (ranging from $525-$625 per hour for non-partners and $750-$1,050 per hour for partners) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude.  *See* Ex. 10 attached hereto (table of peer law firm billing rates).

77.    As set forth above and in detail in Exhibits 8 and 9, Class Counsel collectively expended a total of 475.62 hours in the investigation and prosecution of the Action against Crowe. The resulting total lodestar is $333,582.50.50.  The requested fee amount of one-third of the Crowe Settlement Amount currently equals $490,000 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a 1.5 multiplier of Class Counsel's lodestar.

---

[7] Time expended in preparing the application for fees and reimbursement of expenses has not been included.

25

78.     Moreover, Class Counsel will continue to work towards effectuating the Crowe Settlement in the event the Court grants final approval.  Among other things, Class Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member's claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process.  No additional compensation will be sought for this work.

79.     As detailed above, throughout this litigation, Class Counsel devoted substantial time to the prosecution of the Action.  Class Counsel maintained control of, and monitored the work performed by, lawyers and other personnel on this case.  We personally devoted substantial time to this litigation and were personally involved in, among other things: (a) the investigation of the facts and applicable law; (b) drafting or reviewing and editing all pleadings, court filings, the meditation statement, and other correspondence prepared on behalf of Plaintiffs; (c) engaging experts including an accounting and auditing expert; (d) conducting discussions with counsel for Crowe and the Susman Godfrey PIPE, SPAC, and Retail Investors on a variety of matters; and (e) were intimately involved in settlement negotiations.  Other experienced attorneys were involved with drafting, reviewing and/or editing pleadings, court filings, and the mediation submissions, communicating with Plaintiffs, the mediation process, negotiating the terms of the Settlement, term sheet and Stipulation, and other matters.  More junior attorneys and paralegals also worked on matters appropriate to their skill and experience level.  Throughout the litigation, Class Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

80.     Class Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement Class.  In circumstances

such as these, and in consideration of the hard work and the result achieved, we submit that the requested fee is reasonable and should be approved.

### 2.    The Magnitude And Complexity Of The Action

81.    As detailed in the Fee Memorandum, securities class action cases are known for their notorious complexity. In fact, the claims against Crowe are even more demanding as proving an external auditor's liability under the federal securities laws provide additional challenges.

82.    Additionally, the mediation and settlement process was long and hard-fought. The Settling Parties zealously advocated their positions throughout the mediation process and for several additional months before the Settling Parties reached complete agreement and executed the Stipulation.

### 3.    The Significant Risks Borne By Class Counsel

83.    This prosecution was undertaken by Class Counsel on an entirely contingent-fee basis. From the outset, there was no guarantee that Class Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Class Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required by a litigation like this one were covered. Although Class Counsel was awarded attorneys' fees in association with the Akazoo Settlement, they continued to litigate against Crowe with no guarantee of payment. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Class Counsel received no compensation during the course of the Action against Crowe during the almost yearlong period since the Akazoo Settlement, and incurred $44,720.05 in out-of-pocket litigation-related expenses.

27

84. Additionally, Plaintiffs alleged their claims without information gained through subpoena power, as Crowe would likely have argued that any attempt to do so would have been precluded by the PSLRA's automatic stay of discovery.

85. Class Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this litigation presented multiple risks and uncertainties that could have prevented any recovery whatsoever.

86. Moreover, despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured. Class Counsel know from experience that the commencement of a class action does not guarantee a settlement. *See supra*, ¶43; *see also Gross v. GFI Group, Inc.*, 784 Fed. App'x. 27, 28 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where one of Class Counsel in this case—GPM—served as plaintiff's counsel). To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

        **4.**     **The Quality Of Representation, Including The Result Obtained, The Experience And Expertise Of Class Counsel, And The Standing And Caliber Of Crowe's Counsel**

87. As demonstrated by the firm resumes, attached hereto as Exhibits 8-C and 9-C, Class Counsel are highly experienced and skilled laws firms that focus their practices on securities class action litigation. Indeed, Class Counsel have substantial experience in litigating securities fraud class actions and have negotiated scores of other class settlements, which have been approved by courts throughout the country. Class Counsel enjoy a well-deserved reputation for skill and success in the prosecution and favorable resolution of securities class actions and other

complex civil matters.  We believe Class Counsel's experience added valuable leverage in the settlement negotiations.

88.    Class Counsel also obtained a highly favorable result for the Settlement Class, as the Crowe Settlement recovers a significant amount against Akazoo's external auditor.

89.    Additionally, the quality of the work performed by Class Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, the Crowe was represented by Wilson Elser Moskowitz Edelman & Dicker LLP a well-known law firm that strongly represented Crowe's interests.  In the face of this experienced and formidable opposition, Class Counsel was nonetheless able to persuade Crowe to settle the case on terms favorable to the Settlement Class.

### 5.    The Requested Fee In Relation To The Settlement

90.    The amount of the fee requested (one-third) in relation to the Crowe Settlement Amount ($1,470,000) is fair and reasonable.  Courts routinely award fees of one-third in securities class action settlements.  *See* Fee Memorandum at pp.7-10; *see also* Ex. 10 (collecting cases).

### 6.    Interests Of Public Policy, Including The Need To Ensure The Availability Of Experienced Counsel In High-Risk Contingent Securities Cases

91.    Courts have consistently recognized that it is in the public interest to have vigorous private enforcement of the federal securities laws.  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.  Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

### 7.    The Reaction Of The Class Supports Class Counsel's Fee Request

92.    As noted above, as of August 19, 2022, 4,949 potential Settlement Class Members were notified of the Crowe Settlement, including that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, by either mailed Postcard Notice or by emailed links to the Long Notice and Claim Form.  Bravata Decl. ¶8; In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted over *GlobeNewswire*.  Bravata Decl. at ¶9; Ex. 2-D (confirmation of Summary Notice publications).  To date, no objections to the maximum potential attorneys' fees request set forth in the Postcard Notice and Long Notice have been received or entered on this Court's docket. Any objections received after the date of this filing will be addressed in Class Counsel's reply papers, set to be filed by September 7, 2022.

### 8.    Plaintiffs Support Class Counsel's Fee Request

93.    As set forth in the declarations submitted on behalf of Plaintiffs, Plaintiffs have concluded that Class Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Action.  *See* Ex. 3 (Caldwells Decl.), ¶7; Ex. 4 (Poulakis Decl.), ¶7; Ex. 5 (Pullen Decl.), ¶7; Ex. 6 (Pareja Decl.), ¶7; Ex. 7 (Sweet Decl.), ¶7.  Plaintiffs have been intimately involved in this case, and their endorsement of Class Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

94.    In sum, Class Counsel accepted the Action against Crowe on a fully contingent basis, committed significant resources, and prosecuted the Action against Crowe without any compensation or guarantee of success.  Based on the result obtained, the quality of the work performed, the litigation risks, and the contingent nature of the representation, Class Counsel

respectfully submit that a fee award of one-third of the Settlement Fund, resulting in a multiplier of 1.5, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

**B.      Reimbursement Of The Requested Litigation Expenses Is Fair And Reasonable**

95.      Class Counsel seeks a total of $65,720.05 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes: $44,720.05 in out-of-pocket expenses reasonably and necessarily incurred by Plaintiffs' Counsel in connection with commencing, litigating, and settling the claims asserted in the Action; as well as $21,000 to Plaintiffs pursuant to 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4), for their reasonable costs (including lost wages) directly incurred in connection with their representation of the Settlement Class.  *See* Ex. 3 (Caldwells Decl.), ¶10; Ex. 4 (Poulakis Decl.), ¶10; Ex. 5 (Pullen Decl.), ¶10; Ex. 6 (Pareja Decl.), ¶10; Ex. 7 (Sweet Decl.), ¶10.

96.      The Postcard Notice and the Long Notice informed potential Settlement Class Members that Class Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $75,000.  The total amount requested by Class Counsel and Plaintiffs, $65,720.05, falls well below the $75,000 that Settlement Class Members were advised could be sought.  To date, no objection has been raised as to the maximum amount of expenses set forth in both the Postcard and Long Notice.  If any objection to the request for reimbursement of Litigation Expenses is made after the date of this filing, Class Counsel will address it in their reply papers.

97.      From the beginning of the case, Class Counsel were aware that they might not recover their out-of-pocket expenses.  Class Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the contemporaneous lost use of funds advanced to prosecute the Action.  Accordingly, Class Counsel

31

were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case. Although Class Counsel received their out-of-pocket litigation expenses with the Akazoo Settlement, they have accursed $44,720.05 in unreimbursed litigation expenses for the prosecution of the Action against Crowe.

98.	In our opinion, the expenses paid were necessary and appropriate for the prosecution and resolution of the Action against Crowe. The following is a combined breakdown by category of all costs and expenses incurred by Class Counsel to prosecute the Action since the Akazoo Settlement:

| ITEM | AMOUNT |
|---|---|
| EXPERTS ACCOUNTING | $5,769.00 |
| FINANCIAL EXPERTS | $8,550.00 |
| COURIER | $284.62 |
| COURT FILING FEES | $150.00 |
| MEDIATORS | $12,500.00 |
| ONLINE RESEARCH | $1,039.89 |
| DOCUMENT HOSTING | $14,898.25 |
| PRESS RELEASES | $700.00 |
| TRAVEL, TRANSPORTATION, AND MEALS | $828.29 |
| GRAND TOTAL | $44,720.05 |

99.	The largest component of expenses, $14,319.00, or approximately 32% of the total expenses, was expended on the retention of experts in the fields of accounting, audits, damages and loss causation. These experts were consulted at different points throughout the litigation, including on matters related to the preparation of the Operative Complaint and on matters relating to the negotiation of the Crowe Settlement.

100.	Another large component of expenses, $12,500.00, or approximately 28% of the total expenses, was mediation fees owed to Mr. Lindstrom, Esq. for his services provided during the mediation and the settlement negotiations.

32

101.    The other litigation expenses for which Class Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These litigation expenses included, among other things, court filing fees, service of process costs, postage and delivery expenses, cost for private investigators, and the cost of on-line legal research.

102.    Finally, as stated above, Plaintiffs seek reimbursement, pursuant to 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4), of their reasonable costs (including lost wages) directly incurred in connection with their representation of the Settlement Class, in the amounts of $3,500 each.  *See* Ex. 3 (Caldwells Decl.), ¶10; Ex. 4 (Poulakis Decl.), ¶10; Ex. 5 (Pullen Decl.), ¶10; Ex. 6 (Pareja Decl.), ¶10; Ex. 7 (Sweet Decl.), ¶10.  The six plaintiffs all lost significant sums of money on their investments in Akazoo securities and were highly motived to, and did, work closely with Class Counsel throughout the pendency of the Action to secure the highest possible recovery for themselves and the Settlement Class.

103.    Each Plaintiff dedicated time to the successful prosecution of the Action by, among other things: (a) regular communication with counsel regarding the posture, progress and strategy of the case; (b) produced documents to counsel; (c) reviewed significant pleadings and briefs filed in the Action; (d) consulted with counsel regarding the settlement negotiations; and (e) evaluated and approved the proposed Crowe Settlement.  *See* Ex. 3 (Caldwells Decl.), ¶5; Ex. 4 (Poulakis Decl.), ¶5; Ex. 5 (Pullen Decl.), ¶5; Ex. 6 (Pareja Decl.), ¶5; and Ex. 7 (Sweet Decl.), ¶5.

104.    In our opinion, the Litigation Expenses incurred by Class Counsel and Plaintiffs were reasonable and necessary to represent the Settlement Class and achieve the Crowe Settlement.  Accordingly, Class Counsel submit that the Litigation Expenses should be reimbursed in full from the Settlement Fund.

## VII. CONCLUSION

105. In view of the significant recovery for the Settlement Class and the substantial risks related to the prosecution of the Action against Crowe, as described herein and in the accompanying Final Approval Memorandum, we respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable. We further submit that the requested fee in the amount of one-third of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses, including PSLRA reimbursement for costs in the amounts of $3,500 for each of the Plaintiffs, should also be approved.

We declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 24th day of August 2022, at Los Angeles, California.

*/s/ Casey E. Sadler*
CASEY E. SADLER

Executed this 24th day of August 2022, at New York, New York.

*/s/ Phillip Kim*
PHILLIP KIM

34