# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE AKAZOO S.A. SECURITIES LITIGATION | Case No. 1:20-cv-01900-BMC <br><br> <u>CLASS ACTION</u> |

**DECLARATION OF MEDIATOR GREGORY P. LINDSTROM, ESQ.**
**IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH**
**<u>CROWE U.K. LLP</u>**

I, Gregory P. Lindstrom, hereby declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.      I am filing this declaration in my capacity as the mediator in connection with the proposed settlement ("Settlement") in the above-captioned securities class action between Plaintiffs and Crowe U.K. LLP ("Crowe").[1]

2.      The Parties' negotiations were conducted in confidence and under my supervision.  All participants in the mediation and negotiations executed a confidentiality agreement stating that the mediation process was to constitute settlement negotiations for the purpose of Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication and/or use in evidence.  By making this declaration, neither I nor the Parties waive in any way the provisions of the confidentiality agreement or the protections of Rule 408.  While I cannot disclose the contents of the mediation negotiations, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth below to be used in support of approval of the Settlement.  Thus, without waiving the mediation privilege, I make this declaration based on personal knowledge, and I am competent to testify as to the matters set forth herein.

**Relevant Professional Background and Experience**

3.      I graduated from the University of California at Los Angeles *summa cum laude* in 1975, received my J.D. degree in 1978 from the University of Chicago Law School, and am licensed to practice law in the State of California.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Partial Settlement, dated July 20, 2022 (ECF No. 66).

4.      I joined Latham & Watkins in Los Angeles in June, 1978, and spent the next thirty years of my career with the firm, becoming a partner in 1986 and ultimately serving as the Managing Partner of the San Francisco office for seven years.  I also served two terms on the firm's Global Executive Committee.

5.      At Latham, I specialized in complex litigation, handling major matters in a wide array of substantive areas, including antitrust, unfair competition, business torts, securities fraud, intellectual property, real estate and employment law.  I have tried more than 30 cases, was elected to the American College of Trial Lawyers in 1998, and was named as one of the "Best Lawyers in America" each year for more than a decade.  I served as co-lead counsel in the landmark case, *United States v Oracle Corporation*, which the National Law Journal selected as the "Defense Verdict of the Year" for 2004.

6.      In 2008, I retired from Latham and joined my longtime client, The Irvine Company, as General Counsel.  Over the next four years, my duties expanded to include responsibility for all administrative functions of the company.  Throughout my tenure at The Irvine Company, I served as a member of the four-person Office of the Chairman, which oversaw the entire operations of the company.  Finally, I acted as a Corporate Secretary and the primary liaison with the Board of Directors.  In 2011, I retired from The Irvine Company.

7.      While in private practice, and later as a general counsel, I was an active proponent of alternative dispute resolution, participating in dozens of mediations and arbitrations.  My commitment to the efficient out-of-court resolution of business disputes prompted me to become a full-time alternative dispute resolution professional in 2012.

8.      After completing training with the Pepperdine/Straus Institute and the International Institute for Conflict, Prevention and Resolution (CPR), I gained extensive

experience participating in public service ADR programs for the California Superior Courts and the U.S. District Court for the Central District of California. In 2012, I affiliated with Judicate West and proceeded to develop a statewide practice in California, focusing on business and commercial disputes.

9.      I joined Phillips ADR at its inception in November 2014. Since then, I have specialized in the resolution of procedurally complex matters, principally antitrust suits and securities class action litigation involving numerous parties. I have successfully resolved more than one hundred disputes, and facilitated multiple settlements in excess of $100 million.

**The Arms'-Length Negotiations Resulting in the Instant Settlement**

10.     The mediation process in this case was hard fought on all sides. The Parties participated in two mediation sessions conducted via video-conference as a result of the pandemic. I have no doubt that the Settlement is the result of hard-fought, arm's-length negotiations among the Parties, and I believe final approval of the Settlement to be in the best interests of the Settlement Class, as discussed herein.

11.     The first mediation session was held on November 15, 2021. During the mediation, Plaintiffs' Counsel and counsel for the PIPE and SPAC Action provided me detailed presentations including written submissions prior to mediation. Moreover, the Parties provided to me their damages analyses and assessment of the claims, which were discussed in detail.

12.     Prior to and during the mediation sessions, I believed that reaching a settlement would be a difficult and adversarial process through which all involved would hold strong to their convictions that they had the better factual and legal arguments, and that a resolution without further litigation was by no means certain. Moreover, the mediation—and eventual Settlement—involved many moving parts and parties, including participants based in the United

4

Kingdom, including several insurance carriers who were unfamiliar with U.S. securities litigation, and different groups of investors and their counsel.

13.     A resolution was not reached at the first session. A second mediation was held on May 11, 2022. Without disclosing confidential aspects of the mediation process, including specifics regarding the Parties' negotiations, substantial progress was made towards narrowing the gap. Eventually, during the session, I issued a mediator's proposal, which the Parties accepted. This Settlement was complex because Plaintiffs, the PIPE and SPAC Action investors, and Crowe all had to agree to the settlement amount. The Plaintiffs and PIPE and SPAC Action investors decided to allocate the settlement amount the same way they agreed in the previous Akazoo Settlement.

14.     I found the discussions engaged in by the Parties during the mediation sessions to be extremely valuable in helping me—and the Parties—to understand the relative merits of each Party's position, and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement. Plaintiffs' Counsel and Crowe's counsel each presented significant arguments regarding their clients' positions, and it was apparent to me that both sides possessed strong, non-frivolous arguments, that their views on the merits and value of the case diverged drastically, and that neither side was assured of victory. While I am bound by confidentiality with regard to the content of the Parties' discussions and negotiations during the mediation sessions, I can say that the arguments and positions asserted by all involved were the product of much hard work, and that they were complex and highly adversarial.

15.     The Settlement with Crowe of the Action and PIPE and SPAC Action provides for consideration of $11,500,000 (eleven million five hundred thousand U.S. dollars) in total, with 86% of the total consideration amount, or $9,890,000 (nine million eight hundred ninety

5

thousand U.S. dollars), to be paid to resolve the claims of the PIPE and SPAC Action, and 14% of the total consideration amount, or $1,610,00 (one million six hundred ten thousand U.S. dollars), to resolve the claims with Crowe in the Action.  It is my understanding that this percentage breakdown of the $11.5 million Settlement reflects the proportionate size of the damages for the PIPE and SPAC Action and the Action.

**Endorsement of the Crowe Settlement**

16.     After presiding over the mediation process in this case, it is my professional opinion that the Settlement is the product of vigorous and independent advocacy and arm's-length negotiation conducted in good faith by the Parties.  The Parties were represented by highly skilled and experienced counsel, who were extremely knowledgeable and clearly had spent a considerable amount of time developing the law and facts in this complex litigation.  I believe the Settlement reflects Plaintiffs' Counsel's well-informed assessment of the best interests of the Plaintiffs and the Settlement Class.

17.     The Settlement provides the Settlement Class with a significant recovery in the face of potentially losing all or part of the case on a dispositive motion or at class certification, and, of course, the risk of losing at a jury trial or on appeal.  The Settlement thus provides the Settlement Class with an excellent recovery that avoids the significant risk, expense, and delay of further litigation to achieve and recover upon a judgment, and avoids the significant risk of recovering nothing at all.  From Crowe's perspective, the Settlement removes the risk of a potential adverse judgment in a much higher amount.

18.     Based on my experience as a litigator and a mediator, and based on my knowledge of the issues in dispute, my review of the materials and advocacy presented in connection with the mediation sessions, the rigor of the negotiations, and the benefits that will be

conferred by the Settlement, I believe that the terms of the Settlement are fair, adequate, reasonable and in the best interests of the Settlement Class. Therefore, I respectfully endorse final approval of the Settlement by the Court.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 17, 2022 in Ketchum, Idaho.

Gregory P. Lindstrom

7