1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                :
IN RE AKAZOO S.A.               :   20-CV-01900(BMC)
SECURITIES LITIGATION           :
                                :
                                :
                                :
                                :   United States Courthouse
                                :   Brooklyn, New York
                                :
                                :
                                :
                                :   March 18, 2022
                                :   11:00 a.m.
                                :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE VIA
VIDEOCONFERENCE
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE


                A P P E A R A N C E S:

For the Plaintiff:        THE ROSEN LAW FIRM
                          275 Madison Avenue, 40th Floor
                          New York, NY 10016

                          BY:  PHILLIP KIM, ESQ.


                          GLANCY PRONGAY & MURRAY LLP
                          1925 Century Park East, Suite 2100
                          Los Angeles, CA 90067

                          BY:  NATALIE PANG, ESQ.
                               CASEY SADLER, ESQ.


For the Defendant:        WILSON ELSER MOSKOWITZ
                          EDELMAN & DICKER
                          3 Gannett Drive
                          White Plains, NY 10604

                          BY:  THOMAS R. MANISERO, ESQ.
                               REBECCA GELOZIN, ESQ.

A P P E A R A N C E S: (Continued.)

Court Reporter:                DENISE PARISI, RPR, CRR
                               Official Court Reporter
                               Telephone: (718) 613-2605
                               E-mail: DeniseParisi72@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

                    *    *    *    *    *

          (All parties present via videoconference.)

          THE COURTROOM DEPUTY:  Civil cause for a pre-motion conference, docket number 20-CV-1900, In Re Akazoo S.A. Securities Litigation.

          Counsel for the movant, please state your appearance, then defendant.

          MR. MANISERO:  Good morning, Your Honor.

          Tom Manisero, Wilson Elser, on behalf of Crowe U.K. LLP.

          THE COURT:  Okay.

          MS. GELOZIN:  Rebecca Gelozin, Wilson Elser as well.

          THE COURT:  Okay.

          MR. KIM:  Good morning, Your Honor.

          Phillip Kim of The Rosen Law Firm for the plaintiffs.  Also with me are co-counsel Natalie Pang from the Glancy firm, along with Casey Sadler from the Glancy firm.

          THE COURT:  Okay.  So this is the pre-motion conference on the defendant's proposed motion to dismiss.

Oh, wait.  Do I have anybody else whose appearance I didn't get who's going to be speaking?

(Pause.)

THE COURT:  No, okay.  Because the company and the directors and officers, they're done.

Okay.  Now, in a pre-motion conference, what I do is -- I've studied your letters, and of course I've read the operative pleading, and I will express to you during this conference some preliminary thoughts about where I think the motion is likely to go based on what I've seen so far.

You should not think that just because I'm expressing a view that that is my view for all times.  In fact, it happens all the time that when I get the actual motion papers, I change my position 180 degrees.

On the other hand, if I say something that sounds valid to you and sounds like, yeah, that's really where the judge is likely to come out, you may decide to rethink your motion or your opposition to the motion.

So that's by way of background of how I do this.

Now, my first question is, does the plaintiff want to amend before we get into motion practice that will be essentially mooted if we then get an amended complaint?

MR. KIM:  Your Honor, at this time, we don't believe that we want to amend at this point, but obviously whatever transpires here my impact that.

THE COURT:  Well, yes.  Okay.  But you're confident at this point, subject to what I'm about to say, that your complaint is at least nearly as good as you can get it.

MR. KIM:  That's right, Your Honor.

THE COURT:  So, you know, save that question I just asked you for the end of our discussion and see if anything I say or anything your adversary says changes your view on that.

One question I have for you is why did you only sue the U.K. entity and not the U.S. entity?

MR. KIM:  Well, Your Honor, as to the substance of the letters, Ms. Pang will address that, but I think I can address this sort of housekeeping entity.  It was the U.K. entity that had issued the audit opinion that made the false statement, Your Honor.

THE COURT:  Okay.  As far as you know, the U.S. affiliate is not in any way involved in that audit.

MR. KIM:  They may be involved in the audit, Your Honor; however, given that the U.K. audit is the one that signed the audit opinion and made the statement, we couldn't find an angle to include the U.S. entity.

THE COURT:  Okay.

Mr. Manisero, why do you think they've sued the wrong entity if it's the U.K. entity that signed the audit report?

MR. MANISERO:  Your Honor, I think it requires an

understanding of the Crowe Global Network.  The Crowe Global Network is a network of independently owned and operating accounting consulting firms.  Each member firm is a separate and distinct member firm -- distinct operating entity.  In this case, the firm that actually did the audit work and issued the audit opinions that are the subject of the lawsuit was the U.K. entity.

THE COURT:  So that's the right one to sue; right?

MR. MANISERO:  They were the right ones to sue.

THE COURT:  Oh, I thought you were saying the U.S. one was the right one to sue.

MR. MANISERO:  No, the U.S. firm was not the auditor.

THE COURT:  So what you're really saying on the personal jurisdiction issue is that the contacts on which plaintiff is relying go to the U.S. entity and not the U.K. entity.

MR. MANISERO:  Yeah.  They have to look at the context -- you have to look at the context between the U.K. entity and the United States.

THE COURT:  Okay.  Now, is this organized like a Swiss verein?

MR. MANISERO:  It is, exactly; it's a Swiss verein.

THE COURT:  Many, many years ago when I was in private practice, I used to represent -- not one of the big

four, but, like, the big five accounting firm, and I remember that's how they were set up, too.

Okay.  I do want to tell you, Mr. Manisero, with regard to the personal jurisdiction issue, please don't make your argument based on any deficiency in demonstrating personal jurisdiction in the complaint.  The way I read Federal Rule of Civil Procedure 8(A), the plaintiff does not have to allege anything in the complaint having to do with personal jurisdiction, it's just not there, and it may well be that when you make the motion showing how few contacts the U.K. entity has with regard to the United States, that the plaintiff will come back with all kinds of things that aren't in the complaint.  It's really a plaintiff's option.  A plaintiff can rely on the allegations in the complaint if it wants to, but if it doesn't want to, then it can put in all kinds of affidavits and other things.  And also keep in mind it can ask for discovery.

I'm not telling you anything you don't know, right?

MR. MANISERO:  No, you're not.

THE COURT:  Okay.  Just so we're all on the same page with that.

Now, Mr. Kim, if it is indeed correct that the U.K. entity is the one that signed the audit and this is a Swiss verein, which is, in fact, a -- it's almost a trade association or a franchisor, that how are you going to impute

the contacts that the U.S. organization has to the U.K. organization?

MS. PANG:  Your Honor, I will speak to that.  This is Natalie Pang.

THE COURT:  Give me one minute before you go on, Ms. Pang.  Give me just one second.

(Pause.)

THE COURT:  Okay.  Go ahead.

MS. PANG:  Your Honor, it's important to note that Crowe Global's headquarters are in New York City, and it has offices in -- it has 40 offices in 19 states in the U.S., and in doing Akazoo's audits, Crowe U.K. sought the assistance of one of its member firms in the U.S., which was located in New York, and sought its advice on complying with PCAOV standards.  Crowe conducted its audits -- or purported to conduct its audits -- in accordance with U.S. generally-accepted auditing standards.  It knew its audit reports would be directed toward and relied upon by U.S. investors and filed with SEC, thus Crowe participated in a fraudulent scheme which was directed towards deceiving the U.S. shareholders, and --

THE COURT:  Okay.

MS. PANG:  -- according to -- the Second Circuit have found under certain facts that jurisdiction, both specific and general, have been established.

THE COURT:  Okay.  It sounds to me like you have two theories:  Number one, the U.K. entity, because of the work it did for Akazoo, was, itself, submitting to, what?  Specific jurisdiction?

MS. PANG:  Yes, Your Honor.

THE COURT:  And also are you arguing that because the U.S. entity was involved, that's additional contact, and, therefore, whatever contacts the U.S. entity has are imputed to the U.K. entity?

MS. PANG:  Yes, Your Honor.

THE COURT:  Okay.  Tell me specifically, to the extent you know, what did the U.S. entity do?

MS. PANG:  Our understanding, Your Honor, is that the U.S. entity provided advice to Crowe U.K. about compliance with the U.S. auditing standards.

THE COURT:  Okay.  A lot, or a little, or you don't know?

MS. PANG:  I don't know, Your Honor, but it's significant enough that in emails we've come across there's a connection there.

THE COURT:  Okay.  Because it's one thing to have a half an hour phone call during the audit; it's another thing to have a U.S. representative stationed at Akazoo who is helping the U.K. auditor to do his work.  You don't know which that was.

*Proceedings*                                                           9

MS. PANG:  That's correct, Your Honor.

THE COURT:  Okay.  Well, I will be candid and tell you, I don't know -- I really don't have a feel for whether there's going to be personal jurisdiction or not.  I would tell you both if I did.  I will say it seems very likely that to the extent the defendant raises this, there's going to be a need for discovery, and I might, Mr. Manisero, put that off so that it can be taken as part of merits discovery.  You know, I can reserve on the personal jurisdiction issue until trial if I want to, and I think probably we're going to need to get to the bottom of exactly what the U.S. entity did before I resolve the question.  So if you want to make it, that's fine. If you want to preserve it, I will let you preserve it, even though normally you would be waiving it.

MR. MANISERO:  Your Honor, I think we want to go forward with contested jurisdiction at this point.

THE COURT:  Okay.

Now, with regard to the failure to state a claim, I will tell Mr. Kim and Ms. Pang that it seems a little thin to me -- the complaint.  Candidly, more than a little thin. Basically, you point to all the terrible things Akazoo did -- and the officers and directors did -- and then you say and Crowe didn't stop it.  That, to me, is as consistent with a negligence theory as it is with a fraud theory, and therefore I'm not at all sure that it crosses the line from, you know,

possible to probable under *Iqbal* and *Bell Atlantic*.

So, Mr. Kim, to the extent that this reorients you, my view says maybe you should amend if you've got more -- well, then go ahead. I really am seeking to save work for everybody. If we're going to get an amended complaint, then I would rather give you 30 days to do it and let Mr. Manisero see what he's got to do with regard to that. If you don't have any more, stand on it. The Second Circuit has made it clear that even if you tell me now you don't think you're going to amend, you still haven't waived the right to do that in response to the motion, but I will not appreciate it if that's what happens here, so if you are going to amend, let us know.

If you want to take a couple days to think about it and talk among yourselves and decide if you can beef up the scienter problem in the complaint somewhat or not, fine. But, you know, generally speaking, if we have this call and then you say, no, I'm going to stand on the complaint and then there's a motion and then you go, well, no, I'm not going to stand on the complaint, now I want to file an amended complaint, if you prevail in this case, I may consider that in determining the appropriate amount of any fee award, so please don't waste time?

What do you want to do?

MR. KIM: Your Honor, I appreciate your thoughts on

that, and certainly we don't want to waste your time or anyone else's time, so if you can provide us an opportunity to confer amongst ourselves internally and then let the Court know if we decide to amend the complaint -- which I can't speak for everyone on the call -- it's highly probable we will be coming back to you with a proposed schedule likely for the filing of an amended complaint.

There is a wrinkle to this which may affect the schedule that we would want in filing the amended complaint, and I don't know if it will or won't, but it's a relevant fact, that Crowe has agreed to continue to mediate this action. I know previously the Court had stayed the case so that we could mediate and they wanted to mediate again, and that's likely -- that's likely to be scheduled early May, so that's a fact that's out there as well, so that may impact the type of schedule that we may present to you if we decide to amend the complaint -- which likely that will be the case -- but I just need to confer with my team, Your Honor.

THE COURT: Okay. I appreciate you giving me that intel.

You know, generally -- and I think I did this with the D & O case -- I don't stay proceedings pending mediation unless both sides indicate to me that they think it's more likely than not that the mediation will result in a settlement.

Now, are you in a position to say that, Mr. Kim?

MR. KIM: Well, I don't think we would have agreed to go forward if we didn't think we could try to settle the case. I would suspect, however, that if we decided to amend, that the defendants would want to see the amended complaint prior to the mediation, but I can't speak for them, but --

THE COURT: They know what they did. You are the one who doesn't know what they did, right? So I don't know that they need to see the amended complaint. But as far as you're concerned, the answer to my question is, yes, you think it's more likely than not that you can settle this case?

MR. KIM: Yes, Your Honor.

THE COURT: Mr. Manisero, what do you think?

MR. MANISERO: I'm eternally hopeful, Your Honor. We wouldn't be returning to this mediation if we didn't think that there was a more than likely chance of doing so.

THE COURT: Okay. That's as affirmative as I need both of you to get.

So then I have kind of a joint request to stay pending this mediation in May; right?

MR. MANISERO: Yes, Your Honor.

THE COURT: Right, Mr. Kim?

MR. KIM: That's correct.

THE COURT: Okay. All right. What's the date of the mediation again?

13

MR. KIM:  We had reached out to the mediator before this case and the D & O case, his availability is -- he said he's got dates in early May, but he would have to check, and that email was sent out, I think, yesterday, so we're trying to lock a date now, Your Honor.

THE COURT:  I'm going to charge you, Mr. Kim, with sending me a status report on May 15th in letting me know where the mediation stands.

MR. KIM:  Understood, Your Honor.

THE COURT:  Okay.  And I think, frankly, I'm going to leave it up to you, since I'm staying the case, as to whether you want to file an amended complaint now or wait. You seem to think that maybe it will help you with the mediation, but I will leave it up to you, because I'm going to stay the case otherwise.

MR. KIM:  Sounds good, Your Honor.  I appreciate it.

THE COURT:  All right.  Anything else we need to talk about?

MR. KIM:  Nothing from the plaintiff, Your Honor.

MR. MANISERO:  Nothing from the defendant, Your Honor.

THE COURT:  Okay.  Thank you all for calling in. I'll be looking forward to seeing what happens with the mediation.

(Matter concluded.)

Denise Paris, RPR, CRR
I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
/s/ Denise Paris, April 29, 2022